UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No. 22-17842 (PDR) |
| Debtors.[1] _____/ | (Jointly Administered) |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | Adv. Pro. No. |
| v. | |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. _____/ | |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND INCORPORATED MEMORANDUM OF LAW**

**(Emergency Hearing Requested for March 16, 2023)**

**Basis for Request for Expedited Hearing**

The Debtors respectfully request the Court conduct an emergency hearing on this Motion within two business days of the filing of this Motion consistent with Local Rule 9013-1(F). The Debtors' business, including their marketing operations, requires their ability to access and control their CEO Accounts (as defined herein). To avoid substantial immediate and irreparable harm to the Debtors' business, they seek a temporary restraining order (a) prohibiting John H. Owoc and Megan E. Owoc from accessing, using, deleting, or modifying in any way the CEO Accounts (as defined herein), (b) compelling Mr. and Mrs. Owoc to transfer exclusive control of the CEO Accounts over to the Debtors, and (c) granting related relief. The Debtors respectfully request that the Court waive the provisions of Local

---

[1] The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc. The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11996612-1

Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to the above-captioned adversary proceeding (this "Adversary Proceeding") under Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Debtor Vital Pharmaceuticals, Inc., and its affiliated debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession (the "Debtors" or the "Company"), respectfully bring this motion (this "Motion") seeking entry of a temporary restraining order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) prohibiting Defendants John ("Jack") H. Owoc and Megan E. ("Meg Liz") Owoc (together, "Defendants") from accessing, using, deleting, or modifying in any way the CEO Accounts (as defined herein), (b) compelling Defendants to transfer exclusive control of the CEO Accounts over to the Debtors, and (c) granting related relief. As grounds for the relief requested in this Motion, the Debtors rely on the *Declaration of John C. DiDonato in Support of Debtors' Motion for Temporary Restraining Order* (the "DiDonato Declaration") filed concurrently herewith and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors rely on social media to market their products and provide messaging about the business to their customers and followers. Presently, the Debtors cannot access critical social media accounts because Defendants have absconded with the login credentials. Defendants, who have been terminated as officers and employees of the Debtors, have no credible basis to refuse to provide the login credentials to the Debtors. The Court should order Defendants to provide to the Debtors the relevant login credentials along with any other account access information necessary to access and control the CEO Accounts so that the Debtors can avoid

further irreparable harm and responsibly manage the social media accounts pending resolution of the instant adversary proceeding.

## JURISDICTION AND VENUE

2. The Debtors commenced the Adversary Proceeding pursuant to sections 542(a) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 7001(1).

3. The Court has jurisdiction over the Adversary Proceeding under 28 U.S.C. §§ 157 and 1334. The Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b) because it arises under the Bankruptcy Code and arises in a case under the Bankruptcy Code.

4. Venue of the Chapter 11 Cases and the Adversary Proceeding, as well as adjudication of this Motion, is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. In accordance with Bankruptcy Rule 7008(a), the Debtors consent to the entry of a final order or judgment on this Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

### A.  The Debtors' Social Media Assets

6. Since as early as 2010, the Debtors have made strategic use of a variety of non-traditional marketing channels, including marketing direct to customers through various social media platforms. DiDonato Decl. ¶ 5. As of the Petition Date, the Debtors created and operated a number of social media accounts as part of their marketing efforts.

7. Both pre- and post-petition, the Company's marketing department created content that was posted across their various social media accounts in a regular and coordinated fashion. *See id.* ¶ 7. The Instagram and TikTok accounts bearing the handle "@bangenergy.ceo"

3

(respectively, the "CEO Instagram Account" and the "CEO TikTok Account") and the Twitter account bearing the handle "@BangEnergyCEO" (the "CEO Twitter Account" and together, with the CEO Instagram Account and the CEO TikTok Account, the "CEO Accounts") were among the accounts created by the Company's marketing department and for which the Company's marketing department curated and posted content for purposes of promotion of the Debtors' products and business. *Id.*. In fact during depositions in an unrelated matter, Defendants testified that the accounts were created and operated by the Company. *Id.* at Exhibits A and B. The CEO Instagram Account is a verified account with over 1 million followers and more than 6400 posts, the vast majority of which promote the Debtors' products and business. *Id.* ¶ 6. Similarly, the CEO TikTok Account has over 850,000 followers and the CEO Twitter Account has over 7,000, with each including content primarily focused on promoting the Debtors' products and business. *Id.* ¶ 7. All three CEO Accounts cross-reference each other's content. *Id.*

8. Only a few employees of the Company, including Defendants, had direct access to the Debtors' social media accounts, including knowledge of login credentials and the ability to post content. *See id.* ¶ 8. On information and belief, to the extent any Company employee other than Defendants had knowledge of the login credentials for the CEO Accounts, Defendants have instructed such employee or employees not to reveal the login credentials to the responsible Company officers, and Defendants have changed the login credentials to ensure that the Company cannot control such accounts. *See id.* ¶ 10.

