UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No. 22-17842 (PDR) (Jointly Administered) |
| Debtors.[1] _____/ | |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | Adv. Pro. No. 23-01051 (PDR) |
| v. | |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. _____/ | |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to the *Order Setting Scheduling Conference and Establishing Procedures and Deadlines* [ECF No. 5], Plaintiffs file *Plaintiffs' Statement of Undisputed Material Facts* to be considered by the Court in connection with Plaintiffs' *Motion for Summary Judgment and Incorporated Memorandum of Law* [ECF No. 20] (the "Summary Judgment Motion") filed on March 31, 2023, as follows:

---

[1] The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc.  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12044614-1

### A. The Debtors' Social Media Assets

1. Since as early as 2010, the Debtors[2] have made strategic use of a variety of non-traditional marketing channels, including marketing directly to customers through various social media platforms. DiDonato Decl. ¶ 5.[3] As of the Petition Date (as defined below) the Debtors created and operated a number of social media accounts as part of their marketing efforts. *Id.* Both pre- and post-petition, the Company's marketing department created content that was posted across their various social media accounts in a regular and coordinated fashion. *See id.* ¶ 7.

2. The CEO Accounts were among the accounts created by the Company's marketing department and for which the Company's marketing department curated and posted content for purposes of promotion of the Debtors' products and business. *Id.* The CEO Instagram Account is a verified account created in April 2012 with over 1 million followers and more than 6400 posts, the vast majority of which promote the Debtors' products and business. *Id.* ¶ 7. Similarly, the CEO TikTok Account was created in 2019 and has over 850,000 followers, with content primarily focused on promoting the Debtors' products and business. *Id.* And the CEO Twitter Account, created in 2010, has over 7,000 followers, with content primarily focused on promoting the Debtors' products and business. *Id.*

3. During depositions in an unrelated matter, Defendants testified that the CEO Accounts were created and operated by the Company, and the Company's marketing department created videos which were then posted to the CEO Accounts. *Id.* at Ex. C, 84:10-16, 84:22-85:1-6, 86:2-20; *id.* at Ex. D, 22:17-19. All three CEO Accounts cross-reference each other's content. *Id.* ¶ 7.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Summary Judgment Motion.
[3] The *Declaration of John C. DiDonato in Support of Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law* was filed contemporaneous with the Summary Judgment Motion at ECF No. 21.

4.      Only a few employees of the Company, including Defendants, had direct access to the CEO Accounts, including knowledge of the login credentials and the ability to post content. *See id.* ¶ 8.

5.      The Company's employee handbook (the "Employee Handbook") specifies that

> all ideas, potential marketing (graphic designs, artwork drawings, photography, magazines, pamphlets, packaging, etc.) and sales relationships, inventions, research, plans for products or services, marketing plans, computer software (including, without limitation, source code and object code), computer programs, original works of authorship, characters, processes, trade secrets, information, data, developments, discoveries, improvements, modifications, technology, algorithms and designs, whether or not subject to patent or copyright protection, made, conceived, expressed, developed, or actually or constructively reduced to practice by you solely or jointly with others in connection with or relating to any work performed by you for the company. All of [the foregoing] shall be considered as "work made for hire" belonging to Bang Energy.

*Id.* ¶ 11, Ex. J, at 30.

### B.      The Chapter 11 Cases

6.      On October 10, 2022 (the Petition Date), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered.

7.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108, 11 U.S.C. §§ 1107, 1108.

8.      On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") [Main Case ECF No. 245]. On November 23, 2022, the U.S. Trustee reconstituted the Committee [Main Case ECF No. 400]. No request has been made to the Court to order the appointment of a trustee or examiner.

9.      On January 12, 2023, the Court entered a final order (the "Final DIP Order") [Main Case ECF No. 638] authorizing the Debtors to obtain postpetition financing under the *Superpriority Secured Debtor-in-Possession Credit Agreement* (the "DIP Agreement"). To avoid

an event of default under the DIP Agreement, the Debtors are required to achieve certain milestones (the "DIP Milestones"),[4] including, among other things, filing a motion to approve a stalking horse bidder on or before March 24, 2023, holding an auction, if necessary, on or before April 27, 2023, and closing a sale of all or substantially all of the Debtors' assets on or before May 17, 2023. *See* Final DIP Order ¶ 46; Final DIP Order, Ex. B (DIP Agreement) § 5.18. The maturity date of the DIP financing under the DIP Agreement is May 24, 2023 (the "DIP Maturity Date").

10. On February 24, 2023, the Court entered an order (the "Bid Procedures Order") [Main Case ECF No. 854] approving bidding procedures for the sale of all or substantially all of the Debtors' assets upon the conclusion of the Debtors' marketing and sale process. The Bid Procedures Order implements a process timeline consistent with the DIP Milestones.

