UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No. 22-17842-PRR<br>(Jointly Administered) |
| Debtors.[1] | |

_____/

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 23-01051-PDR |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. | |

_____/

**DEBTORS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
THEIR EMERGENCY MOTION FOR AN ORDER
<u>HOLDING DEFENDANTS IN CONTEMPT OF COURT</u>**

As requested at the April 12, 2023 hearing on the Debtors' Emergency Motion,[2] the

Debtors submit this Supplemental Memorandum to address certain arguments raised by

Defendants in an attempt to defend their willful conduct, which is at the heart of the Debtors'

request for an Order holding Defendants in contempt and imposing sanctions. Specifically, the

---

[1]  The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc.  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  "Emergency Motion" refers to the *Emergency Motion for an Order (i) Holding Defendants in Contempt of Court, (ii) Imposing Sanctions, and (iii) Setting Hearing on Debtors' Motion for Temporary Restraining Order* [Adv. Pro. Dkt. No. 28].

Debtors address the meaning of the language that appears at Paragraph 2 of the Stipulation[3] [Adv. Pro. Dkt. No. 9] and Paragraph 3 of the Order [Adv. Pro. Dkt. No. 10].  That language, to which Defendants agreed as a condition of taking the Debtors' TRO Motion off calendar, expressly prohibits Defendants from "*. . . posting <u>any</u> content* . . ."  – including the disparaging comment that Mr. Owoc *posted* on the CEO Instagram Account on April 10, which, as of the time of this filing, remains posted to the account.

Following the April 12 hearing and this Court's cautionary remarks that additional behavior violative of the Stipulation and Order may result in further sanctions, Mr. Owoc doubled-down on his previous defiance, posting yet another bellicose rant assailing the Debtors' counsel and other professionals within the comments section of the CEO Instagram Account.

## THE STIPULATION & ORDER

In relevant part, the Stipulation and Order provide:

- Defendants are prohibited from "***posting any content or making any posts of any kind to or from the CEO Accounts***" until forty-five (45) days after the date of the Order (Stipulation, ¶ 2; Order, ¶ 3);[4] and

- If the Debtors wish to post on the CEO Accounts concerning the Debtors' products, and such posts do not reference Defendants, then Defendants will make such posts within nine (9) business hours of receiving the Debtors' request to do so (Stipulation, ¶3; Order, ¶ 4).

## ARGUMENT

Defendants argue that they did not violate the Stipulation and Order for two reasons: (1) they contend that, in the context of social media, a "comment" is not a "post," and (2) they contend that Instagram "comments" are not "content" and so making a "comment" does not violate

---

[3] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Emergency Motion and/or Stipulation.

[4] Emphases added.  Throughout this Supplemental Memorandum, the Debtors have added emphasis to the words "content" and "comments" to facilitate the Court's review of relevant documents.

12077431-1

the prohibition on "posting any content." Defendants' first argument is irrelevant – the Stipulation and Order prohibit not only "making any posts" but *also* "posting any content." Their second argument is wrong – "content" plainly includes "comments."[5]

### A. It is irrelevant whether a "comment" is a "post" because the Stipulation and Order prohibit more than just "posts."

Defendants' first argument ignores both the plain language of the Stipulation and Order and English grammar. Defendants argue that, in the context of social media, a "comment" is not a type of "post" and, therefore, comments are not prohibited by the Stipulation and Order. But the language of the Stipulation and Order prohibits Defendants from both "posting any content" *and* "making any posts of any kind." (Stipulation, ¶ 2; Order, ¶ 3.) And while both clauses contain a word with the root "post," "posting" and "posts" have entirely different meanings in this context.

"Post," as used in the phrase "making any posts," is a noun. However, "posting" when used in the phrase "posting any content," is a verb, not a noun. It refers more generally to the process of uploading content to a website. *See, e.g.*, THE AMERICA HERITAGE COLLEGE DICTIONARY p. 1087 (4th ed. 2010) ("To make an electronic message available by sending it to an online forum."); OXFORD DICTIONARY OF ENGLISH p. 1387 (3d ed. 2010) ("make (information) available on the Internet"; "submit (a message) to an Internet message board or blog").

