UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]

      Debtors.

_____/

Case No.: 22-17842-PDR

Chapter 11
(Jointly Administered)

VITAL PHARMACEUTICALS, INC., *et al.*,

      Plaintiffs,

v.

JOHN H. OWOC AND MEGAN E. OWOC,

      Defendants.

_____/

Adv. Proc. No. 23-01051-PDR

**DECLARATION OF MEGAN E. OWOC IN SUPPORT
OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, Megan E. Owoc, hereby declares as follows under the penalty of perjury:

**A.    Background.**

1.    I am the wife of John H. Owoc aka Jack Owoc.

2.    I have worked for Vital Pharmaceuticals, Inc. ("<u>VPX</u>") in various roles in the marketing department since October 2010. Until March 2023, I served as the Senior Vice

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

President of Marketing of <u>VPX</u>.

3.      I submit this Declaration in support of the *Response to Motion for Summary Judgment* being filed contemporaneously herewith.

4.      Unless otherwise noted I am personally familiar with the matters set forth herein.

**B.      The Jack Owoc Persona.**

5.      I have always known my husband to have been an avid health-conscious fitness enthusiast, weight-lifter, scientist, innovator, inventor, and creator of dietary and nutritional supplement and energy drinks, sports drinks, and nutritional bars, motivational speaker and writer.

6.      Jack Owoc has carefully designed each of his endeavors to reflect and further the essence of his own personal philosophy and belief system, *that is*, in short, that we as human beings have an unlimited capacity to develop our bodies, minds, and spirits, with God's help, to their highest capacity through hard work, cutting edge science, positive thinking, and an adamant refusal to quit, which are characteristics of a "CEO" or "chief operating officer."  The foregoing philosophy, when combined with Jack's image, Jack's style, and Jack's overall identity is the Jack Owoc persona.

7.      Jack has been successful at building and cultivating his persona such that separate and apart from any product and any company, the Jack Owoc persona is a brand that has value.

8.      It is for this reason, specifically, that when my husband and I decided to heavily incorporate and utilize social media to market the Debtors' products and endeavors, we, deliberately and expressly, created our own personal, individual social media accounts that we segregated from the larger assortment of the Debtors' social media accounts and treated differently.

9.      Moreover, there has never been a concern or suggestion that Jack's personal social

media accounts, *i.e.*, the Accounts, would somehow become the property of the Debtors because *inter alia* neither Jack, nor I, have never been, a party to any employment agreement with the Debtors.

  **C. The Accounts Have Always Been the Personal Property of Jack Owoc.**

  10. I am personally aware that Jack owns three (3) personal social media accounts that are here at issue:  An Instagram and TikTok account each bearing the handle @bangenergy.ceo, and a Twitter account bearing the handle @BangEnergyCEO.  These accounts collectively are hereinafter referred to as the "<u>Accounts</u>".

  11. Jack and I personally conceived of the handles for the Accounts and specifically utilized the handle to refer to and complement the Jack Owoc persona.

  12. "Bangenergyceo" is a double entendre, that on the one hand obviously referred to Jack's former position as CEO of the Debtors.  But at the same time, the "Bangenergyceo" refers to the Jack Owoc persona of the explosive, high-intensity, unstoppable leader – literally the Bangenergyceo.  As discussed below, a substantial majority of the postings on the Accounts are expressly designed to, and successfully do in fact, market, cultivate, and curate the Jack Owoc persona – separate and apart from the Debtors' products.

  13. These are posts that posts that are solely related to our family, to me as his wife, to the nature and success of our relationship, to the births of our children, wedding anniversaries, date nights, family gatherings like Christmas, Easter, etc., personal endeavors, personal beliefs, activities that further and reflect the Jack Owoc persona like drumming, fishing, weightlifting, and posting about our church and our faith.  In fact, Jack has posted video content related to the home birth of each of my five (5) children.  I can't think of anything more personal than a post about the birth of my children, which we wanted to share with all of our personal followers.

