UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,   Case No.: 22-17842-PDR

    Debtors.   Chapter 11
_____/   (Jointly Administered)

VITAL PHARMACEUTICALS, INC., *et al.*,

    Plaintiffs,

v.   Adv. Proc. No. 23-01051-PDR

JOHN H. OWOC AND MEGAN E. OWOC,

    Defendants.
_____/

**SUPPLEMENTAL MEMORANDUM OF JOHN H. OWOC
IN OPPOSITION TO EMERGENCY MOTION FOR CONTEMPT**

At the conclusion of the April 12, 2023 hearing on the emergency contempt motion (the "Motion") [ECF No. 28], filed by Vital Pharmaceuticals, Inc. *et al.* (together, the "Debtors"), the Debtors requested supplemental briefing on the meaning and use of the terms "post" and "comment" in a social media context. The Court granted that request, and the brief of Mr. Owoc follows.

**THE LANGUAGE OF THE ORDER**

The Debtors allege that by commenting on an Instagram account, Mr. Owoc violated the following term of the *Order Approving Stipulation Regarding Debtors' Motion for Temporary Restraining Order* (the "TRO") [ECF No. 10]: "The Defendants are prohibited from posting any content or making any posts of any kind to or from the CEO Accounts until forty-five (45) days

{2467/000/00553721}

after the date of this Order." TRO ¶ 3 (emphases supplied). The term "comment" does not appear in the TRO.

## THE EVIDENCE ADDUCED AT THE HEARING

The Court heard evidence from one witness at the hearing: Mr. Owoc. The testimony of Mr. Owoc, together with other evidence admitted at trial, establishes the following:

- Mr. Owoc and his wife, Megan Owoc, are experts in social media. The Owocs have utilized social media for over a decade. Despite being over 60 years old in a field that traditionally favors younger personalities, Mr. Owoc maintains over 2 million followers on various social media accounts. The Debtors' prepetition sales reached $6 billion annually in large part because of the Owocs' use of social media. Hr'g Tr. p. 30, l. 4–p. 32, l. 2.[1]

- On the social media website Instagram, a "post" is generally understood to be the displaying of an image, picture or video. The image, picture or video in question is referred to as "content." *Id.* at p. 33, l. 21–p. 34, l. 11; p. 49, l. 20–p. 50, l. 11.

- By contrast, a "comment" is not a post. It is instead a commentary or reaction to the content in a preceding post. *Id.* at p. 33, ll. 18–25; p. 50, ll. 12–25.

- The distinction between posts and comments is further evidenced by the fact that Instagram requires a user to have the password to a social media account in order to <u>post</u>, but <u>does not</u> require the user to have the account's password in order <u>comment</u> on the page. Any person can comment on a post. The parties expressly stipulated as to this fact. *Id.* at p. 34, ll. 18–21; p. 60, l. 9–p. 61, l. 10.

- Exhibits 5 through 7, inclusive, introduced by the Debtors and admitted at trial consist of <u>comments</u> made on Instagram on April 9 and 10, 2023, by the bangenergy.ceo social media account at issue in this adversary proceeding (the "<u>Account</u>"). The term "Comments" can be clearly seen in the header of the screenshots that comprise Exhibits 5 through 7. *See* ECF Nos. 33, 33-5, 33-6 and 33-7 (Debtors' exhibit register and exhibits).

- Mr. Owoc did not consent to the entry of the TRO. It was instead agreed to by his former counsel without informing Mr. Owoc. Hr'g Tr., p. 32, ll. 6–24.

- Notwithstanding this, following entry of the TRO Mr. Owoc <u>posted</u> using the Account only those posts requested by the Debtors' counsel. *Id.* at p. 33, ll. 2–17.

- In fact, the Debtors' requests to Mr. Owoc used the same terminology by requesting that "content" be "posted" to the Account. *See* Owocs' Ex. 2 (email from Debtors'

---

[1] The transcript of the hearing is attached as **EXHIBIT "A"**.

