UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 23-01051 (PDR) |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. | |
| _____/ | |

## PLAINTIFFS' REPLY STATEMENT OF MATERIAL FACTS

Pursuant to the *Order Setting Scheduling Conference and Establishing Procedures and Deadlines* [Adv. Proc. Dkt. No. 5] and Rule 56 of the Federal Rules of Civil Procedure, made applicable to the above-captioned proceeding (this "Adversary Proceeding") pursuant to Rules 7001 and 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Debtor Vital Pharmaceuticals, Inc., and its affiliated debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession (the "Debtors," "Plaintiffs," or the "Company"), hereby submit their Reply Statement of Material Facts in support of their Motion for Summary Judgment and Incorporated Memorandum of Law [Adv. Proc. Dkt. 30] (the "Motion").

---

[1] The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc.  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

I.      **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| 1. | Since as early as 2010, the Debtors have made strategic use of a variety of nontraditional marketing channels, including marketing directly to customers through various social media platforms.  As of the Petition Date (as defined below) the Debtors created and operated a number of social media accounts as part of their marketing efforts. Both pre- and post-petition, the Company's marketing department created content that was posted across their various social media accounts in a regular and coordinated fashion.<br><br>DiDonato Decl. ¶¶ 5, 7. | Disputed that the allegations in this paragraph give rise to any ownership interest in the social media accounts that are the subject of this adversary proceeding. Otherwise **undisputed**.<br><br>J. Owoc Decl. ¶¶ 7–36; M. Owoc Decl. ¶¶ 5–28. | **Undisputed**.<br><br>Defendants identify no portion of this fact that they dispute.  Defendants' additional narrative regarding whether this undisputed fact "give[s] rise to any ownership interest" in the accounts is legal argument and does not constitute a dispute as to the fact as presented.<br><br>Moreover, several of the declaration paragraphs which Defendants cite are irrelevant and none creates a dispute.  In fact, cited paragraphs of each declaration *confirm* the fact as presented.  J. Owoc Decl. ¶ 9 (admitting the Debtors' "utilize[d] social media to market the Debtors' products and endeavors"); M. Owoc Decl. ¶ 8 ("I decided to heavily incorporate and utilize social media to market the Debtors' products and endeavors").<br><br>To the extent that Defendants' assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented. |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | | | *See* Plaintiffs' Evidentiary Objections ¶¶ 1-24. |
| 2. | The CEO Accounts were among the accounts created by the Company's marketing department and for which the Company's marketing department curated and posted content for purposes of promotion of the Debtors' products and business. The CEO Instagram Account is a verified account created in April 2012 with over 1 million followers and more than 6400 posts, the vast majority of which promote the Debtors' products and business. Similarly, the CEO TikTok Account was created in 2019 and has over 850,000 followers, with content primarily focused on promoting the Debtors' products and business. And the CEO Twitter Account, created in 2010, has over 7,000 followers, with content primarily focused on promoting the Debtors' products and business.<br><br>DiDonato Decl. ¶ 7. | Disputed. Additionally: (a) the Owocs have not had an opportunity to take adequate discovery on these allegations; and the contents of the DiDonato declaration are inadmissible for the reasons set forth in § III of the Response.<br><br>J. Owoc Decl. ¶¶ 7–40; M. Owoc Decl. ¶¶ 5–31. | **Undisputed.**<br><br>Defendants' response does not identify any portion of this fact that they dispute, but rather generally states it is "disputed" and cites broadly to their declarations. There is no dispute in the record that the CEO Accounts were among the accounts created and used by the Company for purposes of marketing.<br><br>Paragraphs in the declarations attempting to characterize certain content posted to the CEO Accounts as personal in nature do not create a dispute because Defendants elsewhere concede that even these posts reference the Debtors' brand and products. *E.g., compare* J. Owoc Decl. ¶¶ 28-29, *with* J. Owoc Decl. Ex. 1 at p. 1 (advertising the new Bang Energy cans), p. 2 (advertising Bang Energy's slogan "Fuel Your Destiny" and not featuring Defendants in any way), p. 3 (advertising Bang Energy and not featuring Defendants in any way).<br><br>Further, Defendants' prior sworn testimony establishes that "[s]omebody at Vital" created the Instagram Account, |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|-----|-----|-----|-----|
| | | | and that "[s]omeone from the marketing department" posted content to the CEO Accounts.  DiDonato Decl. ¶ 7 at Ex. C at 84:22-85:1, 86:17-20.  And Defendants admit that while Mr. Owoc was CEO, he "approved and directed the posting . . . of some marketing content created by the Debtors."  J. Owoc Decl. ¶ 26.<br><br>The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute.  In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery.  *See* Adv. Proc. Dkt. 10, ¶ 5.<br><br>All other facts asserted in the declaration paragraphs cited are irrelevant to this fact.<br><br>To the extent that Defendants assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 1-24. |

