UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,                Case No.: 22-17842-PDR

        Debtors.

Chapter 11
(Jointly Administered)

_____/

VITAL PHARMACEUTICALS, INC., *et al.*,

        Plaintiffs,

v.                                                                                          Adv. Proc. No. 23-01051-PDR

JOHN H. OWOC AND MEGAN E. OWOC,

        Defendants.

_____/

### ANSWER AND AFFIRMATIVE DEFENSES OF JOHN H. OWOC AND MEGAN E. OWOC TO COMPLAINT

John H. Owoc and Megan E. Owoc (together, "Defendants" or the "Owocs") hereby answer the *Adversary Complaint for Declaratory Judgment and Turnover of Estate Property* (the "Complaint") filed by Plaintiffs, Vital Pharmaceuticals, Inc., *et al.* (together, the "Debtors"). ECF No. 1. Capitalized terms shall have the meanings ascribed to them in the Complaint unless otherwise defined herein.

The Owocs deny each and every allegation not specifically admitted herein and demand strict proof thereof as to all denials and affirmative defenses as follows:

### NATURE OF THIS ACTION

1.    Admit only that the Debtors' marketing strategies utilize social media. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the

{2467/000/00553951}

1

estates or otherwise do not belong to the Owocs.

2. Admit only that the Owocs were terminated from the Debtors on or about March 9, 2023. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

3. Admit only that the Debtors have brought this action for declaratory judgment and turnover regarding the CEO Accounts. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

## JURISDICTION AND VENUE

4. Deny to any extent this allegation purports to alter or affect any rights or claims the Owocs may assert in the bankruptcy cases, such as seeking dismissal of the cases. Otherwise admit.

5. Deny to any extent this allegation purports to alter or affect any rights or claims the Owocs may assert in the bankruptcy cases, such as seeking dismissal of the cases. Otherwise admit.

6. Deny to any extent this allegation purports to alter or affect any rights or claims the Owocs may assert in the bankruptcy cases, such as seeking dismissal of the cases. Otherwise admit.

7. Admit only that the Debtors are seeking relief under Fed. R. Bankr. P. 7001 and the Declaratory Judgment Act. Otherwise deny, and further deny such relief is warranted.

8. Admit.

9. Admit.

## PARTIES

10. Admit.

11. Admit.

12. Admit.

## BACKGROUND

13. Admit.

14. Admit only that the Debtors posted content across social media accounts both prepetition and postpetition. Admit only that the CEO Instagram account is a verified account with over 1 million followers and more than 6,400 posts. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

15. Admit only that the CEO TikTok Account has over 850,000 followers and the CEO Twitter Account has over 7,000 followers. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

16. Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

17. Admit.

18. Admit.

19. Admit.

20. Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

21. Admit only that the Owocs were terminated from the Debtors on or about March 9,

2023. Otherwise deny, and further deny that any acts or omissions by the Owocs constituted cause for termination.

22. Deny.

23. Admit.

24. Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

25. Deny.

26. Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

27. Without knowledge sufficient to form a belief about the truth of the allegations and deny as a result.

28. Deny.

29. Admit only that the Debtors filed an emergency motion for restraining order. Otherwise deny, and further deny: (a) that the relief sought in such emergency motion is warranted, and (b) any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

## COUNT I

30. The responses set forth in Paragraph 1 through Paragraph 29 are incorporated by reference as if set forth fully herein.

31. Deny.

32. Deny.

33. Deny.

## COUNT II

34. The responses set forth in Paragraph 1 through Paragraph 33 are incorporated by reference as if set forth fully herein.

35. Deny.

36. Admit only that the CEO Accounts are property of the Owocs. Deny that the Owocs have full effective possession, custody or control of the CEO Accounts due to the temporary restraining order entered by the Court at ECF No. 10. Otherwise without knowledge sufficient to form a belief about the truth of the allegations and denies as a result.

37. Admit only that the Debtors made demand for turnover of the login credentials to the CEO Accounts. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

38. Admit only that the CEO Accounts are property of the Owocs. Deny that the Owocs have failed to refuse to turn over login credentials as the Owocs have complied with the TRO Order. Otherwise deny, and further deny any allegation or implication that the CEO Accounts are property of the estates or otherwise do not belong to the Owocs.

39. Deny.

40. Deny.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Debtors have failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 8(a) and 12(b)(6). The Complaint has been filed by at least seven different plaintiff entities, and does not contain allegations sufficient to determine which entity allegedly owns the CEO Accounts and Company Accounts at issue.

