UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]   Case No.: 22-17842-PDR

    Debtors.

Chapter 11
(Jointly Administered)

_____/

VITAL PHARMACEUTICALS, INC., *et al.*,

    Plaintiffs,

v.   Adv. Proc. No. 23-01051-PDR

JOHN H. OWOC AND MEGAN E. OWOC,

    Defendants.

_____/

**OWOCS' EMERGENCY MOTION FOR RELIEF FROM UNAUTHORIZED
STIPULATED TRO [ECF Nos 9 and 10]**

**\*\* Emergency Hearing Requested Pursuant to Local Rule 9075-1 \*\***

**As set forth *infra*, the Owocs are being compelled to affirmatively post content to social media based upon a temporary restraining order that they did not consent their former counsel to enter into. This compelled speech risks irreparable harm to the Owocs' personas.**

**In light of this dynamic the Owocs respectfully request that this matter be scheduled for hearing on an emergency basis, on or before Friday April 28, 2023.**

John H. Owoc a/k/a Jack Owoc ("Mr. Owoc") and Megan E. Owoc ("Mrs. Owoc"),

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

pursuant to this Court's inherent authority to modify non-final orders, moves the Court to vacate that *Order Approving Stipulation Regarding Debtors' Motion to Temporary Restraining Order* [ECF No. 10] (the "Unauthorized Stipulated TRO Order") and, that *Stipulation Regarding Debtors' Motion for Temporary Restraining Order* [ECF No. 9] (the "Unauthorized Stipulated TRO") upon which it is based, on the grounds that the Owocs' former counsel had no authority to enter the stipulation to the TRO, and in support hereof state as follows:

## SUMMARY OF ARGUMENT

The Unauthorized Stipulated TRO Order and the Unauthorized Stipulated TRO upon which it is based must be set aside because they were agreed to and entered by an agent of the Owocs who was wholly lacking in any authority to enter or agree to the same. The Owocs' former attorney, Mr. Justin Luna, Esq. ("Owocs' Former Counsel" or "Luna"), had no authority from either of the Owocs to enter any stipulation or agreement, let alone to stipulate to the terms contained in Unauthorized Stipulated TRO Order. Mr. Luna was acting as a rogue agent and the Owocs should not be held bound to an agreement that Mr. Luna had neither actual nor apparent authority to enter. Indeed, the Unauthorized Stipulated TRO Order and the Unauthorized Stipulated TRO effect a veritable **sea-change** in how Mr. Owoc (and the Debtors) have consistently treated the social media accounts at issue in this litigation (the "Accounts") as the personal property of Mr. Owoc by permitting, *for the first time* since the Accounts' creation, the Debtors to unilaterally determine the nature and content of material to be posted to Mr. Owoc's own personal Accounts. It is undisputed that the Debtors have never been granted such control or authority. Indeed, Jack Owoc has worked diligently to develop, market, and publicize the Jack Owoc persona, *i.e.*, the Jack Owoc brand, and as attested to in his sworn declaration, Mr. Owoc would never jeopardize the value of his own brand with postings that while appearing to originate

from him, in actuality, originate from the Debtors and over which he has no control. However, this is precisely the *ultra vires* nature of the terms the Owocs' Former Counsel agreed to, without express or implied authority, *and without even a single conversation seeking approval from the Owocs*.

The Unauthorized Stipulated TRO Order is causing irreparable harm to Jack Owoc's brand and essentially forcing Mr. Owoc to lend his valuable and distinctive persona to the endorsement and marketing of Debtors' products, without Mr. Owoc's assent. It is in effect, a form of involuntary servitude and moreover, a contempt-trap: the Unauthorized Stipulated TRO compels Owoc to either associate and endorse commercial speech with which he does not agree, thereby damaging his brand, or protect his brand but face claims that he is violating the Court's order and should be held in contempt.[2] The Unauthorized Stipulated TRO Order and the Unauthorized Stipulated TRO upon which it is based must be set aside.

