United States Bankruptcy Court

Southern District of Florida

Vital Pharmaceuticals, Inc.,
    Plaintiff

Adv. Proc. No. 23-01051-PDR

Owoc,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 113C-0      User: admin      Page 1 of 3
Date Rcvd: Apr 25, 2023      Form ID: pdf004      Total Noticed: 25

The following symbols are used throughout this certificate:
**Symbol      Definition**

\+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 27, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| ust | | Karina Montalvo, DOJ-Ust, 500 Tanca Street Ochoa Building, Suite 301, San Juan, PR 00901 |
| ust | + | Roslyn Tompkins, DOJ-Ust, 75 Ted Turner Dr, SW, Ste 362, Atlanta, GA 30303-3330 |
| pla | + | Bang Energy Canada, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | JHO Intellectual Property Holdings, LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | JHO Real Estate Investment, LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| dft | + | John H. Owoc, 16720 Stratford Court, Southwest Ranches, FL 33331-1358 |
| dft | + | Megan E. Owoc, 16720 Stratford Court, Southwest Ranches, FL 33331-1358 |
| pla | + | Quash Seltzer, LLC, 20311 Sheridan Street, Fort Lauderdale, FL 33332-2313 |
| pla | + | Rainbow Unicorn Bev LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | Vital Pharmaceuticals International Sales, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | Vital Pharmaceuticals, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |

TOTAL: 11

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion21.tp.ecf@usdoj.gov | Apr 25 2023 22:24:00 | Guy Van Baalen, DOJ-Ust, 501 E. Polk Street, Tampa, FL 33602-3949 |
| ust | + | Email/Text: USTPRegion21.MM.ECF@usdoj.gov | Apr 25 2023 22:24:00 | Office of the US Trustee, 51 S.W. 1st Ave., Suite 1204, Miami, FL 33130-1614 |
| ust | + | Email/Text: USTPRegion03.WL.ECF@USDOJ.GOV | Apr 25 2023 22:24:00 | U.S. Trustee, Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801-3519 |
| ust | + | Email/Text: ustpregion03.ne.ecf@usdoj.gov | Apr 25 2023 22:24:00 | U.S. Trustee., US Dept of Justice, Office of the US Trustee, One Newark Center Ste 2100, Newark, NJ 07102-5235 |
| ust | + | Email/Text: ustpregion02.br.ecf@usdoj.gov | Apr 25 2023 22:24:00 | United States Trustee, Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014-7016 |
| ust | + | Email/Text: ustpregion21.at.ecf@usdoj.gov | Apr 25 2023 22:24:00 | United States Trustee (cabrera), Office of the United States Trustee, 75 Ted Turner Dr., Suite 362, Atlanta, GA 30303-3330 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Apr 25 2023 22:24:00 | United States Trustee (davis), Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Apr 25 2023 22:24:00 | United States Trustee - (ennever), Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustpregion21.tp.ecf@usdoj.gov | Apr 25 2023 22:24:00 | United States Trustee - FTM7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL |

| District/off: 113C-0 | User: admin | Page 2 of 3 |
|---|---|---|
| Date Rcvd: Apr 25, 2023 | Form ID: pdf004 | Total Noticed: 25 |

| | | | | |
|---|---|---|---|---|
| | | | | 33602-3949 |
| ust | + Email/Text: ustp.region21.or.ecf@usdoj.gov | | Apr 25 2023 22:24:00 | United States Trustee - JAX 13/7, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + Email/Text: ustp.region21.or.ecf@usdoj.gov | | Apr 25 2023 22:24:00 | United States Trustee - ORL, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + Email/Text: ustp.region21.or.ecf@usdoj.gov | | Apr 25 2023 22:24:00 | United States Trustee - ORL7/13, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + Email/Text: ustpregion21.tp.ecf@usdoj.gov | | Apr 25 2023 22:24:00 | United States Trustee - TPA7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602-3949 |
| clmag | + Email/Text: cr-info@stretto.com | | Apr 25 2023 22:24:00 | Stretto, 410 Exchange, Ste. 100, Irvine, CA 92602-1331 |

TOTAL: 14

## BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - ORL7/13, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | *+ | United States Trustee - TPA7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602-3949 |

