UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,　　　　　　　Case No.: 22-17842-PDR

　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　Debtors.　　　　　　　　　　　　　　　　　　　(Jointly Administered)
_____/

VITAL PHARMACEUTICALS, INC., *et al.*,

　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　Adv. Proc. No. 23-01051-PDR

JOHN H. OWOC AND MEGAN E. OWOC,

　　　Defendants.
_____/

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
AND INCORPORATED MEMORANDUM OF LAW**

　　　John H. Owoc aka Jack Owoc ("Mr. Owoc") and Megan E. Owoc ("Mrs. Owoc"), pursuant to Fed. R. Civ. P. 65, respond in opposition to the *Motion for Preliminary Injunction and Incorporated Memorandum of Law* (the "Motion") filed by Vital Pharmaceuticals, Inc. and its affiliated debtors in these jointly administered cases (together, the "Debtors"). ECF No. 84. In support of their response, Mr. and Mrs. Owoc (together, the "Owocs") state:

**SUMMARY OF ARGUMENT**

　　　Preliminary injunctive relief is an extraordinary remedy that requires a movant to clearly carry its burden of persuasion on each of four elements. As set forth *infra*, the Debtors have failed to carry their burden on any one element, let alone all four. The Debtors: (1) have failed to show a substantial likelihood of success in litigation that involves novel legal issues and heavily disputed

facts; (2) have failed to demonstrate a substantial threat to a sale process that is being concluded under the auspices of an existing temporary restraining order; (3) have failed to show that the alleged harm to the sale, which is again already being concluded under a temporary restraining order, outweighs the prejudice suffered by the Owocs should an injunction be entered; and (4) have failed to show that the proposed injunction accords with the public interest.

The Court should deny the Motion.

## ARGUMENT

Fed. R. Civ. P. 65(a)(1) permits the Court to issue a preliminary injunction. The moving party must satisfy "four prerequisites for the extraordinary relief of preliminary injunction." *SunTrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (quotation omitted). "The prerequisites are: (1) that there is a substantial likelihood plaintiff will prevail on the merits; (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; <u>and</u> (4) that granting the preliminary injunction will not disserve the public interest." *SunTrust*, 252 F.3d at 1166 (citation omitted) (emphasis in original). The Eleventh Circuit has cautioned that "a preliminary injunction is an <u>extraordinary and drastic remedy</u> that should not be granted unless the movant <u>clearly carries its burden of persuasion on each of these prerequisites</u>." *SunTrust*, 252 F.3d at 1166 (emphases supplied); *citing Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

The Debtors have failed to satisfy any of the prerequisites for an injunction, let alone "clearly carr[ied]" their burden of persuasion as mandated by the Eleventh Circuit. In particular:

### A. The Debtors Have Not Shown a Substantial Likelihood of Success on the Merits.

The party seeking a preliminary injunction must first demonstrate a substantial likelihood

of success on the merits. This standard sets "a high bar" and requires a movant to show more than that he "may" prevail at trial—rather, the movant must demonstrate "a <u>substantial</u> likelihood of success on the merits." *See Attwood v. Clemons*, 2018 WL 11189668, at *1 (N.D. Fla. May 8, 2018) (emphasis in original). Accordingly, preliminary injunction requests are often denied in cases with conflicting evidence, matters of first impression or other dynamics that preclude a movant from showing a substantial likelihood of success. *See, e.g.*, *KeyView Labs, Inc. v. Barger*, 2020 WL 8224618, at *8 (M.D. Fla., Dec. 22, 2020) (conflicting evidence prevented movant "from establishing a substantial likelihood of success on the merits" for a preliminary injunction) (footnote omitted) (citing *B&G Equip. Co., Inc. v. Airofog USA, LLC*, No. 8:19-cv-403-T-36AEP, 2019 WL 2537792, at *5 (M.D. Fla. June 20, 2019) (adopting report and recommendation denying preliminary injunction because parties' conflicting declarations prevented moving party from establishing substantial likelihood of success on merits); *Ill. Tool Works Inc. v. BG Prods., Inc.*, No. 8:17-cv-420-T-30AAS, 2017 WL 3017214, at *10 (M.D. Fla. June 22, 2017) (denying preliminary injunction because parties' conflicting declarations prevented moving party from establishing substantial likelihood of success on merits), *report and recommendation adopted*, No. 8:17-cv-420-T-30AAS, 2017 WL 2986240 (M.D. Fla. July 13, 2017)); *Palmer High School Gay/Straight Alliance v. Colorado Springs School Dist. 11*, 2005 WL 3244049, at *3 (D. Col., Mar. 30, 2005) ("Counsel for plaintiffs admitted that this [legal] question was one of first impression. At this stage of the proceedings, on a motion for preliminary injunction, the court cannot conclude that the plaintiffs have established a substantial likelihood of success on the merits of this statutory claim.").

