UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 23-01051-PDR |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs respectfully submit this reply (this "Reply") in support of their *Motion for Preliminary Injunction* [ECF No. 84] (the "Motion")[2] and in response to Defendants' *Response in Opposition to Motion for Preliminary Injunction* [ECF No. 110] (the "Response") and respectfully state as follows:

1. The Debtors' entitlement to an injunction is clear. The law is uniform. The relevant facts are undisputed. Defendants' Response is noise.

---

[1] The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc. The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not otherwise defined herein have the meaning given them in the Motion.

12170411-1

**I.   LIKELIHOOD OF SUCCESS ON THE MERITS**

2.   The question of ownership of social media accounts is not "matter of first impression." Response at 3-4. Several courts have addressed the question; all have assessed the same basic factors; and all have concluded the company rather than the estranged employee owned the accounts. *JLM Couture, Inc. v. Gutman*, No. 20 CV 10575-LTS-SLC, 2023 WL 2503432 (S.D.N.Y. Mar. 14, 2023); *Int'l Bhd. of Teamsters Loc. 651 v. Philbeck*, 464 F. Supp. 3d 863 (E.D. Ky. 2020); *In re CTLI, LLC*, 528 B.R. 359 (Bankr. S.D. Tex. 2015).

3.   The context also is not novel: The *JLM* court granted a preliminary injunction to protect the accounts and the business. *JLM*, 2023 WL 2503432 at *18. While this Court is free to depart from non-binding precedent, the precedent is substantial, and only the Debtors have applied it. Compare *Motion for Summary Judgment* [ECF No. 20] (applying case law), with *Response to Motion for Summary Judgment* [ECF No. 40] (inventing new standard).

4.   The facts relevant to the prevailing analysis are not open to dispute:

| Manner in which the account is held out to the public | <ul><li>The Debtors "leading product is Bang energy drink."[3]</li><li>The Debtors' website is "bangenergy.com."</li><li>The Debtors maintain an Instagram account with the handle "@bangenergy" that has approximately 2.2 million followers.[4]</li><li>The CEO Account handles employ the name "Bang Energy."</li><li>The CEO Accounts routinely link to other Debtor media;[5] Defendants do not contend that the accounts have ever linked to any media personal to Jack Owoc.</li></ul> |
|---|---|

---

[3] Order Granting Plaintiffs' Emergency Motion for Contempt [ECF No. 61] ("Contempt Order") at 2.

[4] Response at 5.

[5] *See, e.g.*, Declaration of John H. Owoc in Support of Response to Motion for Summary Judgment [ECF No. 41] ("J. Owoc Decl.") Exs. 1-3 (social media posts ubiquitously tagging to "@bangenergy" Instagram account); Ex. 1 at PDF page 36 (CEO Instagram Account linking to bangenergy.com); Ex. 1 at PDF page 88 (same); Ex. 2 at PDF page 103 (CEO TikTok Account description linking to bangenergy.com; Ex. 3 at PDF pages 180, 182, 189-90 (CEO Twitter Account reposting and linking to "@bangenergy" Instagram account).

2

| | |
|---|---|
| | • "The CEO Instagram Account . . . is displayed on the Bang energy drink label."[6] |
| Employee access to accounts in furtherance of business | • The Debtors "have employed a strong and consistent social media presence using the [CEO A]ccounts."[7]<br><br>• In sworn testimony, Mr. Owoc stated that "[s]omebody at Vital" had created the Instagram and TikTok CEO Accounts.[8]<br><br>• Mr. Owoc further testified that "someone from the marketing department" was responsible for videos posted to the CEO Instagram and TikTok Accounts.[9]<br><br>• Mrs. Owoc testified that Vital "operate[s]" the CEO Instagram Account.[10]<br><br>• In his present declaration, Mr. Owoc admits that "employees of the Debtors . . . had access" because Mr. Owoc "as owner of the Debtors" gave them access.<br><br>• Mr. Owoc further admits that "[t]he marketing department of the Debtors created videos that were posted to [the CEO TikTok Account]." |
| Purpose for which the account has been utilized | • Defendants have submitted a selection of posts from the CEO Accounts; most of these posts are overtly promotional.[11] |

5. These incontestable facts are more than sufficient to demonstrate Plaintiffs' likelihood of success on the merits, pending a final determination.