B. **The Chapter 11 Cases**

9. On October 10, 2022, each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered.

10. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108, 11 U.S.C. §§ 1107, 1108.

11. On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") [ECF No. 245]. On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF No. 400]. No request has been made to the Court to order the appointment of a trustee or examiner.

12. On January 12, 2023, the Court entered a final order (the "Final DIP Order") [ECF No. 638] authorizing the Debtors to obtain postpetition financing under the *Superpriority Secured Debtor-in-Possession Credit Agreement* (the "DIP Agreement"). To avoid an event of default under the DIP Agreement, the Debtors are required to achieve certain milestones (the "DIP Milestones"), including, among other things, filing a motion to approve a stalking horse bidder on or before March 24, 2023, holding an auction, if necessary, on or before April 27, 2023, and closing a sale of all or substantially all of the Debtors' assets on or before May 17, 2023. *See* Final DIP Order ¶ 46; Final DIP Order, Ex. B (DIP Agreement) § 5.18. The maturity date of the DIP financing under the DIP Agreement is May 24, 2023 (the "DIP Maturity Date").

13. On February 24, 2023, the Court entered an order (the "Bid Procedures Order") [ECF No. 854] approving bidding procedures for the sale of all or substantially all of the Debtors' assets upon the conclusion of the Debtors' marketing and sale process. The Bid Procedures Order implements a process timeline consistent with the DIP Milestones.

14. It is imperative that the Debtors continue operations, including marketing efforts, during the Chapter 11 Cases, to ensure robust sales, particularly given that the Debtors are in the midst of a sale process.

### C. The Board's Termination of Mr. and Mrs. Owoc

15. On March 9, 2023, the Debtors' boards of directors and managers (collectively, the "Board") voted to terminate the employment of Mr. Jack Owoc and Mrs. Meg Liz Owoc, and to remove Mr. Owoc from the Board for cause.

16. The Company promptly notified Defendants and their individual counsel of the Board's decision. *See* DiDonato Decl., ¶ 9, Exhibits C and D. As part of those notices, the Company directed Defendants to immediately return all of the Debtors' property, including, among other items, any access codes or devices, mobile phones, computers, and any other property and information.[2] *Id.*

17. Following Mr. Owoc's termination, Mr. John DiDonato of Huron Consulting, who had been serving as the Debtors' Chief Transformation Officer, was named by the Board as the Debtors' Interim Chief Executive Officer. *See id.* ¶ 1.

### D. The Company's Attempts to Secure All Social Media Accounts

18. Given the management transition, the Company and its advisors worked to secure all estate property, including access to the Company's social media accounts. While the Debtors were able to secure a majority of the social media accounts and changed login credentials and points of contact, they were unable to obtain the current login credentials to the CEO Instagram Account as well as the other CEO Accounts. *Id.* ¶ 10.

19. On information and belief, the Debtors understand that, following their termination from the Company, Defendants instructed a certain Company employee who had access to login credentials to the Company's social media accounts, including the login credentials for the CEO Accounts, to refuse to disclose those login credentials to others at the Company or its advisors. *Id.*

---

[2] The Company continues to assess the extent to which Mr. Owoc or Mrs. Owoc may be in possession of Company property and reserves the right to amend this Complaint and/or take additional appropriate action with regard to any additional Company property that Mr. Owoc or Mrs. Owoc have retained and refused to return.

20. On March 10, 2023, the Company sent a letter to counsel for Defendants reiterating the need that they promptly return all Company property and demanding that they reveal the login credentials to the CEO Instagram Account. *Id.* ¶ 11, Exhibit E.