11. In order to preserve and maximize the value of the bankruptcy estate, the Debtors continue to operate, including their market efforts, in the ordinary course.

### C.    The Board's Termination of Mr. and Mrs. Owoc

12. Defendant Jack Owoc is the Company's founder and former Chief Executive Officer and Chief Science Office. DiDonato Decl. ¶ 15, Ex. E. Defendant Meg Owoc, working under various job titles, directed the Debtors' marketing department from 2010 until March 9, 2023. *Id.* ¶ 15, Ex. F.

13. On March 9, 2023, the Debtors' boards of directors and managers (collectively, the "Board") voted to terminate the employment of Mr. Jack Owoc and Mrs. Meg Liz Owoc, and to remove Mr. Owoc from the Board for cause. Following Mr. Owoc's termination, Mr. John DiDonato of Huron Consulting, who had been serving as the Debtors' Chief Transformation Officer, was named by the Board as the Debtors' Interim Chief Executive Officer. *See id.* ¶ 1.

---

[4] The Debtors are engaged in negotiations with the DIP Lenders to modify certain of the Milestones.

14. The Company promptly notified Defendants and their individual counsel of the Board's decision to terminate their employment. *See id.* ¶ 9, Ex. G and H. As part of those notices, the Company directed Defendants to immediately return all of the Debtors' property, including, among other items, any access codes or devices, mobile phones, computers, and any other property and information. *Id.*

15. Given the management transition, the Company and its advisors worked to secure all estate property, including access to the Company's social media accounts. *Id.* ¶ 10. While the Debtors were able to secure a majority of the social media accounts and changed login credentials and points of contact, they were unable to obtain the current login credentials to the three CEO Accounts. *Id.* On March 10, 2023, the Company sent a letter to counsel for Defendants reiterating the need that they promptly return all Company property and demanding that they reveal the login credentials to the CEO Instagram Account. *Id.* ¶ 11, Ex. I.

16. Also on March 10, 2023, Jack Owoc sent a company-wide email referring to Defendants' termination the day before as a "hostile takeover" and asserting the Company's advisors were lying to all Company employees. *See id.* ¶ 14, Ex. J.

17. On March 16, 2023, Defendants conceded they have knowledge of the login credentials to the CEO Accounts and agreed to provide them under seal to the Court and agreed not to change the passwords during the pendency of this dispute. *See* Order Approving Stipulation Regarding Debtors' Motion for Temporary Restraining Order ("TRO Stipulation") [Dkt. 10], at ¶ 6.[5] In the TRO Stipulation, Defendants also temporarily agreed to refrain from posting independent content to the CEO Accounts, and agreed to post marketing content at the Debtors' request. TRO Stip. ¶¶ 2-4.

---

[5] The Company continues to assess the extent to which Mr. Owoc or Mrs. Owoc may be in possession of Company property. The Company reserves the right to take additional appropriate action with regard to any additional Company property that Mr. Owoc or Mrs. Owoc have retained and refuse to return.

18. Regardless of the agreed upon and so-ordered TRO Stipulation, Defendants failed to provide the Court with the login credentials. After numerous attempts to engage with the Defendants as to whether they intended to provide the Court with login credentials and negotiate in good faith a summary judgment briefing schedule, the Debtors received no response and were forced to bring an emergency motion seeking an order holding Defendants in contempt, among other relief. *See* Dkt. 13 (the "Contempt Motion"). Shortly before the hearing on the Debtors' Contempt Motion, Defendants' counsel confirmed submission of the login credentials for two of the three CEO Accounts to the Court,[6] and also informed Debtors' counsel that he would be withdrawing as counsel for Defendants. Replacement counsel attended the Contempt Motion hearing on March 23, 2023, and on March 24, 2023, replacement counsel informed Debtors' counsel that they would no longer be representing Defendants.

19. The Company is concerned that if Defendants retain control of the CEO Accounts, Defendants might post content that is harmful to the Debtors, their business, their product marketing, and/or their bankruptcy sale process. *See* DiDonato Decl. ¶ 14. The Company is also concerned that bidders may view any disruption to the Debtors' marketing efforts negatively, and that in turn it would result in substantially lower bids for the Debtors' assets or the decision not to bid for the assets at all. *See id.* ¶¶ 12-13.

**WHEREFORE**, Plaintiffs submit the foregoing for the Court's consideration in

---

[6] Counsel represented that Defendants were unable to locate the password for the CEO TikTok account.

connection with the Summary Judgment Motion.

| | |
|---|---|
| Dated: April 3, 2023<br>Miami, Florida | Respectfully submitted,<br><br>*/s/ Jordi Guso*<br>Jordi Guso |

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
　　　　hugh.murtagh@lw.com
　　　　tj.li@lw.com
　　　　brian.rosen@lw.com
　　　　jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
　　　　mniles@bergersingerman.com

　　　　　　- and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Plaintiffs/Debtors*