Social media sites, including Instagram, commonly use the verb "post" to describe the process of users adding content – including comments – to the site: When a user "comments" on Instagram, Instagram's interface prompts the user to "post" the comment using a button prominently labeled "Post":

---

[5] Even if this Court does not find that Defendants' conduct was willful, because Defendants' arguments are wrong for the reasons explained herein, there is no objectively reasonable basis for Defendants to believe their conduct was permitted by the Stipulation and Order. *See Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019) (holding that a bankruptcy court may impose civil contempt sanctions "if there is no objectively reasonable basis for concluding that the [party's] conduct might be lawful" and that "a party's subjective believe that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable.").



Indeed, when Mr. Owoc posted the comments that are the subject of the Emergency Motion (and his most recent comments as discussed further below), he would have had to click a button confirming his intent to "post" that comment.   This fact alone confirms that to the extent Defendants believed that making a comment was somehow different from "posting," such belief is objectively unreasonable.

Under the Stipulation and Order, Defendants are prohibited from both "making any posts" and "posting any content."  And as discussed further below, because "comments" are "content," it is irrelevant whether or not "comments" fall within any credible definition of a "post."  Any other reading would render the prohibition on "posting any content" surplusage.  *See, e.g.*, *Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. Dist. Ct. App. 2006) ("[B]ased on rules of contract construction, no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it.") (quotes omitted); *see also Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1221 (11th Cir. 2015) (stating that it is "a foundational rule of contract construction that every word be given effect") (citing *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) ("[This Court] must read the contract to give meaning to each and every word it contains, and . . . avoid treating a word as redundant or mere surplusage.")).

---

[6] Screenshot taken on April 12, 2023 from Instagram (viewed on a desktop computer using Google Chrome browser) (red emphasis added).  A similar interface (including use of the "Post" function to add a comment on an existing post) is found on the Instagram app.

12077431-1

**B.**    **If there is a social-media-specific definition of the term "content," then it does not categorically exclude "comments."**

As an initial matter, it is not the case – as Defendants asserted without support at the April 12 hearing – that "content" is a social media term of art that necessarily excludes "comments." Indeed, Instagram itself defines "comments" as within the overall definition of "content." For example, an article in Instagram's Help Center leads with: "When you report *a piece of content* (example: post, *comment*, story) to us, we will take action to hide or remove *that content* from Instagram if we find that it goes against our Community Guidelines." (**Exhibit 1**.[7]) "Comments" thus are explicitly included as an example of "content." Virtually identical phrasing appears in other articles available through Instagram.[8]

Instagram also allows users to report "content" as violating its terms of use. Instagram's tool for users to "Report Violations of Our Community Guidelines" invites users to "report *content*" and, when users are asked to specify the content type, the tool includes a separate checkbox for "*Comment*" as among the types of content that could be violative of its guidelines. (*See* **Exhibit 2**.[9]) Similarly, a user completing Instagram's "Copyright Report Form" is asked to specify the type of "*Content* You Want to Report." (**Exhibit 3**.[10]) Users have the option to select from "[p]hoto, video or post," "[s]tory," "[a]d," or "[o]ther." Users that select "other" see the following message: "Instagram accounts contain many individual photos, videos, captions *and*

---

[7] Exhibit 1 is Instagram Help Center, *What happens when you report a post or profile on Instagram* (last visited Apr. 13, 2023), http://help.instagram.com/478796623912131.

[8] *See, e.g.*, Instagram Help Center, *How Instagram uses artificial intelligence to moderate content* (last visited Apr. 12, 2023), http://help.instagram.com/423837189385631 ("When we find *content* (*example*: post, *comment*, story) that goes against our Community Guidelines, we remove it from Instagram.").