14.     I personally created the Twitter and Instagram accounts at issue.

15.     My husband and I specifically instructed company personnel to create the Tik Tok account.

16.     From their inception and continuing up through and until my termination, it was always understood and agreed that the Accounts were exclusively Jack's personal social media accounts and the personal property of Jack Owoc.

17.     Jack has always had exclusive possession, custody, and control of the Accounts. From their inception and continuing through until the present, the Debtors have never held possession of the passwords for any of the Accounts.

18.     Indeed, prior to my termination, the Debtors had never even requested the passcodes for Jack's Accounts because it was always agreed and understood that these accounts were exclusively his own personal social media accounts.  In fact, on February 22, 2023, VPX's intellectual property in-house legal counsel, Gideon Eckhouse confirmed that our personal accounts would not be part of the VPX sale to a potential buyer.  These personal accounts, per the "Latham team" would be "excluded from this list" of social media accounts to be transferred to a potential buyer.  A true and correct copy of the February 22, 2023, email is attached hereto as **Exhibit "1."**

19.     The only employees of the Debtors who ever had access to the passwords for Jack's Accounts are those whom Jack, as owner of the Debtors, specifically tasked with assisting him with his personal accounts.

20.     On the other hand, the Debtors have over 20 Instagram business accounts, 8 TikTok business accounts, 5 Twitter business accounts, and over 19 Facebook business accounts (all collectively, the "Company Accounts").  There are over 52 Company Accounts that are in the

possession and control. As to these Company Accounts, the Debtors have always held possession of the usernames and passwords and continue to do so. It is important to note that for these Company Accounts, there are Company Accounts for the Bang product for all three (3) social media platforms at issue in this Motion for Summary Judgment, *e.g.*:

    a) Instagram: @bangenergy, @banghardseltzer, @bang.fuelteam, @bang_merch, @bangenergysweepstakes, @bangenergy.careers, @bangenergyaustralia, @bangenergy.germany, @bangenergy.finland, @bang.chile, @bangenergy.abcislands, @bangenergy.denmark, @bangenergynorway, @bangenergy.costarica, @bangenergy.bolivia, @bangenergy.sweden, @bangenergy.colombia, @bangenergy.southafrica, @bangenergy.france, @bangenergy.switzerland and @bangenergy.eu;

    b) Twitter: BANGenergy; and

    c) TikTok: @bangenergy @bang.fuelteam,

which are in the possession and control of Debtors. As to these Company Accounts, the Debtors have always held possession of the usernames and passwords and continue to do so. It is noteworthy to point out that the Company Account @bangenergy on Instagram has 2.2 million followers, while my personal @bangenergyceo Instagram account has less than half of that, 1 million followers.

21. As to the Accounts, from their inception and continuing through until the present, Jack has always exercised full, complete, unilateral discretion as to the content that would be posted. No individual was ever permitted to post content to the Accounts without Jack's express consent and approval.

22. I am personally aware that Jack frequently specifically *rejected* content suggested

by the Debtors and/or demanded that it be revised because it did not reflect and complement the Jack Owoc persona.

23.     The Debtors have never had control over any procedures according to which Jack would post material or direct material to be posted on his Accounts.

24.     The Debtors have never had control over the timing according to which Jack would post material or direct material to be posted on his Accounts.

25.     As to the Company Accounts however, the Debtors were, and continue to be, free to post whatever content was deemed appropriate for the marketing of their products.  As the Senior Vice President of Marketing at VPX, the Debtors operated under my direction as to the social media strategy, posting guidelines, posting schedules, content calendars and more.  After my termination, they were free to post as they wish.

26.     I am personally aware that Jack personally, individually approved all marketing content created by the Debtors that Jack personally posted or approved and directed be posted on his Accounts.   I am further aware that he approved and/or directed such postings to be made for the benefit of the Debtors, but also because he deemed the content to reflect, enhance, and compliment the Jack Owoc persona.

27.     Indeed, the substantial majority of postings on Jack's social media accounts, *i.e.*, the Accounts, are of a personal nature, designed to complement and enhance the Jack Owoc persona, and are not marketing the Debtors' business or product.

28.     The Debtors' assertion that the "vast majority" of postings made to Jack's Accounts is untrue.  In point of fact, the **majority** of postings that Jack made or approved or specifically directed be made are personal postings for the benefit of the Jack Owoc persona.