- counsel requesting that "content is posted").

- Mr. Owoc did not believe he was violating the TRO by making <u>comments</u> because, again, a comment is not a post but a reaction to one that does not require a password. *Id.* at p. 33, l. 18–p. 34, l. 11.

The Debtors' cross examination of Mr. Owoc concerned the unauthorized entry into the TRO by his formal counsel and Mr. Owoc's educational background. *See generally* Hr'g Tr. p. 35, l. 20—p. 48, l. 8. Nothing in the cross examination, nor any evidence adduced and entered at the hearing, contradicts any of the preceding facts.

The Debtors did not call a witness. It was established repeatedly at trial that the Debtors were not introducing evidence beyond their exhibits. *See* Hr'g Tr. p. 18, ll. 9–12 (the Debtors rest their case); p. 53, ll. 10–15 (the Court stating that "the evidence is now closed for both parties" and the Debtors affirming as such).

## **APPLYING THE EVIDENCE TO THE LAW**

Contempt—whether civil or criminal—is a "severe remedy" and "principles of 'basic fairness requir[e] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt. . . ." *See Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019) (quotation omitted).

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Diamond Resorts Int'l, Inc. v. U.S. Consumer Attorneys, P.A.*, 2021 WL 9596129, at *2 (S.D. Fla., Apr. 9, 2021) (quotation and citations omitted). "Clear and convincing evidence is evidence that places in the ultimate factfinder an abiding conviction that the truth of its factual contents are highly probable." *Id.* Additionally, the terms of the order must be "clear, definite, and unambiguous." *Id.* This requirement is a material one; "a party cannot be held in contempt for violation of a court order where the order is not clear and unambiguous." *Deltona Transformer Corp. v. NOCO Co.*, 2020

{2467/000/00553721}
3

WL 11420589, at *8 n. 3 (M.D. Fla. Oct. 30, 2020) (noting that a finding of contempt could not be entered because "the definition of the term 'sales data' was left somewhat ambiguous . . . .").

Additionally, courts "<u>construe any ambiguities in favor of the party charged with contempt</u>." *Diamond Resorts*, 2021 WL 9596129, at *2 (quoting *Peery v. City of Miami*, 977 F.3d 1061, 1077 (11th Cir. 2020) (internal citation omitted) (emphasis supplied). The Supreme Court has also held (in the context of discharge injunctions) that because "civil contempt is a severe remedy…principals of basic fairness require that those enjoined receive <u>explicit notice</u> of what conduct is outlawed before being held in civil contempt." *Taggert v. Lorenzen*, 139 at 1802 (quotation omitted). Thus, a court may not hold a party in contempt when there is a "fair ground of doubt" as to whether their conduct is lawful under the order in question. *See Taggert*, 139 S.Ct. at 1804.

Given these standards, the Debtors cannot demonstrate, by clear and convincing evidence, that the TRO is clear, definite and unambiguous, and that no ambiguities or fair grounds of doubt exist as to whether Mr. Owoc violated its terms. In the world and language of social media, to make a "post" or "posting" is simply not the same as making a "comment" or "commenting." *See* Hr'g Tr., p. 34, ll. 18–21; p. 60, l. 9–p. 61, l. 10. The Debtors' efforts to argue otherwise in their brief, by relying on multiple dictionaries, and Instagram Help Center and Meta Privacy Policy websites, in of itself, corroborates the ambiguity of the TRO. A clear and unambiguous order would not require the Debtors' extensive and labored parsing. *See, e.g.*, ECF No. 38 at p. 3 ("And while both clauses contain a word with the root 'post,' 'posting' and 'posts' have entirely different meanings in this context.").