4

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| 3. | During depositions in an unrelated matter, Defendants testified that the CEO Accounts were created and operated by the Company, and the Company's marketing department created videos which were then posted to the CEO Accounts.<br><br>DiDonato Decl. at Ex. C, 84:10-16, 84:22-85:1-6, 86:2-20; *id.* at Ex. D, 22:17-19 | Disputed.<br><br>DiDonato Decl. Ex. C, p. 84, l. 22–p. 85, l. 1; p. 86, ll. 21–23; DiDonato Decl. Ex. D, p. 22, ll. 17–19; J. Owoc Decl. ¶¶ 11–26; M. Owoc Decl. ¶ 14–26 | **Undisputed.**<br><br>Defendants' response does not identify any portion of this fact that they dispute, but rather generally states it is "disputed" and cites broadly to their declarations.<br><br>That the Defendants contend that they personally created the CEO Accounts (or those accounts were created at their direction) does not create a dispute because they were the CEO and head of marketing of the Company at the time. The Debtors do not dispute that Defendants were employed by the Company at the time the accounts were created. All other statements in the cited paragraphs of the declarations are irrelevant to this fact.<br><br>To the extent that Defendants assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 4-9, 19-24. |
| 4. | Only a few employees of the Company, including Defendants, had direct access to the CEO Accounts, including knowledge of | Disputed. Additionally: (a) the Owocs have not had an opportunity to take adequate discovery on these allegations, ; | **Undisputed.**<br><br>Several of the declaration paragraphs to which Defendants cite are not relevant |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | the login credentials and the ability to post content.<br><br>DiDonato Decl. ¶ 8. | and the contents of the DiDonato declaration are inadmissible for the reasons set forth in § III of the Response.<br><br>J. Owoc Decl. ¶¶ 11–26, 37–40 ; M. Owoc Decl. ¶ 14–26, 29–31 | and none creates a dispute. In fact, cited paragraphs of each declaration *confirm* the fact presented. *See* M. Owoc Decl. ¶ 19 (stating that only a limited number of employees ever had access to the Accounts).<br><br>The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute. In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery. *See* Adv. Proc. Dkt. 10, ¶ 5.<br><br>To the extent that Defendants assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 4-9, 19-24. |
| 5. | The Company's employee handbook (the "Employee Handbook") specifies that all ideas, potential marketing (graphic designs, artwork drawings, photography, magazines, pamphlets, packaging, etc.) and sales relationships, inventions, research, plans for products or services, marketing plans, | Disputed. The Owocs have never signed an employ contract or employee handbook, and have not had an opportunity to take adequate discovery on these allegations. | **Undisputed.**<br><br>Defendants identify no portion of this fact that they dispute. Whether or not Defendants signed the handbook or an employment contract does not create a dispute as to the fact as presented. |