## SECOND AFFIRMATIVE DEFENSE

The Debtors' claims are barred by the defenses of authorization, estoppel, ratification, and waiver. Since the inception of the CEO Accounts at issue, Defendants have consistently exerted possession, custody, and complete unilateral control over the same. The Debtors, through words, conduct, and/or course of dealing, consistently authorized, acknowledged, agreed with, acquiesced to, and ratified the fact that Defendants owned the CEO Accounts as their own personal property. Indeed, prior to the filing of this lawsuit the Debtors neither alleged, nor took corporate action consistent with their new position that the CEO Accounts are corporate property, as opposed to the individual property of the Owocs.

## THIRD AFFIRMATIVE DEFENSE

Any request for equitable relief by the Debtors must be denied on the grounds that the Debtors have acted with unclean hands and/or are *in pari delicto*. Since the inception of the CEO Accounts at issue, Defendants have consistently exerted possession, custody, and complete unilateral control over the same. The Debtors, through words, conduct, and/or course of dealing consistently authorized, acknowledged, agreed with, acquiesced to, and ratified the fact that Defendants owned the CEO Accounts as their own personal property. Indeed, prior to the filing of this lawsuit the Debtors neither alleged, nor took corporate action consistent with their new position that the CEO Accounts are corporate property, as opposed to the individual property of the Owocs. The Debtors negligently, or deliberately misled the Owocs as to the Debtors' true belief and understanding with respect to the CEO Accounts in order to lull the Owocs into a belief that they did not need to establish further documentation reflecting the true ownership of the CEO Accounts as their personal property.

**FOURTH AFFIRMATIVE DEFENSE**

The Debtors' claims in this action are barred by laches. For many years, since the inception of the CEO Accounts at issue, Defendants have consistently exerted possession, custody, and complete unilateral control over the same. Prior to the filing of this lawsuit the Debtors neither alleged, nor took corporate action consistent with their new position that the CEO Accounts are corporate property, as opposed to the individual property of the Owocs. The Debtors delayed asserting their claim that the CEO Accounts are not the personal property of the Defendants without any justifiable or legitimate excuse for the delay. Indeed, by virtue of the Debtors' inexcusable delay, Defendants have been unduly prejudiced, for example, by electing not to obtain or establish further documentation or agreements reflecting the true ownership of the CEO Accounts as the personal property of the Debtors.

**FIFTH AFFIRMATIVE DEFENSE**

The Debtors' claims in this action are barred by the statute of limitations. Pursuant to Section 95.11, Fla. Stat. Ann. (2023), the statute of limitations for the Debtors to bring a prepetition action regarding the ownership of the CEO Accounts was four (4) years. The Owocs obtained unilateral possession, custody and control of the CEO Accounts contemporaneously with their creation. Upon information and belief the CEO Accounts were created far more than four years prepetition with, for example, the CEO Instagram Account and the CEO Twitter Account each being over one decade old. Despite full knowledge (and agreement, acquiescence, and ratification) of Defendants ownership of the CEO Accounts, Debtors failed to file any action within the statutorily mandated time frame.

**SIXTH AFFIRMATIVE DEFENSE**

The Debtors' claims in this action are offset by principles of set off and/or recoupment. Defendants have spent many years creating the Jack Owoc celebrity persona, which is a brand that holds substantial value independent of the Debtors' products or companies. The value of this brand is in part a result of Defendants' own efforts, which include but are not limited to carefully curating the postings Defendants unilaterally and exclusively controlled to their CEO Accounts. Not only do Defendants' many years of careful curating of the CEO Accounts carry monetary value, but the millions of subscribers that Defendants have amassed to their CEO Accounts also represent a substantial value. Many, if not the overwhelming majority, of subscribers to the CEO Accounts are subscribers and aficionados of the Jack Owoc persona, and not subscribers of the Debtors' corporate social media accounts. Given this, in the event that ownership of the CEO Accounts are transferred to the Debtors or found to reside with the Debtors, Defendants are entitled to offset and/or recoup the value of their labor in creating the accounts, and the value of the loss of those subscribers who subscribed specifically for their appreciation of Jack Owoc and the Jack Owoc persona.

[Remainder of Page Intentionally Left Blank]

## RESERVATION

The Owocs reserve the right to amend and assert any additional or revised affirmative defenses that they may learn during the course of discovery.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on April 21, 2023.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Attorneys for the Owocs
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law
pdorsey@slp.law

By:    /s/ Bradley Shraiberg
         Bradley S. Shraiberg, Esq.
         Florida Bar. No. 121622
         Patrick Dorsey, Esq.
         Florida Bar. No. 0085841