## FACTUAL BACKGROUND

**A.  The Jack Owoc Persona.**

1.  As set forth in that April 16, 2023 *Declaration of John H. Owoc in Support of Response to Motion for Summary Judgment* [ECF 41] ("J. Owoc Decl. I"), Mr. Owoc, who is a celebrity, has for decades, taken great care to create a well-known, unique, public persona. *See* J. Owoc Decl. I at ¶¶ 7-10, incorporated herein by reference as if set forth in full.

2.  His celebrity persona, *that is*, the Jack Owoc brand, is distinct from -- and has both personal and commercial value apart from -- the Debtors and their products. J. Owoc Decl. I at ¶¶

---

[2]  Indeed, Jonathan Randles, a bankruptcy reporter for the Wall Street Journal who contacted the Owocs' Former Counsel for an interview noted of the Debtors' efforts that "this is an unusual situation and one I haven't come across before. Seeking a ruling that an ex-CEO social media accounts are property of the debtor's estates is interesting and, I'm sure, of high interest to our readers." *See* J. Owoc Decl. II at Ex. 2 Mar. 16, 2023 Jonathan Randles e-mail.

7–10.

3. Thus, when the Owocs decided to incorporate social media into the Debtors' marketing strategy, they deliberately created their own personal, individual social media accounts that both they and the Debtors carved out from the Debtors other corporate social media accounts, by keeping ownership, access, and control of those Accounts segregated. J. Owoc Decl. I at ¶ 9; April 16, 2023 *Declaration of Megan E. Owoc in Support of Response to Motion for Summary Judgment* [ECF 42] ("M. Owoc Decl. I") at ¶ 8.

4. The personal, social media accounts, over which Mr. Owoc has consistently exercised unilateral possession, custody, and control, are the subject of this litigation and the subject of the Unauthorized Stipulated TRO Order and the Unauthorized Stipulated TRO upon which it is based. J. Owoc Decl. I at ¶¶ 13—24; M. Owoc Decl. I at ¶ 7.

5. The meticulous and complete control that Jack Owoc has exercised over his personal social media Accounts highlights the revolutionary and *ultra vires* nature of the Owocs' Former Counsel's stipulation, ceding that control to the Debtors, and further dramatizes the fact that *Mr. Owoc would never have, and in fact, did not, authorize Mr. Luna to stipulate to the same*. J. Owoc Decl. I at ¶ 41. *See also Declaration of John H. Owoc in Support of Emergency Motion for Relief From Unauthorized Stipulated TRO [ECF Nos 9 and 10]* ("J. Owoc Decl. II") at ¶ 10; *Declaration of Megan E. Owoc in Support of Emergency Motion for Relief From Unauthorized Stipulated TRO [ECF Nos 9 and 10]* ("M. Owoc Decl. II") at ¶ 10.

**B.      Owocs' Former Counsel's Unauthorized Stipulation to the Emergency Motion for TRO**

6. On March 14, 2023, the Debtors commenced the instant adversary seeking a declaratory judgment that the disputed Accounts are the property of the Debtors and an order turning them over to the Debtors. ECF No. 1.

7. That same day, the Debtors filed an Emergency Motion for Temporary Restraining Order and Incorporated Memorandum of Law (the "Emergency Motion for TRO"). ECF No. 2.

8. The central issue in the Adversary Complaint and in Debtors' Emergency Motion for TRO is as follows: Whether the personal social media accounts that Jack Owoc has always unilaterally and exclusively held and controlled, are the property of the Debtors, which have never held or controlled the Accounts, or remain the property of Jack Owoc.

9. The Court set an evidentiary hearing on the Emergency Motion for TRO for March 16, 2023 (the "TRO Hearing"), *that is*, two (2) days after the Emergency Motion for TRO was filed. ECF No. 6.

10. On March 15, 2023, one day before the TRO Hearing, the Owocs' Former Counsel entered his appearance on behalf of the Owocs in this action. ECF No. 8.