TOTAL: 0 Undeliverable, 2 Duplicate, 0 Out of date forwarding address

## NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 27, 2023                    Signature:    /s/Gustava Winters

---

## CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 25, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Bradley S Shraiberg | on behalf of Defendant John H. Owoc bss@slp.law dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law |
| Bradley S Shraiberg | on behalf of Defendant Megan E. Owoc bss@slp.law dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law |
| Jordi Guso, Esq. | on behalf of Plaintiff Rainbow Unicorn Bev LLC jguso@bergersingerman.com fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff JHO Intellectual Property Holdings LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |

| | | |
|---|---|---|
| District/off: 113C-0 | User: admin | Page 3 of 3 |
| Date Rcvd: Apr 25, 2023 | Form ID: pdf004 | Total Noticed: 25 |

Jordi Guso, Esq.
    on behalf of Plaintiff Quash Seltzer LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Jordi Guso, Esq.
    on behalf of Plaintiff JHO Real Estate Investment LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Jordi Guso, Esq.
    on behalf of Plaintiff Vital Pharmaceuticals International Sales Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Jordi Guso, Esq.
    on behalf of Plaintiff Vital Pharmaceuticals Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Jordi Guso, Esq.
    on behalf of Plaintiff Bang Energy Canada Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Michael Jordan Niles
    on behalf of Plaintiff Vital Pharmaceuticals Inc. mniles@bergersingerman.com, efile@bergersingerman.com;efile@ecf.courtdrive.com;zmorton@bergersingerman.com

Patrick R Dorsey
    on behalf of Defendant Megan E. Owoc pdorsey@slp.law dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com

Patrick R Dorsey
    on behalf of Defendant John H. Owoc pdorsey@slp.law dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com

TOTAL: 12



**ORDERED in the Southern District of Florida on April 25, 2023.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

Vital Pharmaceutical,

    Debtor.
_____/

Case No. 23-01051-PDR

Chapter 11

Vital Pharmaceuticals, Inc., *et al.*,

    Plaintiffs,
v.

John H. Owoc, *et al.*,

    Defendants.
_____/

Adv. No. 23-01051-PDR

**ORDER GRANTING PLAINTIFFS'
<u>EMERGENCY MOTION FOR CONTEMPT</u>**

THIS MATTER came before the Court on April 12, 2023, at 11:00 a.m., on the Plaintiffs' *Emergency Motion for Contempt*,[1] which seeks to hold Defendant John H. Owoc in contempt for commenting on an Instagram post about the Plaintiffs' products; and the Plaintiffs' *ore tenus* motion to require Mr. Owoc to remove his comment from Instagram.

The Owocs stipulated to an agreed order requiring them to "post" content requested by the Plaintiffs to—and to refrain "from posting any content or making any posts of any kind to or from"—the @bangenergy.ceo Instagram account. After posting content requested by the Plaintiffs, Mr. Owoc commented (among other things) that he had been forced by threat to post the Plaintiffs' requested content. Because Mr. Owoc's comment, which is patently false, was a message published in an online forum, he violated the agreed order's prohibition against "making posts of any kind" from the @bangenergy.ceo Instagram account and therefore is in contempt of court.

**I.    Findings of Fact**

The Plaintiffs, the Debtors in this chapter 11 case, produce performance energy drinks. Their leading product is Bang energy drink, which (based on retail sales and market share data) is one of the top selling energy drinks in the United States. To market their products, the Plaintiffs have employed a strong and consistent social media presence using the following Twitter, Instagram, and TikTok accounts (referred to by the parties as the "CEO Accounts"):

---

[1] Adv. Doc. 28.

- @BangEnergyCEO ("CEO Twitter Account");
- @bangenergy.ceo ("CEO Instagram Account"); and
- @bangenergy.ceo ("CEO TikTok Account").

The CEO Instagram Account, which is displayed on the Bang energy drink label, is a verified account with more than one million followers.