Issues of first impression, conflicting evidence and other factors preclude the Debtors from satisfying this prerequisite. Without limitation:

- Social media account ownership is a cutting edge area of the law.  The Debtors' ownership claims overwhelmingly rely on one case, *In re CTLI, LLC*, 528 B.R. 359 (Bankr. S.D. Tex. 2015), which is neither binding on this Court nor a recent opinion, given the speed at which social media technology develops.  The parties' dispute over whether social media accounts are property of a bankruptcy estate appears to be a matter of first impression in this Circuit.

- The Debtors' evidence is inadmissible and suffers from other flaws.  The Motion [ECF No. 84], as well as the Debtors' summary judgment motion [ECF No. 20], are each supported by a declaration of the Chief Transformation Officer of the Debtors ("CTO"), John DiDonato ("Mr. DiDonato").  Mr. DiDonato was appointed as the CTO on September 6, 2022, or less than one year ago.[1]  Mr. DiDonato appears to have little or no personal knowledge of the facts at issue in this adversary proceeding, which involve social media accounts that are over one decade old.  Rather, his declarations are couched in terms that include not only his personal knowledge, but "discussions with members of the Debtors' management, the Chief Transformation's Officer's teams, the Debtors' other advisors," and so forth.  *See, e.g.*, ECF No. 85, ¶ 3 (declaration of Mr. DiDonato in support of the Motion).  The DiDonato declarations do not explain how Mr. DiDonato acquired his personal knowledge of pertinent facts, or segregate this personal knowledge from the hearsay statements of third parties.  The Debtors also do not explain why these hearsay statements are admissible.

- Absent the inadmissible testimony of Mr. DiDonato, the Debtors do not provide any statements or other evidence from company employees.

- At this stage of the proceeding (i.e. prior to formal discovery being obtained), the Owocs' evidence is based on their testimony and personal knowledge.  *Contra* Mr. DiDonato, who has been an officer of the Debtors for less than one year, Mr. Owoc is the founder and sole owner of the Debtors, and served as the Chief Executive Officer and Chief Science Officer of Vital Pharmaceuticals, Inc. ("VPX") for over twenty-nine years.  *See* J. Owoc. Decl. ¶¶ 1–2.[2]  Mrs. Owoc also worked in various roles in the Debtors' marketing department in 2010 and served as the Senior Vice President of Marketing for VPX.  M. Owoc. Decl. ¶¶ 1–2.

- The Owocs have testified that the social media accounts at issue in this adversary proceeding (together, the "Accounts") were created as personal, individual accounts and were segregated from the Debtors' remaining social media accounts.  J. Owoc Decl. ¶ 9; M. Owoc Decl. ¶ 8.  There was never a prepetition suggestion that the Accounts belonged to the Debtors.  J. Owoc Decl. ¶ 10; M. Owoc Decl. ¶ 9.  To the contrary, the Owocs maintained exclusive possession, custody and control of the

---

[1]  *See* ECF No. 26 in Case No. 22-17842-PDR (declaration in support of first day pleadings).

[2]  "J. Owoc. Decl." refers to the declaration of Mr. Owoc being filed with the Court at ECF No. 41.  "M. Owoc Decl." refers to the declaration of Mrs. Owoc filed at ECF No. 42.  For purposes of brevity and convenience, the declarations of the Owocs are incorporated herein by reference.