**II.  BALANCING OF HARMS**

6. Defendants assert that the Debtors are concerned only with establishing ownership of the accounts in order to garner bids and conclude a sale process. Response at 6. This is simply wrong; entry of an injunction cannot establish ownership. The irreparable harm that will arise if Defendants are given control of the CEO Accounts is that Defendants will continue to use the accounts to defame the Debtors, their advisors, and the entire bankruptcy process. Mot. ¶¶ 42-44.

---

[6] Contempt Order at 3.

[7] *Id.* at 2-3.

[8] Declaration of John C. DiDonato in Support of Motion for Summary Judgment [ECF No. 85] Ex. C.

[9] *Id.*

[10] *Id.* Ex. D.

[11] J. Owoc Decl. Exs. 1-3.

3

12170411-1

If this Court later determines that the Debtors own the CEO Accounts, then Defendants' interim abuse of the Debtors' property cannot be remedied. It will be impossible to undo that abuse, and its consequences will endure—including unwarranted damage to the business and the accounts, reputational harm, possible impacts on the sale process, and mistrust of the bankruptcy process, all nominally caused by the Debtors themselves on their own accounts. The fundamental purpose of a preliminary injunction is "to prevent the judicial process from being rendered futile by defendant's action." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). That futility is exactly the harm the Debtors will endure in the absence of a preliminary injunction.

7. Again the evidence here is not open to dispute. Mr. Owoc has demonstrated that he will use account access to post defamatory content, and that he will do so in the face of contrary court orders:

- On March 16, Defendants agreed in the Initial TRO Order that they would post no content; and that they would post Debtor content within 9 hours of a request;

- On April 6, Defendants requested uploading of a promotional post;

- Mr. Owoc failed to comply for four days;

- Once he had posted, Mr. Owoc "ranted about the post in a series of comments—from the CEO Instagram Account—in which he claimed that
    - his social media account had been hijacked;
    - he had been 'forced by threat' to post the requested content;
    - being forced to post the content was a 'major fraud on the public'; and
    - various professionals involved in this chapter 11 case were committing racketeering violations;"[12]

- That "rant ends with Mr. Owoc insisting the 'FLORIDA BANKRUPTCY COMMUNITY MUST BE BROUGHT TO JUSTICE!'"[13]

---

[12] Contempt Order at 4-5.

[13] *Id.* at 5.

- "In response to a comment by a social media user, Mr. Owoc commented—again from the CEO Instagram Account—that '[t]he bankruptcy community corruption here in South Florida is real.'"[14]

- When the Debtors subsequently moved for contempt, Mr. Owoc made the implausible argument that "commenting" was different from "posting";

- While the Court took the matter under advisement, the Court admonished the parties "[Y]ou will all take your risks associated with how you act under that stipulation, and it is a risk for continuing to comment, and continuing to post whatever language you wish to use;"[15]

- On April 13, 2023, after posting content requested by the Debtors, Mr. Owoc commented on the post, stating in relevant part:

  $3.2 BILLION SCAM . . . .

  I believe it is of it most important [sic] that the FBI, DOJ, district attorney, states attorney, and Chief Justice and other relevant federal and state organizations conduct an investigation into [Debtors' counsel] and this multi-billion dollar fraud. . . .

  [Debtors' counsel] is also trying to violate my first amendment right and prevent me from commenting also. . . .

  The post is a fraud on the public. I was forced to make a post against my will. This is the third post that has been used to defraud the public and make the public think that I willingly created and posted this content. If you now any State or Federal organization contacts who can investigate this $3.2 billion ongoing racket of organized crime (RICO), please alert the authorities now![16]

- On April 25, 2023, the Court held Mr. Owoc in contempt for violating the Initial TRO Order.[17]

- In so holding, the Court stated in part as follows:

  Here, there is no fair ground of doubt as to the wrongfulness of Mr. Owocs' conduct. The Plaintiffs sought a temporary injunction that

---

[14] *Id*.

[15] April 12, 2023, Hr'g Tr. at 85:3-85:6.

[16] Debtors' Supplemental Memorandum in. Support of Their Emergency Mot. for an Order Holding Defendants in Contempt of Court [ECF No. 38] Ex. 4.

[17] Contempt order at 15 ¶ 1.