21. Despite multiple follow-up attempts, as of the filing of this Motion and the complaint filed concurrently herewith, the Debtors have been unable to secure Defendants' voluntary turnover of access to and control over the CEO Accounts. In addition to using the CEO Accounts for promotional marketing that is important to the Debtors' efforts to maximize value, the Company is concerned that while Defendants remain in control of the Bang CEO Accounts they might post content that is intended to harm or (intended or not) is otherwise harmful to the Debtors, their business, and/or the ongoing marketing process. *See id.* ¶ 14.

22. Even in the absence of harmful content, the Company's lack of access to the CEO Accounts itself constitutes immediate and increasing harm. *See id.* ¶¶ 5, 12-13. The Company relies heavily on social media for its marketing strategy; losing access to the CEO Accounts with nearly 2 million followers thus creates an immediate, substantial and compounding harm to the Company's ability to market its products and to present an attractive target for potential purchasers.

## ARGUMENT

23. To obtain a temporary restraining order, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-1226 (11th Cir. 2005) (citation omitted).[3] Because the Debtors can satisfy each of these factors, the Court should grant this Motion.

---

[3] The Debtors also request that this Court not require them to provide any security in connection with the temporary restraining order as permitted under Bankruptcy Rule 7065. *See* Fed. R. Bankr. P. 7065 (("[Federal] Rule 65 . . .

I. **THE DEBTORS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS**

24. "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Schiavo*, 403 F.3d at 7 (emphasis in original). Section 542(a) of the Bankruptcy Code "authorizes a bankruptcy court to order turnover of the debtor's property held by others." *In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir. 1993). To successfully move for turnover of estate property, a debtor "must prove that the subject property constitutes property of the estate and that the defendant is in possession of that property." *In re Rogove*, 443 B.R. 182, 186 (Bankr. S.D. Fla. 2010). The applicable standard "is by preponderance of the evidence." *Id.* The Debtors have a strong probability of successfully showing that the CEO Accounts are estate property.

    A.    **The CEO Accounts Are Property of the Estates**

25. Under the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As in other circuits, the Eleventh Circuit holds that the "scope of [section] 541(a)(1) is broad, and includes property of all types, tangible and intangible." *In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997).

26. Social media accounts are property of a debtor's estate when the content of the accounts is strongly associated with the debtor's business and use of the accounts is "clearly to generate revenues for the company." *See In re CTLI, LLC*, 528 B.R. 359, 368 (Bankr. S.D. Tex. 2015). *CTLI, LLC* is particularly instructive. There, the bankruptcy court found that a Facebook page and a Twitter account were business accounts belonging to the debtor, not the debtor's founder. In reaching its conclusion, the bankruptcy court noted that the accounts' names were

---

applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with [Federal] Rule 65(c).").

11996612-1

related to the business, they were directly linked to the debtor's business website, much of the posted content was expressly business-related and promoted the business, and other employees had access to the account. *Id.* at 366-74. In addition, the bankruptcy court rejected arguments that the Facebook account was the founder's personal property because it also included personal content, a fact "utterly insufficient to overcome the presumption that that the Facebook Page . . . was anything other than what it appeared to be: a business Facebook Page for the business." *Id.* at 368.

27. Here, the CEO Accounts are clearly business accounts used to generate revenues for the Company. The CEO Accounts were created by the Company's marketing department. *See* DiDonato Decl. ¶¶ 5-6. The content on the CEO Accounts was primarily curated and posted by the Company's marketing department, with the vast majority of the content designed to promote the Company's business and products, including Bang Energy, Redline, Meltdown, and Vooz. *See id.* ¶¶ 5-7; *id.* Exhibits A and B. The handles of the accounts are associated with the Company's business, such as the handle "@bangenergy.ceo" for the CEO Instagram Account and CEO TikTok Account. The CEO Instagram Account is expressly referenced on the can label for the Company's Bang energy drink. *Id.* ¶ 6. The CEO Accounts also include links to the Company's website, www.bangenergy.com, for the express purpose of promoting the sale of the Company's products. *Id.* ¶ 7.

28. In addition, the Company's employee handbook (the "<u>Employee Handbook</u>") specifies that

> all ideas, potential marketing (graphic designs, artwork drawings, photography, magazines, pamphlets, packaging, etc.) and sales relationships, inventions, research, plans for products or services, marketing plans, computer software (including, without limitation, source code and object code), computer programs, original works of authorship, characters, processes, trade secrets, information, data, developments, discoveries, improvements, modifications, technology, algorithms and designs, whether or not subject to patent or copyright protection, made,

9

> conceived, expressed, developed, or actually or constructively reduced to practice by you solely or jointly with others in connection with or relating to any work performed by you for the company. All of [the foregoing] shall be considered as "work made for hire" belonging to Bang Energy.