[9] Exhibit 2 is Instagram Help Center, *Report Violations of Our Community Guidelines [Form]* (last visited Apr. 12, 2023), http://help.instagram.com/contact/383679321740945.

[10] Exhibit 3 is Instagram Help Center, *Copyright Report Form* (last visited Apr. 12, 2023), http://help.instagram.com/contact/552695131608132.

*comments*.  It's uncommon for the copyright in *all these pieces of content* to belong to one rights owner or infringe only one party's copyright."  *Id.*

In addition, Meta's Privacy Policy, which expressly applies to Instagram (as well as to numerous other social media sites and products, including Facebook[11]) makes clear in dozens of places that "comments" are a form of "content" on their sites:

- The following sentence is used in fourteen places in the policy:  "We collect your activity across our Products and information you provide, such as: *[c]ontent* you create, *like* posts, *comments* or audio."  (*E.g.*, **Exhibit 4** at 4.[12])

- Elsewhere, the policy clarifies that "public content" includes "comments":  "Who can see public *content*? . .  When *content* is public, it can be seen by anyone on or across our Products . . . .  For example, if you *comment* on Marketplace, a public Facebook Page, or a public *Instagram* account, . . . your *comment* . . . will be visible to anyone."  (*Id.* at 31.)

- The policy's section on "[w]ho can see or reshare your *content*" states "[p]eople in your audience can view *your content* and can choose to share it with others outside your audience, on and off our Products. . . . *When you comment on a post* or react to a photo, *your comment* or reaction can be seen by anyone who can see the post or photo."  (*Id.* at 30.)

- Instagram's privacy policy has defined "content" to include "comments" since at least 2015.  *See Binion* v. *O'Neal*, 2015 WL 3544518 (E.D. Mich. Apr. 2, 2015) ("Instagram's privacy policy states that '[b]y using our Service you understand and agree that we are providing a platform for you to *post content*, *including* photos, *comments* and other materials ("User *Content*"), to the Service and to share User *Content* publicly.'")

In short, Instagram's pervasive use of the terms shows that, if there is a social-media-specific definition of "content," it includes (and certainly does not categorically exclude) "comments."[13]

---

[11] Meta Platforms Inc. – formerly known as Facebook, Inc. – owns Instagram as well as other social media sites, including Facebook, and social media-adjacent products and technologies, such as WhatsApp and Meta Quest.

[12] Exhibit 4 is relevant excerpts from Meta Privacy Policy (last visited Apr. 12, 2023), http://mbasic.facebook.com/privacy/policy/printable.

[13] As the above examples make clear, "content" on Instagram includes *but is not limited to* "posts."  To the extent Defendants attempted to suggest otherwise at the hearing on April 12, the examples above conclusively demonstrate their arguments and representations during the hearing were wrong.

**C.**     **The ordinary definition of "content" includes "comments" posted to social media.**

Even beyond the above-described definition of "content" specific to Instagram and social media, the plain meaning of "content" is sufficiently expansive to include "comments."  Indeed, "in construing a contract, the court must give common words their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."  *Finlaw* v. *Finlaw*, 320 So. 3d 844, 848 (Fla. Dist. Ct. App. 2021) (citing *Murley* v. *Wiedamann*, 25 So. 3d 27, 29-30 (Fla. Dist. Ct. App. 2009) ("Words and phrases are given their common and ordinary meanings absent specific contractual definitions.")). The Stipulation and Order do not expressly define "content" as used therein, nor do they suggest that the term "content" should be interpreted using anything other than its ordinary meaning.[14]

The common-sense reading of the term "content" in this context necessarily includes "comments" on Instagram.  "Content" is defined broadly, and generally includes all types of information – not just images or videos as Defendants suggested at the April 12 hearing.  *See, e.g.*, Oxford Dictionary of English p. 376 (3d ed. 2010) ("[I]nformation made available by a website or other electronic medium."); The American Heritage College Dictionary p. 309 (4th ed. 2010) ("Written material, such as information or documents, provided for publication."); Webster's New World College Dictionary p. 314 (4th ed. 2007) ("All that is contained in something; everything inside.").[15]

---

[14] Moreover, no "manifest absurdity" results from giving "content" its ordinary meaning here.  To the contrary, it is Defendants' definition that would lead to absurd results.  As described below, reading "content" to exclude "comments" would create a nonsensical loophole to the limitations placed on Defendants elsewhere in the Stipulation and Order.