**D.      I am in Need of Further Discovery.**

29.     The complaint in the above-captioned adversary proceeding was filed approximately one month ago, on March 14, 2023.  ECF No. 1.  I have not yet filed an answer or other response to it.

30.     Additionally, the filing date of the complaint, March 14, 2023, is approximately five (5) days after I was terminated as an officer of the Debtors on March 9, 2023.  Prior to my termination, my primary email address was a corporate email with the Debtors.  Following my termination, I have been unable to access emails from that account, or other corporate documents and records of the Debtors.

31.     In order to put forth sufficient evidence for the Court to resolve this matter, I am in need of discovery that my attorneys' have as of yet been unable to obtain.  This includes, but is not limited to:

> a)     Documents and deposition testimony from John C. Didonato, the Chief Transformation Officer (the "CTO") of the Debtors who made a declaration in support of the Motion.  Among other things, the CTO swears that he has "personal knowledge" that of the more than 6,400 posts on the Instagram account, "a vast majority…promote the Debtors' products and businesses."  The CTO also swears that he has "personal knowledge" that the content of the TikTok and Twitter accounts "each include[e] content primarily focused on promoting the Debtors' products and business."  Those statements are not credible for the reasons stated hereinabove.

> b)     All copies, editions and drafts of the Employee Handbook, including any employee handbook or agreement purportedly executed by me.  Upon information and belief, I have never signed an employee agreement or employee handbook with the Debtors.

> c)     Documents and deposition testimony from a Fed. R. Civ. P. 30(b)(6) representative of the Debtors knowledgeable to testify about the allegations in the Complaint;

> d)     Debtors' corporate documents, emails and communications regarding the Accounts, including communications as to the ownership the Accounts;

e)    Discovery from relevant social media entities, including Instagram, TikTok and Twitter, for terms and conditions with account holders and any contracts relevant to my Accounts; and

f)    Discovery, including, without limitation, documents and deposition transcripts of Christina Weronik, Social Media Manager at VPX; Esther Polanco, Director of Operational Excellence at VPX; Sikander Khan, Social Media Community Manager at VPX; and Bree Comacho, former Social Media Manager at VPX; and Daisy Grunewald, Director of Marketing at VPX.

32.    I did not authorize my former counsel in this adversary proceeding, Justin Luna, Esq., to enter into the stipulation for temporary restraining order entered at ECF Nos 9 and 10.

I declare under penalty of perjury that the foregoing is true and correct.

4/16/2023

Executed On: _____

DocuSigned by:

572A04B2FEA646C...

Megan E. Owoc

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on 16th day of April 2023.

Respectfully Submitted,

**SHRAIBERG PAGE, P.A.**
Attorneys for Owocs
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law

By:   _/s/ Bradley S. Shraiberg_
       Bradley S. Shraiberg
       Florida Bar No. 121622

# EXHIBIT 1

**From:** Gideon Eckhouse <gideon.eckhouse@bangenergy.com>
**Sent:** Wednesday, February 22, 2023 4:40 PM
**To:** Meg Liz Owoc
**Cc:** Gregg Metzger
**Subject:** For Approval: disclosure of social media handles

Dear Meg,

Please provide your approval to disclose a list of all of the company's social media accounts/handles as part of the listing of assets for a sale of VPX to a potential buyer.

The Latham team advised that social media accounts connected to the business should be transferred to a buyer as part of the sale at large. Personal accounts, such as yours and Jack's, would be excluded from this list. Further, they are not asking for any access to the accounts at this time.

We are merely asking for your approval to compile and disclose the full list of brand social media accounts and handles. If you approve, then please let me know with whom on your team I should coordinate. We will send you the final list for edits before disclosing to Latham.

Best,
Gideon

**Gideon Eckhouse**
Chief IP Counsel
gideon.eckhouse@bangenergy.com

**BANG | VPX | REDLINE**
1600 N. Park Drive Weston, FL 33326
(954) 740-0501

BangEnergy.com
**Fuel Your Destiny™**