Beyond the contortions of the Debtors argument, the evidence at trial establishes that ambiguities and fair grounds of doubt do exist. Through unrebutted testimony, Mr. Owoc

established that: (1) he is an expert in social media, with millions of followers and over one decade of experience in the field, (2) in common Instagram parlance, the terms "post" and "comment" have distinct meanings, with the former referring to the displaying of an image or video, and the latter being a reaction to that image or video, (3) this distinction can be seen in the Instagram interface itself, which requires a password for users to post on a page but not to comment, and (4) Mr. Owoc did not believe he was violating the TRO by <u>commenting</u> on Instagram because, consistent with the TRO, he was not <u>posting</u>.  This understanding is a natural one because postings can again only be made if the author has input or access to a user's password.  But since anyone has the ability to comment on a post, reading the TRO as prohibiting Mr. Owoc from commenting would deprive him as of the same freedom of expression as that held by any member of the public—to comment on an Instagram post.

The Debtors' own exhibits corroborate this understanding, with the term "comment" not appearing at all in the TRO, and the screenshots of the comments at issue each containing the term "Comments" in bolded language in their headers.  *See* Debtors' Ex. 2 (TRO) and 5–7 (screenshots).

This unrebutted evidence is fatal to the Debtors' argument, especially given that (1) ambiguities must be construed in favor of Mr. Owoc, and (2) contempt is not appropriate when there is a fair ground of doubt as to the order in question.  The Court should deny the Motion.

### THE DEBTORS' SUPPLEMENTAL ARGUMENTS RELY ON NEW, INADMISSIBLE EVIDENCE AND ARE UNPERSUASIVE

Notwithstanding the filing of Motion on an emergency basis, the Debtors also requested an opportunity to file a supplemental brief at the close of trial.  Hr'g Tr., p. 64, l. 15–p. 65, l. 1.  Although the Court granted that request, the Debtors' second bite at the apple fares no better than their first.  *See* ECF No. 38 (Debtors' supplemental brief).

As a threshold matter, the supplemental brief is shot through with new and inadmissible

evidence. The Debtors made it clear at trial that they had no further evidence to introduce, both by resting their case and affirming the Court's statement that "the evidence is now closed for both parties." *See* Hr'g Tr. p. 18, ll. 9–12; p. 53, ll. 10–15. Notwithstanding this, the brief contains five new exhibits of Instagram and Meta Platforms, Inc. website printouts, and an additional screenshot of the Account. *See* Debtors' Br. at Ex. 1–5. The body of the brief discusses these exhibits at length, and also includes a screenshot of an Instagram user interface. *See id.* at pp. 4–6 and 9.[2]

Absent a motion to reopen the trial record to permit new evidence—which would likely be denied in this instance—it is not appropriate to include new evidence in a post-trial brief. *See In re Bailey*, 2021 WL 4314217, at *6 (Bankr. D.N.J., Sep. 22, 2021) ("[The plaintiff] did not then move to reopen the trial record to permit the New Evidence, thus it would have been inappropriate for the court to consider it.") (citations omitted). The Court should therefore disregard the new evidence referenced and discussed for the first time in the Debtors' brief.

Setting their evidentiary issues to one side, the Debtors raise essentially four arguments in the brief. None are persuasive.

First, the Debtors contend that the TRO's prohibition against "posting any content" refers to more than just posts. Per the Debtors, the verb "posting" should be read expansively, such that it is synonymous with any mode of transmitting content to a website. *See* Debtors' Br. at pp. 3–4. The problem with that argument, however, is that the Debtors' are not prosecuting a breach of contract or statutory interpretation case to determine the ultimate meaning of a document. Their burden is instead to demonstrate, by clear and convincing evidence, that the TRO is <u>unambiguous</u>, and that <u>no fair ground of doubt</u> exists as to its terms. Any ambiguities must again be drawn in favor of Mr. Owoc. While Mr. Owoc disagrees as to the Debtors' interpretation, given: (1) his

---

[2] In addition to not being introduced at trial, these exhibits constitute hearsay, are not authenticated, and are otherwise inadmissible.