6

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | computer software (including, without limitation, source code and object code), computer programs, original works of authorship, characters, processes, trade secrets, information, data, developments, discoveries, improvements, modifications, technology, algorithms and designs, whether or not subject to patent or copyright protection, made, conceived, expressed, developed, or actually or constructively reduced to practice by you solely or jointly with others in connection with or relating to any work performed by you for the company. All of [the foregoing] shall be considered as "work made for hire" belonging to Bang Energy.<br><br>*Id.* ¶ 11, Ex. J, at 30. | J. Owoc. Decl. ¶¶ 10 and 37–40; M. Owoc Decl. ¶¶ 9 and 29–31. | The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute. In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery. *See* Adv. Proc. Dkt. 10, ¶ 5. |
| 6. | On October 10, 2022 (the Petition Date), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered. | Undisputed. | **Undisputed.** |
| 7. | The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108, 11 U.S.C. §§ 1107, 1108. | Undisputed. | **Undisputed.** |
| 8. | On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). On | Undisputed. | **Undisputed.** |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | November 23, 2022, the U.S. Trustee reconstituted the Committee. No request has been made to the Court to order the appointment of a trustee or examiner.<br><br>Main Case ECF Nos. 245, 400 | | |
| 9. | On January 12, 2023, the Court entered a final order (the "Final DIP Order") authorizing the Debtors to obtain postpetition financing under the Superpriority Secured Debtor-in-Possession Credit Agreement (the "DIP Agreement"). To avoid an event of default under the DIP Agreement, the Debtors are required to achieve certain milestones (the "DIP Milestones"), including, among other things, filing a motion to approve a stalking horse bidder on or before March 24, 2023, holding an auction, if necessary, on or before April 27, 2023, and closing a sale of all or substantially all of the Debtors' assets on or before May 17, 2023. The maturity date of the DIP financing under the DIP Agreement is May 24, 2023 (the "DIP Maturity Date").<br><br>Main Case ECF No. 638, ¶ 46; *id.*, Ex. B (DIP Agreement) § 5.18. | Undisputed. | **Undisputed.** |
| 10. | On February 24, 2023, the Court entered an order (the "Bid Procedures Order") | Undisputed. | **Undisputed.** |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | approving bidding procedures for the sale of all or substantially all of the Debtors' assets upon the conclusion of the Debtors' marketing and sale process. The Bid Procedures Order implements a process timeline consistent with the DIP Milestones.<br><br>Main Case ECF No. 854 | | |
| 11. | In order to preserve and maximize the value of the bankruptcy estate, the Debtors continue to operate, including their market efforts, in the ordinary course. | Undisputed. | **Undisputed.** |
| 12. | Defendant Jack Owoc is the Company's founder and former Chief Executive Officer and Chief Science Office. Defendant Meg Owoc, working under various job titles, directed the Debtors' marketing department from 2010 until March 9, 2023.<br><br>DiDonato Decl. ¶ 15 and Exs. E. and F. | Undisputed. | **Undisputed.** |
| 13. | On March 9, 2023, the Debtors' boards of directors and managers (collectively, the "Board") voted to terminate the employment of Mr. Jack Owoc and Mrs. Meg Liz Owoc, and to remove Mr. Owoc from the Board for cause. Following Mr. Owoc's termination, Mr. John DiDonato of Huron Consulting, who had been serving as the Debtors' Chief Transformation Officer, was named by the Board as the Debtors' Interim Chief Executive Officer. | Disputed that Mr. and Mrs. Owoc committed acts constituting cause for their termination. The Owocs have not had an opportunity to take adequate discovery on these allegations. **Undisputed** that Mr. and Mrs. Owoc were terminated by the Debtors and that Mr. DiDonato as a current officer of the Debtors. | **Undisputed.**<br><br>Defendants identify no portion of this fact that they dispute. Defendants' additional narrative regarding acts constituting cause for their termination is not responsive to the fact as presented.<br><br>The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute. |