11. On March 16, 2023, the day of the TRO Hearing, counsel for the Debtors and the Owocs' Former Counsel announced that a stipulation had been reached to adjourn the March 16, 2023 TRO Hearing.

12. The Owocs' Former Counsel executed the Unauthorized Stipulated TRO. ECF No. 9.

13. Neither Jack, nor Megan, Owoc executed the Unauthorized Stipulated TRO. ECF No. 9.

14. The Unauthorized Stipulated TRO purports to have Mr. Owoc agreeing to refrain from making any postings on his social media Accounts. ECF No. 9.

15. The Unauthorized Stipulated TRO further purports to obligate Mr. Owoc to post to his personal social media Accounts, any and all content created by the Debtors subject only to the caveat that the posting does not expressly mention Jack or Megan Owoc. *See id.* Mr. Owoc is,

pursuant to this order, obligated to make these postings advertising the Debtors' products and business under his own account name, thereby giving viewers the misimpression that Mr. Owoc elected to post the content. *See id.* at ¶ 3 (the "Compelled Endorsement Provision"). The Unauthorized Stipulated TRO requires Mr. Owoc to make these postings within no more than nine (9) business hours of the Debtors' demand to do so. *See id.*

16. The Compelled Endorsement Provision was then incorporated wholesale into the Unauthorized Stipulated TRO Order. ECF No. 10 at p. 2, ¶ 6.

### C. The Owocs' Former Counsel Entered the Stipulation Without Authority and Then Withdrew as Counsel Almost Immediately Thereafter

17. Neither Jack Owoc, nor Megan Owoc, ever authorized Mr. Luna to enter into that March 16, 2023 stipulation for temporary restraining order. J. Owoc Decl. II at ¶¶ 3-4; M. Owoc Decl. II at ¶¶ 3-4.

18. To be clear, neither Jack, nor Megan, Owoc ever authorized the Owocs' Former Counsel to enter into any form of stipulation in connection with the Debtors' Emergency Motion for TRO beyond a simple continuance. J. Owoc Decl. II at ¶¶ 4-6; M. Owoc Decl. II at ¶¶ 4-6.

19. Mr. Luna had no authority to enter a stipulation according to which Mr. Owoc was prohibited from making postings on his social media Accounts, nor any authority to enter a stipulation wherein possession, custody, and control of posting was ceded to the Debtors. J. Owoc Decl. II at ¶¶ 3-10; M. Owoc Decl. II at ¶¶10.

20. In fact, Mr. Owoc specifically and expressly instructed the Owocs' Former Counsel, prior to the TRO Hearing, that he was **not** permitted to compromise the issues raised in the Debtors' Emergency Motion for TRO. J. Owoc Decl. II at ¶ 4; M. Owoc Decl. II at ¶ 4.

21. Prior to him entering the Unauthorized Stipulated TRO, Mr. Luna did not seek, nor receive, any authority from Jack or Megan Owoc to enter the stipulation. J. Owoc Decl. II at ¶ 7;

M. Owoc Decl. II at ¶ 7.  Prior to his entering the stipulation, Mr. Luna did not notify Mr. Owoc that he intended to enter any stipulation, and did not discuss or seek approval of the terms of the stipulation he entered.  J. Owoc Decl. II at ¶ 7; M. Owoc Decl. II at ¶ 7.

22.     Neither Jack, nor Megan, Owoc saw, was informed of, or was provided with a copy of the proposed stipulation – or its terms – prior to Mr. Luna entering the Unauthorized Stipulated TRO.  J. Owoc Decl. II at ¶¶ 7-8; M. Owoc Decl. II at ¶¶ 7-8.

23.     The Owocs' Former Counsel did not communicate with the Owocs during the TRO Hearing. J. Owoc Decl. II at ¶ 9; M. Owoc Decl. II at ¶ 9.