Defendants, John H. Owoc (the Plaintiffs' former Chief Executive Officer and Chief Science Officer) and Meg Owoc (the Plaintiffs' former Senior Vice President of Marketing), had access to and used the CEO Accounts. But, on March 9, 2023, the Plaintiffs fired the Owocs and demanded they return all company property. Since being fired, the Owocs have continued to use the CEO Accounts, which the Plaintiffs claim are property of the estate.

Plaintiffs filed this adversary proceeding (1) seeking a declaration that the CEO Accounts are property of the estate and (2) demanding turnover of the accounts.[2] In the meantime, the Plaintiffs sought a temporary injunction that would prohibit the Owocs from using—and require them to turn over to the Plaintiffs control of—the CEO Accounts because the Plaintiffs feared the Owocs might post content that could harm (intentionally or not) the Plaintiffs' business, which they are attempting to sell in this chapter 11 case.[3]

---

[2] Adv. Doc. 1.

[3] Adv. Doc. 2, ¶¶ 18 – 22, & 30 – 33.

To resolve the request for injunctive relief, the Plaintiffs and Owocs filed an agreed stipulation with the Court.[4] Under the stipulation, which was signed by the parties' counsel, the parties agreed (among other things) that:

- The Owocs "are prohibited from *posting* any content or making any *posts* of any kind to or from the CEO Accounts" for forty-five days after an order approving the joint stipulation;[5]

- Within nine hours of a request from the Plaintiffs, the Owocs would "*post*" to the CEO Accounts any content about the Plaintiffs' products that the Plaintiffs requested (so long as the requested post does not reference the Owocs);[6] and

- In the event one party alleges the other violated the stipulation, twenty-four hours' notice would be sufficient for a hearing to address the alleged violation.[7]

On March 16, 2023, the Court approved the parties' stipulation (the "March 16 Order").[8]

On April 6, 2023, the Plaintiffs requested the Owocs post content to the CEO Accounts.[9] Although required to do so within nine hours, the Owocs failed to post the requested content until April 10—four days later. Roughly a half hour after posting the requested content, Mr. Owoc ranted about the post in a series of comments—from the CEO Instagram Account—in which he claimed that:

- his social media account had been hijacked;

---

[4] Plaintiffs' Ex. 1, Adv. Doc. 33-1.

[5] *Id.* ¶ 2 (emphasis added).

[6] *Id.* ¶ 3 (emphasis added).

[7] *Id.* ¶ 6.

[8] Plaintiffs' Ex. 2, Adv. Doc. 33-2.

[9] Defendants' Ex. 2, Adv. Doc. 32-2.

- he had been "forced by threat" to post the requested content;

- being forced to post the content was a "major fraud on the public"; and

- various professionals involved in this chapter 11 case were committing racketeering violations.[10]

The rant ends with Mr. Owoc insisting that the "FLORIDA BANKRUPTCY COMMUNITY MUST BE BROUGHT TO JUSTICE!"[11] In response to a comment by a social media user, Mr. Owoc commented—again from the CEO Instagram Account—that "[t]he bankruptcy community corruption here in South Florida is real."[12]

In their contempt motion, the Plaintiffs ask the Court to hold Mr. Owoc in contempt for violating the Court's March 16 Order; order the Owocs to turn over the passwords to the CEO Accounts; declare that the Plaintiffs own the CEO Accounts; and allow the Plaintiffs to change the CEO Accounts' passwords.[13] At the April 12 hearing on their contempt motion, the Plaintiffs also asked the Court to order Mr. Owoc to take down his Instagram rant.

In response, Mr. Owoc testified at the April 12 hearing why he believed his Instagram rant did not violate the Court's March 16 Order. For starters, Mr. Owoc challenged the validity of the March 16 Order. According to Mr. Owoc, his prior

---

[10] Plaintiffs' Ex. 6, Adv. Doc. 33-6.

[11] *Id.*

[12] Plaintiffs' Ex. 7, Adv. Doc. 33-7.

[13] Adv. Doc. 28 at 6.