{2467/000/00556114}

Accounts, and the Accounts were understood to be exclusively their social media accounts and personal property. J. Owoc Decl. ¶¶ 11–19; M. Owoc Decl. ¶¶ 10–19. The Owocs exercised, full, complete and unilateral discretion as to the content that would be posted on the Accounts, and the majority of posts are of a personal nature, designed to complement and enhance the Jack Owoc persona. J. Owoc Decl. ¶¶ 21–36; M. Owoc Decl. ¶¶ 21–28. Examples of personal posts include pictures of the Owoc family at home, at church, and on vacations, the births of their children, and comments by Mr. Owoc about being a leader and husband. *Id.*

- The Debtors maintain over 20 Instagram accounts, 8 TikTok accounts, 5 Twitter accounts and over 19 Facebook accounts, separate and apart from the Accounts (together, the "Company Accounts"). J. Owoc Decl. ¶ 20; M. Owoc Decl. ¶ 20. *Contra* the Accounts, the Debtors held possession of the usernames and passwords of the Company Accounts prepetition. *Id.*

- The Company Account @bangenergy on Instagram has some 2.2 million followers, as opposed to the Account @bangenergyceo on Instagram having some 1 million followers. *Id.* The Debtors are thus not reliant on the Accounts to market and sell their products.

- The Debtors have failed to address the Owocs' affirmative defenses. These defenses include: (1) the failure to state a claim by not specifying what specific Debtor alleges ownership of what account, (2) waiver, estoppel, and ratification, and (3) laches and a statute of limitations bars, since the Debtors never asserted ownership claims to the Accounts for years prior to the petition date. *See generally* ECF No. 52 (Owocs' answer).

Put otherwise, this adversary proceeding involves novel legal issues applied to developing technology. The parties dispute to what extent this Court should adopt the *CTLI* opinion and what legal standard should be applied to social media account ownership disputes. Moreover, the factual issues involve the ownership of social media accounts spanning over a decade prepetition. The evidence supporting the Debtors' claims derives from Mr. DiDonato, an individual retained less than one year ago by the Debtors and whose declarations consistently rely on anonymous hearsay. In contrast, the Debtors' evidence to date is based on the personal knowledge of the Owocs, each of whom served as an officer of the Debtors throughout the entire time period at issue. The parties dispute numerous facts, including the Owocs' control over the Accounts, interpretations of content posted to the Accounts, and the use of the Accounts (or lack thereof) in

{2467/000/00556114}

the Debtors' business.  The Debtors have also not addressed the substantial affirmative defenses raised in the Owocs' answer.

These dynamics illustrate that the Debtors have fallen short of showing the "substantial likelihood of success on the merits" that is required for a preliminary injunction.

### B. The Debtors Will Not Suffer Irreparable Harm Absent an Injunction.

The second prerequisite for a preliminary injunction is a substantial threat that the movant will suffer irreparable injury.  "A showing of irreparable harm is the *sine qua non* of injunctive relief."  *Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted).  "The injury must be neither remote nor speculative, but actual and imminent." *Id.*  As the *Northeastern Florida* Court elaborates:

> An injury is "irreparable" only if it cannot be undone through monetary remedies. The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

896 F.2d at 1285 (quotation omitted) (emphasis in original).

The Debtors allege that they have satisfied this prerequisite because "they are seeking to solicit qualified, binding bids and consummate a sale," and it is thus "imperative that [they] secure all of their assets as well as continue their normal operations, including marketing efforts, at this time." *See* Mot. ¶ 43.

This argument runs into an obvious problem, however.  By prior order the Court has extended the temporary restraining order restricting the use of the Accounts through May 29, 2023 (the "TRO").  ECF No. 81.  This timeframe encompasses substantially all of the events relating to

the sale of the Debtors' assets. Specifically, per the *Notice of Certain Sale-Related Deadlines* filed by the Debtors in the main bankruptcy case (the "Notice"), the deadline to submit bids for the sale was May 22, 2023. The auction among competing bidders occurs on May 25, 2023, and the hearing to approve the sale will occur on June 7, 2023, or a date otherwise determined by the Court. *See generally* ECF No. 1283 in Case No. 22-17842-PDR. Put another way, by the time the TRO expires, the Debtors will already have conducted an auction and possess one or more binding offers for their assets, subject only to a final sale hearing.

There is absolutely no basis to enter a preliminary injunction for the duration of this adversary proceeding when the potential harm alleged by the Debtors, a threat to their sale process, has either been rendered moot already by the expiration of the bid and auction deadlines, or will be rendered moot by the sale hearing. Absent the *sine qua non* of injunctive relief—the threat of an actual, imminent and irreparable, harm—the Debtors are not entitled to the extraordinary remedies of Rule 65(a), and the Court should deny the Motion.