5

would prohibit the Owocs from using—and require them to turn over control of—the CEO Accounts because the Plaintiffs were concerned the Owocs would post content harmful to the Plaintiffs' business. To avoid a hearing on the request for a temporary injunction, the Owocs stipulated to the March 16 Order, which prohibited them from "posting any content or making any posts of any kind to or from" the CEO Accounts. As explained above, under their interpretation of the March 16 Order, the Owocs could say harmful things about the Plaintiffs' business so long as the harmful things were contained in a "comment"—not a "post." Suffice it to say that interpretation of the March 16 Order is objectively unreasonable and there can be no fair ground of doubt as to the wrongfulness of Mr. Owoc's conduct.[18]

8. In contrast, Defendants offer no evidence of harm that will accrue to them if they are prevented from accessing the CEO Accounts pending conclusion of this Adversary Proceeding. *See* Response at 8. There is no evidence that pausing posting of content will cause the accounts to lose followers; nor is there any evidence other than Mr. Owoc's *ipse dixit* that the accounts have ever been used to "create and enhance" a "Jack Owoc persona;" nor finally is there any evidence that being unable to post "life milestones" on a particular social media account is meaningfully harmful, or that any such "life milestones" will occur during the pendency of the preliminary injunction. Defendants are free at all times to access or create personal social media accounts to "store" these milestones.

9. The Debtors have requested only that this Court extend the existing TRO Order, which will continue the status quo that *no party* may post to the CEO Accounts. While that result may impair the Debtors marketing efforts, that result will at least prevent irreparable harm caused by Mr. Owoc's defamatory postings. The proposed order is reattached hereto for this Court's reference.

---

[18] *Id.* at 14.

**CONCLUSION**

10. For the foregoing reasons, the Debtors respectfully request the Court enter the proposed order attached hereto as **Exhibit A**.

| | |
|---|---|
| Dated:  May 24, 2023<br>  Miami, Florida | Respectfully submitted,<br><br>*/s/ Jordi Guso* |

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
  hugh.murtagh@lw.com
  tj.li@lw.com
  brian.rosen@lw.com
  jon.weichselbaum@lw.com

  - and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
Email:  kburns@bergersingerman.com

*Co-Counsel for the Debtors*

12170411-1


**Exhibit A**

**Order**

12170411-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842-PDR |
| Debtors. _____/ | |
| VITAL PHARMACEUTICALS, INC., et al., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 23-01051-PDR |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. _____/ | |

## ORDER GRANTING DEBTORS' MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** was before this Court on May 25, 2023, at 2:30 p.m. in Fort Lauderdale, Florida, upon the *Debtors' Motion for Preliminary Injunction and Incorporated Memorandum of*

12170443-1

*Law* [ECF No. 84] (the "Motion")[1] filed by the debtors and debtors-in-possession (the "Debtors") in the above-captioned adversary proceeding.  The Motion seeks entry of an order (a) prohibiting Defendants John H. Owoc and Megan E. Owoc (together, "Defendants") from accessing, using, deleting, or modifying in any way the CEO Accounts or content posted thereon; (b) compelling Defendants to transfer exclusive control of the CEO Accounts to the Debtors; (c) ordering that the CEO Accounts shall remain in the exclusive control of the Debtors pending full and final adjudication of the Adversary Proceeding; and (d) granting related relief.  The Court finds and concludes that:

    A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

    B.    Notice of the Motion was sufficient under the circumstances.

    C.    The legal and factual bases set forth in the Motion and the accompanying declarations and related papers and at the hearing establish just cause for the relief granted herein.

Accordingly, it is

**ORDERED** as follows:

    1.    The Motion is GRANTED as to the request for a preliminary injunction under sections 105(a) and 542 of the Bankruptcy Code, Rule 65 of the Federal Rules of Civil Procedure, and Rule 7065 of the Federal Rules of Bankruptcy Procedure.

    2.    Pending a hearing and determination on the Debtors' claims set forth in the Complaint, Defendants are prohibited from accessing, using, deleting, or otherwise modifying the CEO Accounts, or any content posted thereon.

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

3. The temporary restraining order entered in the *Order Approving Stipulation Regarding Debtors' Motion for Temporary Restraining Order* [ECF No. 10] and as extended and modified by the *Order Denying Emergency Motion for Relief from Unauthorized Stipulation and Extending Temporary Restraining Order* [ECF No. 81] is hereby converted into a Preliminary Injunction which shall remain in effect pending final judgment in this Adversary Proceeding or further action by this Court.

4. Nothing in this Order shall prevent the Debtors from seeking further relief with respect to the CEO Accounts or any other accounts used in the ordinary course of the Debtors' business operations.

5. Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedures, the Debtors are relieved from posting any security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

6. The Debtors shall serve a copy of this Order on counsel for Defendants within (1) business day of the entry of this Order.

7. The Court retains jurisdiction over this Order and the relief granted herein.

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3

12170443-1