*Id.* ¶ 11, Exhibit F, at 30. In addition, the Employee Handbook requires that any social media content "relating to the company" meant to be posted by an employee outside of that person's capacity as an employee must include the disclaimer: "The postings on this site are my own and do not represent the position of Bang Energy." *See id.*, Exhibit F, at 28. The CEO Accounts offer no such disclaimer, and the content posted thereon is primarily related to the Company, and thus belong to the Company.

### B. Login Credentials to Access the Company Accounts Are in Defendants' Possession

29. Historically, the CEO Accounts have been controlled by Defendants to be used for purposes related to the Debtors' business. *See id.* ¶¶ 5-7. Until March 9, 2023, Mr. Owoc was the CEO of Bang Energy and posted to the CEO Accounts in that capacity; Mrs. Owoc was the Company's Senior Vice President of Marketing, overseeing the Company's marketing efforts. *See id.* ¶ 8. Defendants cannot credibly deny that they possess the login credentials necessary to access the aforementioned accounts. Yet Defendants have refused express demands to supply those login credentials to the Company and, to the best of the Company's knowledge, have also instructed at least one employee having relevant knowledge not to share such information with responsible Company officers. *See id.* ¶¶ 9-11.

### II. THE DEBTORS WILL SUFFER IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER

30. The Debtors will suffer immediate and irreparable harm if they do not obtain control over the CEO Accounts. The Debtors are at a critical juncture in the Chapter 11 Cases in which they are seeking to designate a stalking horse bidder in a matter of weeks, solicit qualified, binding bids not long thereafter, and consummate a sale before the DIP Maturity Date. Thus, it is

10

imperative that the Debtors secure all of their assets as well as continue their normal operations, including marketing efforts, at this time. Any concerns of bidders associated with the Debtors' lack of control of their assets or their ability to continue their normal business operations, including their marketing efforts, could result in substantially lower bids for the Debtors' assets or the decision not to bid for the assets at all. *See id.* ¶¶ 12-13.

31. The concerns regarding control of these particular social media accounts are especially significant because of their importance to the Company's business. The Company's success is directly correlated to the intensive marketing strategy using digital marketing, including the CEO Accounts, to promote the Company's brand and products to millions of followers. *See id.* ¶¶ 5-7. The continued success of the Company's marketing efforts, and the sale of the Company's products, relies on the CEO Accounts as part of that overall strategy. *Id.* The CEO Instagram Account alone has over 1 million followers, and the Company needs to be able to continue marketing and communicating with those followers, especially during this time of management transition and sale process. *Id.*

32. Also of great concern is Defendants' continued ability to communicate with millions of followers using social media accounts belonging to the Company. The Debtors' terminated Defendants' employment, and removed Mr. Owoc from the Board for cause, on March 9, 2023. The Company, therefore, has legitimate concerns that they may post content that is intended to harm or (intended or not) is otherwise harmful to the Debtors and their business, which would be transmitted widely.

33. Accordingly, the Debtors submit that they will suffer immediate and irreparable harm without access to the CEO Accounts.

11996612-1

### III. BALANCE OF HARMS WEIGHS GREATLY IN THE DEBTORS' FAVOR

34. The balance of harms greatly favors the Debtors. The harm the Debtors will suffer in the absence of a temporary restraining order, as described above, is substantial and irreversible. Any harm Defendants will suffer by ceding temporary control of the CEO Accounts is minimal or nonexistent and reversable. The CEO Accounts were used primarily to promote the Debtors' business. Accordingly, it is the Debtors' prerogative to continue to control the accounts, including the content posted thereon. Indeed, it is difficult to imagine how Defendants could use the CEO Accounts for any legitimate purpose; given their separation from the Debtors, their continued use of such accounts could cause confusion among consumers, at best, and provide a means to actively harm the Debtors, at worst.