[15]  Even industry-specific dictionaries define "content" broadly enough to include "comments."  *See, e.g.*, Newton's Telecom Dictionary (30th ed. 2016) ("In today's information rich . . . society, 'carriage' is the new name for transmission.  And 'content' is the new name for what we carry.  Content is . . . movies, music, games, online books, information, etc.  Content used to be called information.").

**D.    Defendants' interpretation of the Stipulation and Order is absurd in light of the overall purpose of the Stipulation and Order.**

The Debtors filed this Adversary Proceeding out of concern that Defendants would use their continued access to the CEO Accounts to attempt to harm the Debtors' business. The Stipulation and Order were negotiated in an effort to obviate the need for the Court to hear and decide the TRO Motion on March 16, 2023, and the specific provisions of the Stipulation and Order were expressly designed to prevent such damage pending final resolution of the proceeding: Defendants cannot "post[] any content" for a 45-day period, other than if the Debtors request that they do so. (Stipulation, ¶¶ 2-3; Order, ¶¶ 3-4.)

But if Defendants' narrow reading of the Stipulation and Order were correct such that there is no restriction on Defendants' posting of "comments," then Defendants' separate obligations under the Stipulation and Order would be a farce. Specifically, Defendants could post what the Debtors requested, but then immediately use what they contend is an unfettered ability to post "comments" (either on that same post or otherwise) that are intended to undercut the message of the post, thereby harming the Debtors' business and defaming the Company, its professionals, its lenders, and the overall bankruptcy process.[16] Indeed, Defendants did precisely that here: posting the requested content (eventually), but then immediately rage-posting comments that could only have been intended to undercut what Defendants were required to post and "pinning" those comments so that they appear directly adjacent to the subject post. This would violate the spirit and purpose of the Stipulation and Order. Such an absurd result does not support Defendants' strained interpretation of the Stipulation and Order offered in response to the Emergency Motion.

---

[16] Comments to a post are viewable by anyone who can see the underlying post. *See* Meta Privacy Policy, *Who can see or reshare your content* (last visited Apr. 12, 2023), http://mbasic.facebook.com/privacy/policy/printable/ ("When you comment on a post or react to a photo, your comment or reaction can be seen by anyone who can see the post or photo.").

E.    **Following the April 12 hearing, Defendants again posted defamatory comments in violation of the Stipulation and Order.**

As they are entitled to under the Stipulation and Order, on April 12, 2023 at 2:08 p.m. ET the Debtors provided to Defendants, through their counsel, additional content to be posted to the CEO Instagram Account.  On April 13, 2023 at approximately 9:30 p.m. ET (well past the nine-hour window to comply with such a request under the Stipulation and Order), Defendants posted the requested content.  But, despite having heard this Court at the conclusion of the April 12 hearing caution parties of potential consequences from additional conduct violative of the Stipulation and Order, Defendants again posted and pinned additional false and disparaging comments, this time taking aim at the Debtors' counsel and other professionals and again falsely claiming they were "forced to make a post against [their] will."  (**Exhibit 5**.)

Respectfully, Defendants' latest conduct underscores the need for the relief requested in the Emergency Motion.  Not only should sanctions be imposed, but the passwords to the CEO Accounts should be turned over to the Debtors so that they can be changed.  Defendants' objectively unreasonable interpretation of the Stipulation and Order and conduct in defiance thereof conclusively demonstrates that it is appropriate for this Court to hold them in contempt and ensure that they have no further access to the CEO Accounts pending adjudication of the Adversary Proceeding.