{2467/000/00553721}

unrebutted testimony as to his background and the common understanding of the terms "post" and "comment" in social media nomenclature, (2) the TRO's use of the verb "posting," as opposed to a broader term such as "transmitting" or "conveying," (3) the confusion of the terms "posting" and "post" being located in the same sentence of the TRO, and (4) the term "comment" not appearing in the TRO at all, it is not credible for the Debtors to argue that no fair ground of doubt exists. Put otherwise, the Debtors must do more than demonstrate that, ultimately, their interpretation of the TRO is correct—they must instead demonstrate that no ambiguities exist at all. It is apparent that the Debtors have failed to meet this burden.

Second, the Debtors allege that the term "content" in the TRO should also be read expansively, so that it includes "comments." Under this interpretation, the prohibition in the TRO against "posting any content" would incorporate the comments made by Mr. Owoc on Instagram. *See* Debtors' Br. 5–7. However, this argument runs aground on the issues outlined *supra*—namely, that the Debtors rely on new and inadmissible evidence to make this claim, and that their burden is to demonstrate that no fair ground of doubt exists in the TRO. Given that the term "comment" has a recognized meaning in social media and yet appears nowhere in the TRO, a fair ground of doubt exists as to whether Mr. Owoc's comments were prohibited. A contempt order is therefore inappropriate.

Third, the Debtors argue that Mr. Owoc's interpretation "would violate the spirit and purpose of the [TRO]." Debtors' Br. 8. This argument fails for multiple reasons as well. Civil contempt is a severe remedy, and it cannot be imposed based on claims that one "violated the spirit" of an agreement. Rather, a movant must demonstrate that there is no fair ground of doubt that the clear, unambiguous terms of an order have been violated. The Debtors have failed to do so for the reasons stated *supra*.

Moreover, even if one wished to consider their "spirit of the agreement" argument, the Debtors sought a temporary restraining order in large part to market their business in anticipation of a sale via the Account:

> The concerns regarding control of these particular social media accounts are especially significant because of their importance to the Company's business. The Company's success is directly correlated to the intensive marketing strategy using digital marketing, including the CEO Accounts, to promote the Company's brand and products to millions of followers. The continued success of the Company's marketing efforts, and the sale of the Company's products, relies on the CEO Accounts as part of that overall strategy. The CEO Instagram Account alone has over 1 million followers, <u>and the Company needs to be able to continue marketing and communicating with those followers, especially during this time of management transition and sale process</u>.

*See* ECF No. 2 at ¶ 31 (Debtors' motion for temporary restraining order) (citations omitted) (emphasis supplied). Absent the TRO, the Debtors could not market their business through the Account. *Id.* By obtaining the TRO, however, the Debtors gained the ability to make posts (via Mr. Owoc) in the Account, and thus market their business, while Mr. Owoc retained the ability to make comments using the account. Each side thus gained something through the agreement, and nothing in Mr. Owoc's interpretation of the TRO "violates its spirit."

Fourth, the Debtors allege that Mr. Owoc made further comments using the Instagram account. *See* Debtors' Br. 9. That argument again relies on facts not in evidence and is beyond the scope of the Motion. It appears to a last ditch effort by the Debtors to attack Mr. Owoc instead of arguing their case. The Court should disregard that portion of the Debtors' brief.

[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Owocs respectfully request that the Court: (1) deny the Motion, and (2) grant such other relief as the Court deems appropriate.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by Notice of Electronic Filing via CM/ECF to those parties registered to receive such notice in this case on April 19, 2023.

        **SHRAIBERG PAGE P.A.**
        Attorneys for the Owocs
        2385 NW Executive Center Drive, Suite 300
        Boca Raton, Florida 33431
        Telephone: 561-443-0800
        Facsimile: 561-998-0047
        Email: bss@slp.law
        Email: pdorsey@slp.law

        By:   /s/ Bradley Shraiberg
                Bradley Shraiberg
                Fla Bar No. 121622
                Patrick Dorsey
                Fla. Bar No. 0085841