12094809-1

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | DiDonato Decl. ¶ 1. | J. Owoc. Decl. ¶¶ 37–40 and M. Owoc Decl. ¶¶ 29–31. | In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery. *See* Adv. Proc. Dkt. 10, ¶ 5. |
| 14. | The Company promptly notified Defendants and their individual counsel of the Board's decision to terminate their employment. As part of those notices, the Company directed Defendants to immediately return all of the Debtors' property, including, among other items, any access codes or devices, mobile phones, computers, and any other property and information.<br><br>DiDonato Decl. ¶ 9, Exs. G and H. | Disputed that the allegations in this paragraph give rise to any ownership interest in the social media accounts that are the subject of this adversary proceeding. Otherwise **undisputed**.<br><br>J. Owoc Decl. ¶¶ 7–36; M. Owoc Decl. ¶¶ 5–28. | **Undisputed.**<br><br>Defendants identify no portion of this fact that they dispute. Defendants' additional narrative regarding whether this undisputed fact "give[s] rise to any ownership interest" in the accounts is legal argument and does not constitute a dispute as to the fact as presented.<br><br>To the extent that Defendants assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 1-24. |
| 15. | Given the management transition, the Company and its advisors worked to secure all estate property, including access to the Company's social media accounts. While the Debtors were able to secure a majority of the social media accounts and changed login credentials and points of contact, they were unable to obtain the current login credentials | Disputed that the allegations in this paragraph give rise to any ownership interest in the social media accounts that are the subject of this adversary proceeding. Otherwise **undisputed**. | **Undisputed.**<br><br>Defendants identify no portion of this fact that they dispute. Defendants' additional narrative regarding whether this undisputed fact "give[s] rise to any ownership interest" in the accounts is |

10

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
|  | to the three CEO Accounts. On March 10, 2023, the Company sent a letter to counsel for Defendants reiterating the need that they promptly return all Company property and demanding that they reveal the login credentials to the CEO Instagram Account.<br><br>DiDonato Decl. ¶¶ 10, 11, and Ex. I. | J. Owoc Decl. ¶¶ 7–36; M. Owoc Decl. ¶¶ 5–28. | legal argument and does not constitute a dispute as to the fact as presented.<br><br>To the extent that Defendants assertions are based on hearsay or lacking foundation, that evidence is inadmissible and is not relevant to the fact presented.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 1-24. |
| 16. | Also on March 10, 2023, Jack Owoc sent a company-wide email referring to Defendants' termination the day before as a "hostile takeover" and asserting the Company's advisors were lying to all Company employees.<br><br>DiDonato Decl. ¶ 14 and Ex. J. | Undisputed. | **Undisputed.** |
| 17. | On March 16, 2023, Defendants conceded they have knowledge of the login credentials to the CEO Accounts and agreed to provide them under seal to the Court and agreed not to change the passwords during the pendency of this dispute. In the TRO Stipulation, Defendants also temporarily agreed to refrain from posting independent content to the CEO Accounts, and agreed to post marketing content at the Debtors' request.<br><br>Order Approving Stipulation Regarding Debtors' Motion for Temporary Restraining | **Undisputed** that the TRO Stipulation (as such term is defined in ECF No. 22) was entered by the Court. Dispute that the Owocs agreed to the entry of the TRO Stipulation or that it prohibits the Owocs from commenting on posts, as the parties are elsewhere litigating. J. Owoc Decl. ¶ 41; M. Owoc Decl. ¶ 32; ECF Nos. 28 (emergency motion for contempt); 30 (notice of hearing) and 38 (supplemental | **Undisputed.**<br><br>Defendants cannot credibly dispute that they have knowledge of the login credentials, as they provided such login credentials to the Court.  Whether or not Defendants "agreed to the entry of the TRO Stipulation" is irrelevant to the fact as presented.  The TRO Stipulation and Order are part of the record in this action. |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | Order ("TRO Stipulation"), Adv. Proc. Dkt. 10, at ¶¶ 2-4, 6.5. | memorandum of law filed by the Debtors). The Debtors incorporate by reference the hearing transcript of the April 12, 2023 hearing on this point, and their supplemental memorandum of law to be filed during the week of April 17, 2023. | |
| 18. | Regardless of the agreed upon and so-ordered TRO Stipulation, Defendants failed to provide the Court with the login credentials. After numerous attempts to engage with the Defendants as to whether they intended to provide the Court with login credentials and negotiate in good faith a summary judgment briefing schedule, the Debtors received no response and were forced to bring an emergency motion seeking an order holding Defendants in contempt, among other relief. Shortly before the hearing on the Debtors' Contempt Motion, Defendants' counsel confirmed submission of the login credentials for two of the three CEO Accounts to the Court, and also informed Debtors' counsel that he would be withdrawing as counsel for Defendants. Replacement counsel attended the Contempt Motion hearing on March 23, 2023, and on March 24, 2023, replacement counsel informed Debtors' counsel that they would no longer be representing Defendants. | **Undisputed** that the TRO Stipulation (as such term is defined in ECF No. 22) was entered by the Court. Dispute that the Owocs agreed to the entry of the TRO Stipulation or that it prohibits the Owocs from commenting on posts, as the parties are elsewhere litigating. J. Owoc Decl. ¶ 41; M. Owoc Decl. ¶ 32; ECF Nos. 28 (emergency motion for contempt); 30 (notice of hearing) and 38 (supplemental memorandum of law filed by the Debtors). The Debtors incorporate by reference the hearing transcript of the April 12, 2023 hearing on this point, and their supplemental memorandum of law to be filed during the week of April 17, 2023 | **Undisputed.**<br><br>Defendants cannot credibly dispute that they have knowledge of the login credentials, as they provided such login credentials to the Court. Whether or not Defendants "agreed to the entry of the TRO Stipulation" is irrelevant to the fact as presented. The TRO Stipulation and Order as well as the Contempt Motion are part of the record in this action. |