24.     Indeed, Mr. Luna did not even contact Jack or Megan Owoc **after** he unilaterally and without authority stipulated to the TRO to inform them of the Unauthorized Stipulated TRO, much less to discuss or explain the nature of his agreement and the Compelled Endorsement Provision.  J. Owoc Decl. II at ¶¶ 11; M. Owoc Decl. II at ¶ 11.  Mr. and Mrs. Owoc discovered that the Unauthorized Stipulated TRO had been entered based upon questioning from a reporter. J. Owoc Decl. II at ¶¶ 11; M. Owoc Decl. II at ¶ 11.

25.     On March 21, 2023, Mr. Owoc e-mailed Mr. Luna asking "Why did you stipulate to a TRO when you and I agreed explicitly that I would NOT agree to stop posting on my social media accounts or modify me speech etc.?"  *See* J. Owoc Decl. II at ¶ 12; Ex. 1 to J. Owoc Decl. II E-mail Chain between Luna and Owoc).

26.     The following day, on March 22, 2023, Mr. Luna admitted he lacked authority, stating:

> Jack, I disagree with this characterization. We had a hearing with the Court on a preliminary basis on this and based on where the judge was headed, I did this to preserve the instant status quo. I can't stop you from posting at this point but did point out the reason for the temporary cease fire is way better than just posting on these accounts and keeping the white hat for the numerous battles we have remaining.

{2467/000/00554062}                                      7

*See* J. Owoc Decl. II at ¶ 13; Ex. 1 to J. Owoc Decl. II E-mail Chain between Luna and Owoc).

27. Almost immediately after Mr. Owoc raised with his Former Counsel his lack of authority to enter the Unauthorized Stipulated TRO, Mr. Luna notified the Owocs that he intended to withdraw from their representation. J. Owoc Decl. II at ¶ 14; M. Owoc Decl. II at ¶ 37.

28. On March 22, 2023, Debtors filed an Emergency Motion for Contempt, in addition to Emergency Motion for Sanctions against Mr. and Mrs. Owoc was entered, with a hearing scheduled for March 23, 2023 at 2:30 p.m. ECF 14. Former Counsel failed to appear at the March 23, 2023 hearing.

29. On March 27, 2023, the Court entered an order resetting the hearing on the Emergency Motion for Contempt reset the hearing, which was scheduled for March 28, 2023 at 11:00 a.m. ECF 15. Former Counsel failed to appear at the March 27, 2023 hearing.

30. On March 30, 2023, Former Counsel filed an "Unopposed Motion to Withdraw as Counsel" representing that he had obtained Mr. and Mrs. Owoc's consent to withdraw as counsel. ECF 17.

31. Undersigned, Bradley Shraiberg, filed a Joint Notice of Substitution of Attorney for Mr. and Mrs. Owoc on April 12, 2023. ECF 31.

32. Since the entry of the TRO the Debtors have demanded four (4) postings advertising Debtors' products be made by Mr. Owoc on his personal social media Accounts pursuant to the Compelled Endorsement Provision of the Unauthorized Stipulated TRO Order.

33. These requests have been followed by the Debtors' two (2) successive emergency motions for contempt against Mr. Owoc. ECF Nos. 2, 13 and 28.

## LEGAL STANDARD

34. A temporary restraining Order is an interlocutory order subject to modification.

*Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982) ("It is well established that as a general rule a temporary restraining order is not appealable.")  "It is permissible for a district court to rescind its own interlocutory order." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010).

35. "A bankruptcy court in the exercise of its inherent equitable powers has authority to modify or vacate its own interlocutory orders. …This follows from the general rule of law that an interlocutory order may be modified or rescinded by the court at any time before entry of a final decree. The court has inherent power to modify preliminary injunctions if warranted by the facts and circumstances of the case." *Dore & Associates Contracting, Inc. v. Am. Druggists' Ins. Co.*, 54 B.R. 353, 360 (Bankr. W.D. Wis. 1985) (internal citation omitted).