5

counsel entered the joint stipulation without his permission: Mr. Owoc testified he never saw the joint stipulation before it was filed and that he never gave his prior counsel permission to sign it. Mr. Owoc, a self-proclaimed social media expert, further contended there is a difference between a "post" and a "comment," and in Mr. Owoc's view, the March 16 Order only prohibits him from "posting" content to the CEO Accounts—not "commenting" on posts. In short, Mr. Owoc claims that the March 16 Order is not valid and that, even if it was, he did not violate it because his comment is not a "post."[14]

At the conclusion of the April 12 contempt hearing, the Plaintiffs asked to file a supplemental brief addressing Mr. Owoc's proposed definitions of "post" and "content." The Plaintiffs attached to their supplemental brief copies of various pages from Instagram's website showing that Instagram repeatedly uses the term "content" to include "comments."[15] So does Facebook, according to exhibits attached to the Plaintiffs' supplemental brief.[16] Plaintiffs also offered screenshots of Instagram's interface showing that to "comment" on an Instagram post, a user must click a "post" button. Mr. Owoc objects to the Court's consideration of this information because it was offered after the close of the evidence.[17]

---

[14] 4/12/2023 Hr'g Tr., Adv. Doc. No. 47, p. 33, l. 18 – p. 34, l. 17; p. 38, ll. 17 – 23; p. 49, l. 22 – p. 50, l. 25.

[15] Adv. Doc. 38 at 5 – 6.

[16] *Id.* at 6.

[17] Adv. Doc. 46.

## II. Conclusions of Law

This Court undoubtedly has the power to hold Mr. Owoc in contempt. "Civil contempt power is inherent in bankruptcy courts since all courts have authority to enforce compliance with their lawful orders."[18] Moreover, Bankruptcy Code § 105 gives this Court statutory civil contempt power.[19]

For the Court to hold Mr. Owoc in contempt, the Plaintiffs must first establish by clear and convincing evidence that Mr. Owoc violated this Court's March 16 Order.[20] To meet that burden, the Plaintiffs must show that (1) the March 16 Order is valid; (2) the March 16 Order is clear and unambiguous; and (3) Mr. Owoc had the ability to comply with the order.[21] The Plaintiffs have met that burden.

### A. The March 16 Order is valid.

It is worth noting that the March 16 Order, which simply approves the joint stipulation between the Plaintiffs and Defendants, was entered at the request of the Plaintiffs and the Owocs.[22] Even so, Mr. Owoc claims the March 16 Order is invalid because he claims he never saw the stipulation before it was signed or authorized his counsel to enter into it.

---

[18] *Gowdy v. Mitchell (In re Ocean Warrior, Inc.)*, 835 F.3d 1310, 1316 (11th Cir. 2016).

[19] 11 U.S.C. § 105(a); *In re Ocean Warrior, Inc.*, 835 F.3d at 1316 – 17.

[20] *Commodity Futures Trading Comm'n v. Wellington Precious Metals*, 950 F.2d 1525, 1529 (11th Cir. 1992) ("A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order.").

[21] *Hendershott v. Ostuw*, 2021 WL 3008867, *2 (S.D. Fla. July 2, 2021) (explaining that a party seeking contempt "must demonstrate that: (1) the order was valid and lawful; (2) the order was clear and unambiguous; and, (3) the alleged violator had the ability to comply with the order") (citing *Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016)).

[22] Plaintiffs' Ex. 1, Adv. Doc. 33-1; Plaintiffs' Ex. 2, Adv. Doc. No. 33-2.

As a factual matter, the Court does not find Mr. Owoc's testimony credible. At the April 12 contempt hearing, Mr. Owoc testified he saw the March 16 Order days after it was entered.[23] Yet, Mr. Owoc conceded that, once he saw the March 16 Order, he took no action to set it aside.[24] In fact, not only did Mr. Owoc fail to take any action to set aside the March 16 Order, he actually complied with it—even if belatedly—by providing the passwords to two of the CEO Accounts and posting the Plaintiffs' requested content.[25] The first time Mr. Owoc raised the alleged invalidity of the March 16 Order was only after the Plaintiffs sought to hold him in contempt.

Even if Mr. Owoc had not authorized his counsel to enter the joint stipulation, the March 16 Order would still be valid. The United States Supreme Court has held in a variety of contexts that "clients must be accountable for the acts and omissions of their attorneys."[26]

The Supreme Court explained three decades ago in *Pioneer Investment Services Co. v. Brunswick Associates, LP*, that the rule is necessary to give effect to our system of representative litigation:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly

---

[23] Transcript of 4/12/2023 Contempt Hearing, Adv. Doc. No. 47, p. 48, l. 9 – p. 49, l. 19.