C. **The Balance of Harms Weighs in Favor of the Owocs.**

The third prerequisite for an injunction is that the threatened injury to the Debtors outweighs that to the Owocs. The Debtors again rely on their pending sale process to allege harm, and argue that the sale will be damaged absent an injunction. *See* Mot. ¶ 46. By contrast, the Debtors contend that any harm to the Owocs will be "minimal or nonexistent and reversable." *See id.* at ¶ 47.

However, these arguments run aground for the same reasons as the Debtors' claim to irreparable harm: the sale process is being concluded within the timeframe of the existing TRO. As of this filing, the deadline to submit bids has expired. An auction, if necessary, will occur on the date of the hearing on the Motion, May 25, 2023. Following the auction, the Debtor will

possess enforceable, executed offers for its assets, subject only to Court approval at a subsequent sale hearing. Per the Notice, all of the events will occur prior to May 29, 2023, when the TRO expires. To the extent the Owocs' control of the Accounts constitutes a threat to the Debtors in the first instance—which the Owocs dispute—that threat has been alleviated by the TRO. Any harm posed to the Debtors should an injunction not be entered is illusory.

By contrast, the Owocs will be substantially prejudiced by an injunction. Social media accounts require regular activity to maintain and engage followers. The Accounts have been largely frozen since the outset of this proceeding in mid-March 2023, and an injunction will further freeze the Accounts for months longer. During this time the Accounts will lose followers and see their influence wane as the Owocs are unable to post content. As the Accounts have consistently been used to create and enhance the Jack Owoc persona, the potential damage to Mr. Owoc's brand itself, is real and substantial. *See generally* J. Owoc. Decl. ¶¶ 7–36. The Owocs are also being prejudiced on a personal level, by losing access to social media accounts in which births, parties, anniversaries, and numerous other life milestones are stored.

The balance of harms weighs in favor of the Owocs, and the Debtors have thus failed to meet the third prerequisite for injunctive relief.

### D. The Public Interest Favors the Owocs.

The final prerequisite requires the Debtors to demonstrate that the issuance of an injunction will not disserve the public interest. In support of this factor the Debtors allege only that the public interest in this context "means the promoting of a successful reorganization." *See* Mot. 48 (quoting *In re Am. Film Techs, Inc.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994)). Per the Debtors, an injunction thus supports the public interest in that it furthers their reorganization efforts. *See id.*

As a threshold matter, however, the Debtors are not pursuing a reorganization at all. As

the Motion itself states, "the Debtors are pursuing a successful sale of their assets for the benefit of their estates," i.e. a liquidation. *See* Mot. ¶ 48. *Am. Film Techs, Inc.*, which involved a bankruptcy court enjoining litigation against a debtor's officers and directors in order to "promote the chances for a successful reorganization," is thus inapplicable.

Setting the Debtors' lack of reorganization prospects to one side, the proposed injunction runs counter to the public interest to any extent it infringes upon the Owocs' free speech by limiting access to their social media accounts. For example, in *JLM Couture, Inc.*, the plaintiff sought injunctive relief *inter alia* prohibiting the defendant from continuing a "social media bullying campaign." *JLM Couture, Inc. v. Gutman*, 2021 WL 827749, at *19 (Bankr. S.D.N.Y. Mar. 4, 2021), *aff'd in part, vacated in part and remanded*, 24 F.4th 785 (2d Cir. 2022). The district court concluded that this amounted to a request to restrict future speech, and there was "a heavy presumption against its constitutional validity." *JLM*, 2021 WL 827749, at *19 (quotation and citations omitted). Based on these and other considerations, the court denied the injunction request insofar as it sought an order prohibiting the defendant from her continuing her "social media bullying campaign." *JLM*, 2021 WL 827749, at *19–20. The Owocs submit that the same considerations apply here, and the Court should deny the injunction to any extent it impinges on their rights to free speech by using the Accounts.

[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Owocs respectfully request that the Court: (1) deny the Motion, and (2) grant such other relief as the Court deems appropriate.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by Notice of Electronic Filing via CM/ECF to those parties registered to receive such notice in this case on May 23, 2023.

> **SHRAIBERG PAGE P.A.**
> Attorneys for the Owocs
> 2385 NW Executive Center Drive, Suite 300
> Boca Raton, Florida 33431
> Telephone: 561-443-0800
> Facsimile: 561-998-0047
> Email: bss@slp.law
> Email: pdorsey@slp.law
>
> By: /s/ Patrick Dorsey
>     Bradley Shraiberg
>     Fla Bar No. 121622
>     Patrick Dorsey
>     Fla. Bar No. 0085841