### IV. A TEMPORARY RESTRAINING ORDER WOULD SERVE THE PUBLIC'S INTEREST

35. The public interest weighs heavily in favor of granting the requested relief. "In the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization.'" *In re Am. Film Techs., Inf.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts."). The foregoing principles set forth in *American Film Technologies* apply with equal force to the present situation in which the Debtors are pursuing a successful sale of their assets for the benefit of their estates and relies on their ability to continue normal business operations. And, in any event, the public will suffer no harm by the requested relief.

### CONCLUSION

36. For all the foregoing reasons, the Debtors respectfully request that the Court enter

12

11996612-1

an order granting the relief requested in this Motion and such other and further relief as may be just and proper.

|  |  |
|---|---|
| Dated: March 14, 2023<br>       Miami, Florida | Respectfully submitted,<br><br>/s/ Jordi Guso |
| George A. Davis (admitted *pro hac vice*)<br>Tianjiao ("TJ") Li (admitted *pro hac vice*)<br>Brian S. Rosen (admitted *pro hac vice*)<br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Email: george.davis@lw.com<br>        tj.li@lw.com<br>        brian.rosen@lw.com<br>        jon.weichselbaum@lw.com | Jordi Guso<br>Florida Bar No. 863580<br>Michael J. Niles<br>Florida Bar No. 107203<br>**BERGER SINGERMAN LLP**<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131<br>Telephone: (305) 755-9500<br>Email: jguso@bergersingerman.com<br>        mniles@bergersingerman.com |

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel for the Debtors/Plaintiffs*

13

11996612-1

# **Exhibit A**

# **Order**

11996612-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No. 22-17842 (PDR) (Jointly Administered) |
| Debtors. / | |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | Adv. Pro. No. |
| v. | |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. / | |

**ORDER GRANTING EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER**

**THIS MATTER** was before this Court on March ___, 2023, at _____ [_.m.] in Fort Lauderdale, Florida, upon the *Debtors' Emergency Motion for Temporary Restraining Order and Incorporated Memorandum of Law* [ECF No. ___] (the "Motion")[4] filed by the debtors and

---

[4] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

11996612-1

debtors-in-possession (the "Debtors") in the above-captioned adversary proceeding.  The Motion seeks entry of an order (a) prohibiting Defendants John ("Jack") H. Owoc and Megan E. ("Meg Liz") Owoc (together, "Defendants") from accessing, using, deleting, or modifying in any way the CEO Accounts (as defined herein) or content posted thereon; (b) compelling Defendants to transfer exclusive control of the CEO Accounts to the Debtors; and (c) granting related relief.  The Court finds and concludes that:

      A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      B.      Notice of the Motion was sufficient under the circumstances.

      C.      The legal and factual bases set forth in the Motion and the accompanying declarations and related papers and at the hearing establish just cause for the relief granted herein.

Accordingly, it is

**ORDERED** as follows:

      1.      The Motion is GRANTED as to the request for a temporary restraining order under sections 105(a) and 542 of the Bankruptcy Code, Rule 65 of the Federal Rules of Civil Procedure, and rule 7065 of the Federal Rules of Bankruptcy Procedure.

      2.      Pending a hearing and determination on the Debtors' claims set forth in the Complaint, Defendants are prohibited from accessing, using, deleting, or otherwise modifying the CEO Accounts, or any content posted thereon.

      3.      Pending a hearing and determination of the Debtors' claims set forth in their *Adversary Complaint for Declaratory Judgment and Turnover of Estate Property* (the "Complaint") filed concurrently with the Motion, effective immediately and subject to the terms

hereof, Defendants shall immediately provide to the Debtors the login credentials, including passwords, usernames, and any other account access information necessary to access the Instagram and TikTok accounts bearing the handle "@bangenergy.ceo" (respectively, the "<u>CEO Instagram Account</u>" and the "<u>CEO TikTok Account</u>") and the Twitter account bearing the handle "@BangEnergyCEO" (the "<u>CEO Twitter Account</u>" and together, with the CEO Instagram Account and the CEO TikTok Account, the "<u>CEO Accounts</u>").

4. Nothing in this Order shall prevent the Debtors from seeking further relief with respect to the CEO Accounts or any other accounts used in the ordinary course of the Debtors' business operations.

5. Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedures, the Debtors are relieved from posting any security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

6. The Debtors shall serve a copy of this Order on counsel for Defendants within (1) business day of the entry of this Order.

7. The Court retains jurisdiction over this Order and the relief granted herein.

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3

11996612-1