## CONCLUSION

Defendants' argument that "comments" are different from "posts" is irrelevant because the Stipulation and Order prevent *both* "making any posts" and "posting any content."   And Defendants' argument that "comments" are not "content" is wrong, based both on how "content" is defined on Instagram and on the plain language of the Stipulation and Order.  Defendants willfully violated, and continue to violate, the Stipulation and Order.  As a result, Defendants

should be held in contempt and face sanctions as requested in the Emergency Motion, or more severe sanctions as the Court may determine appropriate given Defendants' continued violative conduct.

*[Remainder of page intentionally left blank]*

-10-

Dated:    April 14, 2023
          Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac
vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        hugh.murtagh@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

- and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Plaintiffs/Debtors*

12077431-1

# EXHIBIT 1

 Help Center

 Instagram Features

 Manage Your Account

 Staying Safe

 Privacy, Security and Reporting

Terms and Policies

# What happens when you report a post or profile on Instagram

 Copy link

When you report a piece of content (example: post, comment, story) to us, we will take action to hide or remove that content from Instagram if we find that it goes against our Community Guidelines. Our Community Guidelines define what is and isn't allowed on Instagram, and they apply all over the world. They're designed to encourage expression and create a safe environment on Instagram.

Even if we don't remove the content or profile you reported, we understand that you likely want to see less of this type of content on Instagram. We may use your report to make content similar to what you reported appear lower in your feed or in the recommendations we make for you, like Suggested Posts and Explore.

Learn more about how to check the status of your report and what you can do if you don't agree with Instagram's decision about content you reported.



Was this helpful?

Yes          No



Related Articles

How do I report a post or profile on Instagram?

How to Report Things

 **Help Center**



Report an account that's impersonating you on Instagram

Report a technical problem on Instagram

About Us

API

Jobs

Terms

Privacy

from ∞ Meta        © 2023 Meta

# EXHIBIT 2

How can we help?

---

## Help Center

Instagram Features

Manage Your Account

Staying Safe

Privacy, Security and Reporting

Terms and Policies

Instagram for Businesses

### Report Violations of Our Community Guidelines

Please use this form to report content (ex: photos, videos) on Instagram that violates our Community Guidelines. When you report something, your information isn't shared with the person whose post or profile you're reporting.

**Do you have an Instagram account?**

Yes

No

**Where does the violation you're reporting appear?**

Photo or video

Comment

An entire profile

**How is this comment violating our guidelines?**

Self-harm or suicide

Click here if you wish to report harassment or bullying.

Send

---

ABOUT US    HELP    API    JOBS    TERMS    PRIVACY

© 2023 INSTAGRAM, INC.

ENGLISH (US)    ESPAÑOL    FRANÇAIS (FRANCE)    中文(简体)    العربية    PORTUGUÊS (BRASIL)    ITALIANO    한국어    DEUTSCH    हिन्दी    日本語

# EXHIBIT 3

How can we help?

---

**Help Center**

| |
|---|
| Instagram Features |
| Manage Your Account |
| Staying Safe |
| Privacy, Security and Reporting |
| Terms and Policies |
| Instagram for Businesses |

## Copyright Report Form

**Copyright is a legal right that protects original works of authorship, such as film, music, books and art. This form is to be used only for reporting alleged infringements of your copyright. Abuse of this form may result in the termination of your account.**

**Describe your relationship to the rights owner.**

    I am the rights owner.

    I am reporting on behalf of my organization or client.

    I am reporting on behalf of someone else.

### Your Contact Information

**Note that we regularly provide the rights owner's name, your email address and the nature of your report to the person who posted the content you are reporting. This person may use the information you provide to contact you. For this reason, you may wish to provide a valid generic business or professional email address.**

**Your full name**

**Mailing address**

**Email address**

Please provide a valid email address that can be used to contact you. This may be a professional or business email address. Keep in mind the reported party may use this email to contact you.