| No. | Plaintiffs' Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence | Plaintiffs' Reply |
|---|---|---|---|
| | Adv. Proc. Dkt. 13 (the "Contempt Motion"). | | |
| 19. | The Company is concerned that if Defendants retain control of the CEO Accounts, Defendants might post content that is harmful to the Debtors, their business, their product marketing, and/or their bankruptcy sale process. The Company is also concerned that bidders may view any disruption to the Debtors' marketing efforts negatively, and that in turn it would result in substantially lower bids for the Debtors' assets or the decision not to bid for the assets at all.<br><br>DiDonato Decl. ¶¶ 12-14. | Disputed. The Owocs have not had an opportunity to take adequate discovery on these allegations.<br><br>J. Owoc. Decl. ¶¶ 37–40 and M. Owoc Decl. ¶¶ 29–31. | **Undisputed.**<br><br>Defendants' response does not identify any portion of this fact that they dispute, but only cites vaguely to portions of their declarations regarding their need for discovery. Nothing in the cited portions of the declarations creates a dispute as to whether or not the Company is concerned about Defendants' conduct in the event Defendants continue to have control of the CEO Accounts. Indeed, Defendants' conduct on the Instagram CEO Account since the Motion was filed confirms the Debtors were well-founded in the concern expressed in this fact as presented. *See generally* Adv. Proc. Dkt. 13, 28, 38.<br><br>The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute. In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery. *See* Adv. Proc. Dkt. 10, ¶ 5. |