## ARGUMENT

**I.  The Owocs' Former Counsel had No Authority to Bind the Owocs to the Unauthorized Stipulated TRO.**

36. The Unauthorized Stipulated TRO here at issue is in the nature of a settlement agreement. *See Maxum Indem. Co. v. Fun Zone Entm't, LLC*, 3:18-CV-477-J-34PDB, 2020 WL 3052092, n. 28 (M.D. Fla. Feb. 5, 2020) (analyzing attorneys' authority to enter stipulation in accord with attorney's authority to enter settlement), *report and recommendation adopted sub nom. Maxum Indem. Co. v. Shaw*, 3:18-CV-477-J-34PDB, 2020 WL 1547453 (M.D. Fla. Mar. 25, 2020)

37. Florida state law governs the scope of an attorney's authority to enter into a settlement agreement. *Id.*, *citing Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994)

38. An "unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client." *Id.* at *22, *citing Nehleber v. Anzalone*, 345 So. 2d 822, 822–23 (Fla. 4th DCA 1977).

39. In order to settle a claim, the attorney must have "clear and unequivocal" authority from his client to do so. *Id.* Further, "'[a] party seeking to compel enforcement of a settlement bears the burden of proving that an attorney has the clear and unequivocal authority to settle on the client's behalf.'" *Diamont v. Scottsdale Ins. Co.*, 2020 WL 8187889, at *4 (S.D. Fla. Dec. 16, 2020), *report and recommendation adopted*, 2021 WL 184545 (S.D. Fla. Jan. 19, 2021).

40. An attorney's authority to compromise or settle a claim for his client "may not be gleaned from the client's mere employment of the attorney . . . ." *Maxum Indem. Co.*, 2020 WL 3052092, at 22; *Sockolof v. Eden Point N. Condo. Ass'n, Inc.*, 421 So. 2d 716, 719 (Fla. 3d DCA 1982) ("mere employment of an attorney to represent a client with respect to litigation or other matters does not of itself give the attorney the implied or apparent authority to compromise or settle his client's cause of action"). As explained by the Court in *Maxum*:

> The standard is "very high." *St. Mary's Sch. of Med. Ltd. v. Zabaleta*, 252 So. 3d 371, 372 (Fla. 3d DCA 2018). A finding that an attorney had possessed clear and unequivocal authority "must be supported by competent, substantial evidence." *Id.* In this regard, Florida courts are "very stringent." . . . "[W]here there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an evidentiary hearing."

*Id.* at *22.

41. Here, the Owocs have each put forth a sworn declaration wherein they assert clearly and unambiguously that the Owocs' Former Counsel had no authority to compromise the Debtors' claims against them and had no authority to enter the Unauthorized Stipulated TRO. *See* J. Owoc Decl. at ¶¶ 3-14; M. Owoc Decl. II at ¶¶ 3-14.

42. Indeed, as the Owocs attest, they never would have agreed, nor given their Former Counsel the authority to agree, to a stipulation that eliminated Mr. Owoc's control over who and what was posted to his personal social media Accounts, or that gave that control to the Debtors, and further obligated Mr. Owoc to endorse products and ideas that could be damaging to the Jack Owoc persona. *See* J. Owoc Decl. II at ¶ 10; M. Owoc Decl. II at ¶ 10.

43. In fact, the Owocs had expressly instructed their Former Counsel **not** to compromise the claims against them. *See* J. Owoc Decl. II at ¶ 6; M. Owoc Decl. II at ¶ 6. Former Counsel Luna had no actual authority to bind the Owocs to the Unauthorized Stipulated TRO, and to the extent he represented to the Court and to the Debtors that he held such authority, his representations were untrue.[3] *See* J. Owoc Decl. II at ¶¶ 3-13; M. Owoc Decl. II at ¶¶ 3-13.

44. While there are "exceptions" to the general rule that an attorney does not have apparent or implied authority to settle their client's claim merely because the client retained the attorney, none of those exceptions remotely applies here. *See Diamont*, 2020 WL 8187889, at *5 (identifying exceptions as (1) attorney faces an emergency requiring immediate action; (2) client gives clear and unequivocal authority, and (3) client ratifies the unauthorized compromise.)