[24] 4/12/2023 Hr'g Tr., Adv. Doc. No. 47, p. 38, l. 24 – p. 40, l. 7.

[25] *Id.*

[26] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). This is true even when a lawyer's "unexcused conduct imposes an unjust penalty on the client." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962). The Supreme Court, for example, has upheld the dismissal of a lawsuit that resulted from a lawyer's failure to attend a pretrial conference. *Id.* The Supreme Court has also held that a client could be penalized for his lawyer's failure to timely file a tax return. *United States v. Boyle*, 469 U.S. 241, 249 – 51 (1985).

> inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent. . . .[27]

Because the rule enunciated in *Pioneer* applies with equal force here, the March 16 Order is valid even if Mr. Owoc had not authorized his counsel to enter the stipulation.

### B.   The March 16 Order is clear and unambiguous.

The Court's March 16 Order adopts verbatim the language from the parties' joint stipulation.[28] That language, negotiated by the Owocs' counsel, prohibits the Owocs from "*posting* any content or making any *posts* of any kind to or from" the CEO Accounts. At the April 12 contempt hearing, Mr. Owoc testified that the terms "post" and "content" are terms of art: with respect to Instagram, Mr. Owoc contends the term "content" refers to an image, picture, or video, while the term "post" means "to display an image, picture or video."[29] Under Mr. Owoc's definitions of "post" and "content," commenting on a post would not constitute "posting any content" or "making any posts of any kind" and therefore would not violate the Court's March 16 Order.

In their supplemental brief, the Plaintiffs offer what would be compelling evidence to refute Mr. Owocs' cabined definition of "post" and "content": the Plaintiffs offered printouts from Instagram's website showing that Instagram repeatedly uses the term "content" to include "comments"; and they offered a screenshot showing that

---

[27] *Pioneer Inv. Servs. Co.*, 507 U.S. at 397.

[28] Plaintiffs' Ex. 1, Adv. Doc. 33-1; Plaintiffs' Ex. 2, Adv. Doc. No. 33-2.

[29] 4/12/2023 Hr'g Tr., Adv. Doc. No. 47, p. 33, l. 18 – p. 34, l. 17; p. 49, l. 22 – p. 50, l. 25.

in order to comment on the Plaintiffs' requested post, Mr. Owoc would have had to click a "post" button.[30] Mr. Owoc, however, while offering nothing to contest the authenticity of the information provided by the Plaintiffs, objects to the admissibility of this evidence because it was offered after the Plaintiffs rested their case at the April 12 contempt hearing—and after the Court stated that the evidence was closed for both parties.[31] But the Court need not resort to extrinsic evidence to determine whether the March 16 Order is clear and unambiguous.

The Court's March 16 Order is clear and unambiguous if the Owocs can "ascertain from the four corners of the order precisely what acts are forbidden."[32] To make that determination, this Court need only look to the plain language of the March 16 Order.[33] For purposes of contempt, courts routinely determine the plain language of an order by looking to dictionary definitions.[34] Here, Merriam-Webster Dictionary defines "post," when used as a verb, to mean "to publish (something, such as a message) in an online forum (such as an electronic message board)" and, when

---

[30] Adv Doc. No. 38 at 3 – 6.

[31] Adv. Doc. No. 46 at 3 (citing 4/12/2023 Hr'g Tr., Adv. Doc. No. 47, p. 18, ll. 9 – 12; p. 53, ll. 10 – 15).

[32] *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)).

[33] *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 20 (D.D.C. 1999) (looking to the plain language of an order to determine whether party substantially complied with order).