**Confirm your email address**

### Rights Owner Information

**Name of the rights owner**

This may be your full name or the name of the organization for whom you are the authorized representative.

**Where are you asserting rights?**

--Select an option--

**Which of these best describes the copyrighted work?**

Please select

**Please provide links (URLs) to the copyrighted work or describe it in the box below.**

You can provide links (URLs) to examples on your website, your Instagram account or anywhere else on the web. Please note that we are unable to review materials hosted on a third-party application.

### Content You Want to Report

**What type of content are you reporting?**

    Photo, video or post

    Story

    Ad

    Other

---

Instagram accounts contain many individual photos, videos, captions and comments. It's uncommon for the copyright in all these pieces of content to belong to one rights owner or infringe only one party's copyright. If you believe this object is infringing rights owner's copyright in its entirety, you may continue with this report.

**Please provide links (URLs) leading directly to the specific content you are reporting.**

You can report multiple links (URLs) in this report. To do this, enter links (URLs) in the box below. Enter one link per line.

```
https://www.instagram.com/...




```

☐ I do not have links (URLs) leading directly to the specific content I want to report.

**Describe why you are reporting this content.**

| Please select | ⌄ |
|---|---|

**Please provide any additional information that can help us understand your report.**

```


```

**Attachment**

Note that we only support the following file formats: JPG, GIF, PNG, TIFF and PDF.

[Choose Files]  No file chosen

## Declaration Statement

By submitting this notice, you state that you have a good faith belief that the reported use described above, in the manner you have complained of, is not authorized by the intellectual property rights owner, its agent, or the law; that the information contained in this notice is accurate; and, under penalty of perjury, that you are authorized to act on behalf of the owner of the intellectual property rights at issue.

**Electronic signature**

Your electronic signature should match your full name.

```
```

[Send]

ABOUT US    HELP    API    JOBS    TERMS    PRIVACY                    © 2023 INSTAGRAM, INC.

**ENGLISH (US)**    ESPAÑOL    FRANÇAIS (FRANCE)    中文(简体)    العربية    PORTUGUÊS (BRASIL)    ITALIANO    한국어    DEUTSCH    हिन्दी    日本語

# EXHIBIT 4

∞ Meta

# Privacy Policy

**Explore the policy**

What is the Privacy Policy and what does it cover?  ⌄

What information do we collect?  ⌄

How do we use your information?  ⌄

How is your information shared on Meta Products or with Integrated Partners?  ⌄

How do we share information with Partners, vendors, service providers and third parties?  ⌄

How do the Meta Companies work together?  ⌄

How can you manage or delete your information and exercise your rights?  ⌄

How long do we keep your information?  ⌄

How do we transfer information?  ⌄

How do we respond to legal requests, comply with applicable law and prevent harm?  ⌄

How will you know the policy has changed?  ⌄

Privacy notice for United States residents  ⌄

How to contact Meta with questions  ⌄

Why and how we process your information  ⌄

---

**Other policies**

Terms of Service  ⇱

Cookies Policy  ⇱

# What is the Privacy Policy and what does it cover?

Effective January 1, 2023

We at Meta want you to understand what information we collect, and how we use and share it. That's why we encourage you to read our Privacy Policy. This helps you use Meta Products in the way that's right for you.

In the Privacy Policy, we explain how we collect, use, share, retain and transfer information. We also let you know your rights. Each section of the Policy includes helpful examples and simpler language to make our practices easier to understand. We've also added links to resources where you can learn more about the privacy topics that interest you.

It's important to us that you know how to control your privacy, so we also show you where you can manage your information in the settings of the Meta Products you use. You can update these settings to shape your experience.

Read the full policy below.