## II.   PLAINTIFFS' RESPONSE TO DEFENDANTS' ADDITIONAL FACTS

| No. | Defendants' Additional Facts | Plaintiffs' Response |
|---|---|---|
| 20. | Mr. Owoc has a public persona separate and apart from that of the Debtors. J. Owoc Decl. ¶¶ 1–5 and 7–8; M. Owoc Decl. ¶¶ 5–7. | Undisputed for purposes of the Motion but irrelevant that Mr. Owoc has a "persona" that is separate and apart from that of the Debtors. |
| 21. | The Owocs are not parties to an employment agreement or employee handbook with the Debtors. J. Owoc. Decl. ¶¶ 10 and 40(b); M. Owoc Decl. ¶¶ 9 and 31(b). | Undisputed for purposes of this Motion,[2] but irrelevant and immaterial to any issue raised in the Motion. |
| 22. | The three social media accounts at issue in this adversary proceeding—an Instagram and TikTok account each bearing the handle @bangenergy.ceo and a Twitter account bearing the handle @BangEnergyCEO (together, the "Accounts")—are personal accounts of the Owocs.  J. Owoc Decl. ¶¶ 7–36; M. Owoc Decl. ¶¶ 5–28. | This purported fact is a legal conclusion, based in part on inadmissible evidence, and which is not supported by admissible evidence.<br><br>*See* Plaintiffs' Evidentiary Objections ¶¶ 1-24. |
| 23. | Mrs. Owoc personally created the Twitter and Instagram Accounts. J. Owoc Decl. ¶ 14; M. Owoc Decl. ¶ 14. | Undisputed for purposes of this Motion, but irrelevant to the issues raised in the Motion.  That Mrs. Owoc created the CEO Accounts while she was an employee of the Debtors only further confirms that the CEO Accounts are property of the Debtors' estates.  Indeed, Defendants' prior sworn testimony establishes that "[s]omebody at Vital" created the Instagram Account. DiDonato Decl. ¶ 7 at Ex. C at 84:22-85:1. |
| 24. | The Owocs have historically maintained exclusive control over the Accounts, with: (a) the Debtors never holding passwords for the Accounts, (b) the Debtors never requesting passwords for the Accounts prepetition; (c) the Debtors acknowledging the Accounts belonged to the Owocs prepetition; and (d) the Owocs maintaining full, complete and unilateral discretion as to the content posted | Undisputed that Defendants historically maintained control over the CEO Accounts both while they were employees of the Debtors (CEO and head of marketing, respectively), and (wrongfully) since they were terminated and refused to voluntarily turnover the passwords to the CEO Accounts to the Debtors. |

---

[2] To the extent Plaintiffs respond to Defendants' additional facts as "undisputed," Plaintiffs do not dispute Defendants' purported facts solely for purposes of this Motion and based on the record available to Plaintiffs at this time.

12094809-1

| No. | Defendants' Additional Facts | Plaintiffs' Response |
|---|---|---|
| | on the Accounts prepetition. J. Owoc. Decl. ¶¶ 16–26; M. Owoc Decl. ¶¶ 16–26. | Whether anyone else at the Company ever requested passwords for the Accounts is irrelevant and immaterial to the issues raised in the Debtors' Motion, as is whether Defendants had discretion in their roles as CEO and head of marketing as to the content posted on the Accounts.  Further, to the extent Defendants' Additional Fact No. 24 relies on the email attached as Exhibit 1 to Mrs. Owoc's Declaration, it should be disregarded.  Exhibit 1 is a privileged email, and while unclear how Defendants have possession of the email (particularly in light of the fact that they elsewhere claim not to have access to Company emails), Defendants cannot waive the Company's privilege. *See Smith v. Armour Pharm. Co.*, 838 F. Supp. at 1577 (unauthorized disclosure and widespread dissemination of attorney-client privileged memorandum without client's consent did not waive attorney-client privileged).  To the extent the Court finds statements that rely solely on Exhibit 1 to be admissible, the purported fact that the Debtors acknowledged the Accounts belonged to Defendants prepetition is irrelevant and immaterial because a purported acknowledgement by an unspecified Debtor representative is not a factor in the legal analysis who actually owns the accounts.

*See* Plaintiffs' Evidentiary Objection ¶¶ 25-27. |
| 25. | On February 22, 2023, VPX's intellectual property in-house legal counsel, Gideon Eckhouse, confirmed that the personal Accounts of the Owocs would not be part of a sale or transferred to a potential buyer. M. Owoc Decl. ¶. 18. | Disputed, but irrelevant to the Motion.  As an initial matter, the cited email is privileged and, while unclear how Defendants have possession of the email (particularly in light of the fact that they elsewhere claim not to have access to Company emails), Defendants cannot waive the Company's privilege. *See Smith v. Armour Pharm. Co.*, 838 F. Supp. at 1577 (unauthorized disclosure and widespread dissemination of attorney-client privileged memorandum without client's consent did not waive |