45. The evidentiary hearing on Debtors' Emergency Motion for a TRO, though scheduled on short notice, did not constitute an emergency requiring immediate action where consultation with the Owocs was impossible. *See id.* Further, as noted, the Owocs did not authorize their Former Counsel to compromise the claims against them or enter Unauthorized Stipulated TRO. *See, e.g.*, *Sockolof*, 421 So. 2d at 719 (applying exception noting "[W]here the

---

[3] There is no basis for any claim that the Owocs' Former Counsel was imbued with apparent authority because the Owocs themselves would have needed to make representations to the Court and the Debtors that their Former Counsel had the authority to compromise the claims against them. *See Worsham v. TSS Consulting Group, LLC*, 6:18-CV-1692-LHP, 2023 WL 2664203, at *7 (M.D. Fla. Mar. 28, 2023) ("The agent cannot create apparent authority, only the actions or representations of the principal can create apparent authority.") Neither of the Owocs have ever made any such representations.

circumstances are such that the attorney is obliged to act without delay, and there is not time or opportunity for consultation with the client, the attorney has power to compromise his client's claim.") (*internal citations omitted*).

46. Lastly, there can be no claim that the Owocs ratified the Unauthorized Stipulation or the Unauthorized Stipulated TRO. Under Florida law, ratification occurs where a person expressly or impliedly adopts the act of another, even if initially taken without authority. *See In re Melbourne Beach, LLC,* 6:17-BK-07975-KSJ, 2019 WL 10734081, at *5 (Bankr. M.D. Fla. Aug. 6, 2019). For ratification to apply, "[t]he principal must have full knowledge of the initially unauthorized agents' conduct and approve of that conduct." *Id.*

47. Here, Mr. Owoc's conduct demonstrates that he did not, and does not, approve of his Former Counsel's conduct in purporting to bind the Owocs to the Unauthorized Stipulated TRO. The Debtors have filed two emergency motions for contempt against Mr. Owoc (ECF Nos. 13 and 28) alleging conduct clearly reflective of the fact that Mr. Owoc is being forced to comply with a Unauthorized Stipulated TRO that he never authorized, agreed to, with terms that he does not understand, and which are necessarily damaging to the value of the Jack Owoc brand.

48. Undersigned counsel substituted into this case for the Owocs on April 12, 2023, or just over a week ago, and thus, has promptly moved to set aside the Unauthorized Stipulated TRO.

49. The Owocs have moved expeditiously to have the stipulation and resultant order set aside as expeditiously as possible. J. Owoc Decl. II at ¶ 15; M. Owoc Decl. II at ¶ 13.

50. Absent evidence challenging the accuracy of Mr. and Mrs. Owocs' account of events, no evidentiary hearing is necessary and such that the Court should grant this Motion. *See Sockolof*, 421 So. 2d at 719 (finding no evidentiary hearing required absent contradictory evidence).

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, Jack and Megan Owoc respectfully request that this Court convene an emergency hearing on this matter and grant the relief requested in this Motion by setting aside that *Order Approving Stipulation Regarding Debtors' Motion to Temporary Restraining Order* [ECF No. 10] and, that *Stipulation Regarding Debtors' Motion for Temporary Restraining Order* [ECF No. 9].

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by Notice of Electronic Filing via CM/ECF to those parties registered to receive such notice in this case on April 25, 2023.

>   **SHRAIBERG PAGE P.A.**
>   Attorneys for the Owocs
>   2385 NW Executive Center Drive, Suite 300
>   Boca Raton, Florida 33431
>   Telephone: 561-443-0800
>   Facsimile: 561-998-0047
>   Email: bss@slp.law
>
>   By: /s/ Bradley Shraiberg
>   Bradley Shraiberg
>   Fla Bar No. 121622