[34] *See, e.g., Rivera-Molina v. Casa La Roca, LLC*, 2021 WL 5769390, at *3 (D.P.R. Dec. 6, 2021) (resorting to dictionary definition of term "proceeds" to determine whether to hold party in contempt for violating an order that required party to "deposit any and all such proceeds" into an accounted opened by the clerk of court); *In re Chief Executive Officers Club, Inc.*, 359 B.R. 527, 537 (Bankr. S.D.N.Y. 2007) (determining that order forbidding party from "transferring" property was clear and unambiguous by looking to dictionary definition of "transferring"); *New Horizons Computer Learning Ctrs., Inc. v. Silicon Valley Training Partners, Inc.*, 2003 WL 23654790, at *8 (M.D. Fla. Nov. 12, 2003) (determining order was clear and unambiguous for contempt purposes by looking to dictionary definition of "employee").

used as a noun, to mean "something (such as a message) that is published online."[35] Using those definitions, the March 16 Order's prohibition against the Owocs "making any posts of any kind" clearly and unambiguously forbids Mr. Owoc from publishing anything—including a comment—from the CEO Instagram Account (other than a post requested by the Plaintiffs).

Mr. Owoc's attempt to manufacture ambiguity by proposing more limited definitions of "post" and "content" fails for three reasons. First, federal courts have long been reluctant to allow a party to evade contempt by claiming the order they violated was ambiguous when, like here, the party proposed and consented to the order.[36]

Second, Mr. Owoc offers no authority for his limited definitions. To be sure, Mr. Owoc testified he is a social media expert. But even if Mr. Owoc is a social media expert, his testimony that the terms "post" and "content" exclude making "comments"

---

[35] *Merriam-Webster Dictionary*, *available at* https://www.merriam-webster.com/dictionary/post; *see also The America Heritage College Dictionary* 1087 (4th ed. 2010) (defining the verb "post" to mean "[t]o make an electronic message available by sending it to an online forum"); *Oxford Dictionary of English* 1387 (3d ed. 2010) (defining the verb "post" to mean to "make (information) available on the Internet" and to "submit (a message to an Internet message board or blog").

[36] *Cobell*, 37 F. Supp. 2d at 16 ("In analyzing the [contempt] matter at hand, the court bears in mind that ambiguity is far less likely to be found when the order at issue was proposed and consented to by the contemnor.") (citing *Glover v. Johnson*, 934 F.2d 703, 708–09 (6th Cir.1991) ("It suffices to say that the 1981 final order was a negotiated settlement between the parties. Defendants did not object to the language until now and have never asked the district court to clarify the purportedly ambiguous language. Moreover, we find the language unambiguous and, even if it were ambiguous, defendants' failure to request the court to clarify, explain, or modify the language in the decade since the order was served precludes raising an ambiguity argument at this time."); *United States v. Tennessee*, 925 F. Supp. 1292, 1302 (W.D.Tenn.1995). ("Courts have been particularly unsympathetic to purported excuses for less-than-substantial compliance where the contemnor has participated in drafting the order against which compliance is measured.")).

is merely *ipse dixit*,[37] and "the simple *ipse dixit* of the expert is not enough."[38] Thus, while the Plaintiffs' did not object to Mr. Owocs' testimony regarding the definition of "comment" and "post," the Court gives his testimony little weight.

Third, limiting the definitions of "post" and "content" as Mr. Owoc proposes would thwart the purpose of the March 16 Order. As explained above, the Plaintiffs have used the CEO Accounts to market their products; the Owocs, who were fired by the Plaintiffs, continue to have access to and use the accounts; and the Plaintiffs feared the Owocs might post content that could harm the Plaintiffs' business, which they are trying to sell in this chapter 11 case. To address those concerns, the Plaintiffs and Owocs stipulated to the March 16 Order. Yet, under Mr. Owoc's interpretation of the March 16 Order, he can say all the harmful things he wants to about the Plaintiffs' business so long as he puts them in a "comment" rather than a "post." That simply makes no sense.

Mr. Owocs' limited definitions of "post" and "content" are not credible and therefore do not create an ambiguity. The plain, ordinary language of the March 16 Order—the Owocs "are prohibited from *posting* any content or making any *posts* of any kind to or from the CEO Accounts"—clearly and unambiguously forbids the Owocs from publishing any messages—including comments—to the CEO Instagram Account.