What Products does this policy cover? [1]                                       ›

Learn more in Privacy Center about managing your privacy            ›

---

1

## What Products does this policy cover?

This policy describes the information we, Meta Platforms, Inc., process to provide Meta Products. Meta Products, which we also call "Products," include:

- Facebook

- Messenger

- Instagram (including apps like Boomerang)

- Facebook Portal products

- Meta Platforms Technologies Products, such as Meta Horizon Worlds or Meta Quest (when using a Facebook or Meta account)

- Shops

- Marketplace

- Spark AR

- Meta Business Tools

- Meta Audience Network

- NPE Team apps

- Facebook View

Some of our Products also have a supplemental privacy policy[2] that adds to the information provided in this policy.

---

2

## Supplemental policies

Bulletin ⬈

Facebook Portal products ⬈

Facebook View ⬈

Free Basics ⬈

Meta Platforms Technologies Products ⬈

Oversight Board ⬈

---

# What information do we collect?

The information we collect and process about you depends on how you use our Products. For example, we collect different information if you sell furniture on Marketplace than if you post a reel on Instagram. When you use our Products, we collect some information about you even if you don't have an account[3].

Here's the information we collect:

## Your activity and information you provide



On our Products, you can send messages, take photos and videos, buy or sell things and much more. We call all of the things you can do on our Products "activity." We collect your activity across our Products and information you provide[4], such as:

- Content you create, like posts, comments or audio[5]

- Content you provide through our camera feature or your camera roll settings, or through our voice-enabled features. Learn more[6] about what we collect from these features, and how we use information from the camera for masks, filters, avatars and effects.

- Messages you send and receive, including their content, subject to applicable law. We can't see the content of end-to-end encrypted messages unless users report them to us for review. Learn more.

- Metadata[7] about content and messages, subject to applicable law

- Types of content you view or interact with, and how you interact with it

- Apps and features you use, and what actions you take in them. See examples[8].

- Purchases or other transactions you make, including credit card information. Learn more[9].

- Hashtags you use

- The time, frequency and duration of your activities on our Products

### Information with special protections

You might choose to provide information about your religious views, your sexual orientation, political views, health, racial or ethnic origin, philosophical beliefs or trade union membership. These and other types of information could have special protections under the laws of your jurisdiction.

# How is your information shared on Meta Products or with Integrated Partners?



## On Meta Products

Learn more about the different cases when your information can be shared on our Products:

### People and accounts you share and communicate with

When you share and communicate using our Products, you can sometimes choose the audience[34] for what you share.

When you interact with people or businesses, they can see:

**What you share with them**

For example, the audience you choose can see when you:

- Share a post you've written

- Share a photo or video

- Create a story

- Share a news article

- Add information to your profile

**What you communicate with them**

People you interact with can see what you send to them. So if you send a person or a business a message on Messenger or Instagram, that person or business can read your message.

### Some of your activity

People and businesses can also see some of your activity on our Products. This includes when you:

- Comment on or react to others' posts

- Engage with ads or other sponsored or commercial content, like by commenting or liking

- Allow content you've shared about a product in a Shop to be shared across our Products

- View their story on Facebook or Instagram

- Connect a new Meta device, like Portal or Ray-Ban Stories, to your account

### When you're active

Some of our Products might provide you with settings that allow others to see when you're active on our Products, such as "active status." In some cases, we also offer settings that allow others to see when you're active in a particular section of one of our Products, like a message thread, game or event, or when you last used one of our Products.

Learn how to update your Active Status on Facebook and Messenger, or how to update your Activity Status on Instagram.

## Content others share or reshare about you

### Who can see or reshare your content

People in your audience can view your content and can choose to share it with others outside your audience, on and off our Products. For example, when you share a post or send a message to specific friends, they can download, screenshot or reshare it with anyone, on, across or off our Products.

When you comment on a post or react to a photo, your comment or reaction can be seen by anyone who can see the post or photo. This can include people you aren't connected to. The person who shared the post can also change their audience at any time after you've interacted with it.

### How information about you can be shared

People who use our Products can share information about you with the audience they choose. For example, they can:

- Share a photo or video of you in a post, comment, story, reel or message

- Mention you in a post or story

- Tag you in a post, comment, story or location

- Share details about you in a post, story or message

If you're uncomfortable with what others have shared about you on our Products, you can always choose to report posts and stories.