15

| No. | Defendants' Additional Facts | Plaintiffs' Response |
|---|---|---|
| | | attorney-client privileged).  The Court should disregard Additional Fact No. 25,  and any argument premised on Exhibit 1 to Ms. Owoc's Declaration in any of the Plaintiffs' briefing. *See id.* 1577-78 (holding that the court would ignore all references to and prohibit future citation to attorney-client privileged memorandum that was disclosed  and published in newspapers without client's authorization).  In any event, the email does not demonstrate that the CEO Accounts are not property of the Debtors' estates. |
| 26. | The "BangEnergyCEO" handles of the Accounts were conceived of by the Owocs, and are a double entendre that refer to the individual Jack Owoc persona of an explosive, high intensity, unstoppable leader. J. Owoc. Decl. ¶. 12–13; M. Owoc. Decl. ¶¶ 11–12. | Undisputed for purposes of this Motion.  Moreover, the creators' intentions behind the name of the handles is irrelevant and immaterial to any issue raised in the Motion. |
| 27. | The Owocs post individual content to the Accounts, including: (a) pictures and videos of themselves and their six (6) children at home, at church, on vacations, and on celebratory occasions such as holidays, birthdays, and the births of their children, (b) a video of Mrs. Owoc before the birth of her daughter; and (c) Mr. Owoc engaging in hobbies such as fishing or drumming. J. Owoc Decl. ¶ 29; M. Owoc Decl. ¶ 13. | Undisputed.  As evidenced by Exhibit 1 to the J. Owoc Decl., even the videos and images as described in Additional Fact No. 27 included the Company's branding and product placement. |
| 28. | The majority of content posted on the Accounts relates to the Owocs' individual lives and personas, and not the Debtors. J. Owoc Decl. ¶¶ 27–36; M. Owoc Decl. ¶¶ 13 and 28. | Disputed, but irrelevant to the Motion.  The evidence presented by the Defendants contradict any characterization that the "majority" of content related solely to the Owocs' individual lives and personas.  Indeed, the videos and images included at Exhibit 1 to the J. Owoc Decl., include the Company's branding and product placement. *E.g., compare* J. Owoc Decl. ¶¶ 28-29, *with* J. Owoc Decl. Ex. 1 at p. 1 (advertising the new Bang Energy cans), p. 2 (advertising Bang Energy's slogan "Fuel Your Destiny" and not featuring Defendants in any way), p. 3 |

| No. | Defendants' Additional Facts | Plaintiffs' Response |
|-----|------------------------------|----------------------|
|  |  | (advertising Bang Energy and not featuring Defendants in any way). |
| 29. | The Owocs have not had an adequate opportunity to take discovery in this adversary proceeding, which was filed on March 14, 2023. J. Owoc Decl. ¶¶ 37–40; M. Owoc Decl. ¶¶ 29– 31. | Disputed, but irrelevant to the Motion.  The assertion that Defendants have not had adequate opportunity to take discovery does not give rise to a dispute.  In any event, as further discussed in Plaintiffs' Reply, the opportunity for expedited discovery was explicitly negotiated for and so-ordered, yet Defendants served no discovery.  *See* Adv. Proc. Dkt. 10, ¶ 5. |
| 30. | The Owocs' prior counsel, Justin Luna, Esq., stipulated to the entry of the temporary restraining order in this adversary proceeding without the consent of the Owocs. J. Owoc Decl. ¶ 41; M. Owoc Decl. ¶ 32. | This purported fact is irrelevant and immaterial to any issue raised in the Motion. |

12094809-1

Dated:    April 21, 2023
          Miami, Florida

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 906-1200
Email:   george.davis@lw.com
         hugh.murtagh@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

                 - and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:   (202) 637-2200
Email:   andrew.sorkin@lw.com

        – and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:   whit.morley@lw.com

Respectfully submitted,

*/s/ Jordi Guso*
_____
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:   (305) 755-9500
Email:   jguso@bergersingerman.com
         mniles@bergersingerman.com

*Co-Counsel for the Plaintiffs/Debtors*

12094809-1