---

[37] "Ipse dixit" is Latin for "he himself said it." *Black's Law Dictionary* 833 (7th ed. 1999). The term is used to refer to "[s]omething asserted but not proved." *Id.*

[38] *In re J.C. Householder Land Trust #1*, 501 B.R. 441, 454 (Bankr. M.D. Fla. 2013) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157)).

C. <u>Mr. Owoc was able to comply with the order</u>.

The March 16 Order imposes two primary obligations on the Owocs. One is an affirmative obligation to act—i.e., within nine hours of a request from the Plaintiffs, the Owocs must post content to the CEO Accounts. The other is an obligation to refrain from acting—i.e., refrain from "posting any content or making any posts of any kind." The Court can envision circumstances where the Owocs would be unable to comply with the affirmative obligation to act. Although the Owocs technically failed to comply with their obligation to act (they did not post the Plaintiffs' requested content within nine hours), that is not the basis for contempt here. The basis for contempt is Mr. Owocs' refusal to comply with his obligation to refrain from acting. Mr. Owoc has offered no evidence that he was unable to comply with his obligation to refrain from acting—an obligation he stipulated to.

D. <u>Mr. Owoc has failed to explain his noncompliance</u>.

The Plaintiffs satisfied their burden of proving that (1) the March 16 Order is valid; (2) the March 16 Order is clear and unambiguous; and (3) Mr. Owoc had the ability to comply with the order. The burden shifted to Mr. Owoc to explain his or her noncompliance.[39]

Mr. Owoc's explanation for his failure to comply with the March 16 Order is two-fold: first, the March 16 Order is not valid because he did not agree to it; second, the March 16 Order means something other than what the plain language says. For

---

[39] *Hendershott v. Ostuw*, 2021 WL 3008867, at *2 (S.D. Fla. July 2, 2021) ("Once the movant has satisfied the initial burden, the burden then shifts to the alleged violator to explain his noncompliance at a hearing before the district court.") (citing *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998)).

the reasons discussed above, the Court does not find either explanation credible or satisfactory. Mr. Owoc failed to meet his burden.

### III. Conclusion

Three years ago, in *Taggart v. Lorenzen*, the United States Supreme Court cautioned that civil contempt is a "severe remedy."[40] For that reason, the Supreme Court has long recognized that "civil contempt 'should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct.'"[41]

Here, there is no fair ground of doubt as to the wrongfulness of Mr. Owocs' conduct. The Plaintiffs sought a temporary injunction that would prohibit the Owocs from using—and require them to turn over control of—the CEO Accounts because the Plaintiffs were concerned the Owocs would post content harmful to the Plaintiffs' business. To avoid a hearing on the request for a temporary injunction, the Owocs stipulated to the March 16 Order, which prohibited them from "posting any content or making any posts of any kind to or from" the CEO Accounts. As explained above, under their interpretation of the March 16 Order, the Owocs could say harmful things about the Plaintiffs' business so long as the harmful things were contained in a "comment"—not a "post." Suffice it to say that interpretation of the March 16 Order is objectively unreasonable and there can be no fair ground of doubt as to the wrongfulness of Mr. Owoc's conduct.

Accordingly, the Court ORDERS:

---

[40] 139 S. Ct. 1795, 1801 – 02 (2019).

[41] *Id.* (citing *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

1. Mr. Owoc is in contempt of court for violating the March 16 Order.

2. Mr. Owoc can, in part, purge his contempt by deleting his April 10 comments about the Debtor's requested Instagram post by 5:00 pm on April 25, 2023.[42]

3. Mr. Owoc will incur a $25,000/day fine for each day the April 10 comments remains on Instagram.

4. Mr. Owoc may further purge his contempt and shall by 5:00 pm on April 25, 2023, turn over to counsel for the Plaintiffs the passwords for each of the CEO Accounts. Plaintiffs may change the passwords for each of the CEO Accounts and may post content to such accounts in accordance with the terms of the March 16 Order. The Owocs are prohibited from *posting* any content or making any *posts* of any kind to or from the CEO Accounts, including posting any comments, in accordance with the March 16 Order.

5. The Court declines to rule as to the ownership of the CEO Accounts at this time.

###

Copies to:
All parties in interest.

---

[42] Plaintiffs' Ex. 6, Adv. Doc. 33-6.