**More resources**

Remove a tag from a photo or post on Facebook
Facebook Help Center

Remove a tag from a photo or video on Instagram
Instagram Help Center

## Public content

**What content is public?**

Some of your information and activity are always public. This includes your name, Facebook and Instagram username, profile picture and activity on public Facebook Pages and groups.

Other content you can choose to set to Public, like posts, photos and videos you post to your profile, Stories or Reels.

**Who can see public content?**

When content is public, it can be seen by anyone on or across our Products, and in some cases off our Products, even if they don't have an account.

For example, if you comment on Marketplace, a public Facebook Page or a public Instagram account, or if you leave a rating or review, your comment, rating or review will be visible to anyone. It could appear in any of our Products or be seen by anyone, including off our Products.

**Where can public content be shared?**

We, you and people using our Products can send public content (like your profile photo, or information you share on a Facebook Page or public Instagram account) to anyone on, across or off our Products. For example, users can share it in a public forum, or it can appear in search results on the internet.

Public content can also be seen, accessed, reshared or downloaded through third-party services, like:

- Search engines. Learn more[35].

- APIs

- The media, like TV

- Other apps and websites connected to our Products

**More resources**

Public information on Facebook
Facebook Help Center ⧉

How to make a public account private on Instagram
Instagram Help Center ⧉

# With Integrated Partners

You can choose to connect with Integrated Partners[36] who use our Products. If you do, these Integrated Partners receive information about you and your activity.

These Integrated Partners can always access information that's public on our Products. Learn more about other information they receive and how they handle your information:

## When you use an Integrated Partner's product or service

**Information they receive automatically**

When you use an Integrated Partner's products or services, they can access:

- What you post or share from these products or services

- What you use their services to do

- Information from and about the device you're using

See examples[37] of when an Integrated Partner might receive your information.

**Information they receive with your permission**

Sometimes these Integrated Partners ask you for permission to access certain additional information from your Facebook, Instagram or Messenger account. In their request, they'll explain what information they'd like to access and let you choose whether to share it.

On Facebook, this includes things like your email address, hometown or birthday. On Instagram, this includes content, like photos and videos, that you've shared from your account when the account was set to private.

Learn what happens if you choose to share your friends list, or if your friends choose to share their friends list.[38]

We automatically log when you receive a request from an Integrated Partner to access your information. These requests to access information are separate

# EXHIBIT 5




bangenergy.ceo ✔ • Follow
Original audio

⋯


bangenergy.ceo ✔ BLUE RAZZ OR PEACH MANGO? Comment your flavor below!

19m

bangenergy.ceo ✔ $3.2 BILLION SCAM: Bang Energy had a $3.2 billion offer. Jordi Guso conducted what I believe was a fraudulent investigation into the missing $3.2 billion offer. Guso admitted that he failed to interview anybody, conduct any email discovery or text discovery into the missing $3.2 billion.

I believe it is of it most important that the FBI, DOJ, district attorney, states attorney, and Chief Justice and other relevant federal and state organizations conduct an investigation into Jordi Guso and this multi-billion dollar fraud!
I'm not an attorney, but I consider this a massive fraud and purposeful obstruction of justice by Jordi Guso and Berger Singerman into Rothschild investment banker and specifically Homer Parkhill, who refused to answer my questions in regard to the missing $3.2 billion offer when I was the CEO, Chairman of the Board and 100% owner of VPX/Bang Energy.

Jordi Guso is also trying to violate my first amendment right and prevent me from commenting also.

The post above is a fraud on the public. I was forced to make a post against my will. This is the third post that has been used to defraud the public and make the public think that I willingly created and posted this content. If you know any State or Federal organization contacts who can investigate this $3.2 billion ongoing racket of organized crime (RICO), please alert the authorities now!

17m    2 likes

—— View replies (1)