UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |
| VITAL PHARMACEUTICALS, INC., *et al.* | |
| Plaintiffs, | |
| v. | |
| JOHN H. OWOC and MEGAN E. OWOC, | Adv. Pro. No. 23-01051 (PDR) |
| Defendants. | |
| _____/ | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND DEMAND FOR JURY TRIAL**

Pursuant to Rule 5011-1 of the Local Rules of the Bankruptcy Court for the Southern District of Florida,[2] Debtor Vital Pharmaceuticals, Inc., and its affiliated debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession (the "Debtors," the "Plaintiffs," or the "Company"), and as plaintiffs in the above-captioned adversary proceeding (this "Adversary Proceeding"), hereby oppose the *Motion to Withdraw Reference,*

---

[1] The Debtors include: (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc. The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] In accordance with Local Rule 5011-1, the Debtors are filing this response with the Bankruptcy Court with the understanding that it will be transmitted to and considered by the District Court (hereinafter, the "Court").

12177944-1

*Designation of Record and Demand for Jury Trial* [Adv. Proc. Docket No. 88] (the "Motion") filed by Jack Owoc and Megan Owoc (collectively, "Defendants"). In support of this response in opposition, Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1. Defendants' Motion fails to establish grounds for withdrawal of the reference of this Adversary Proceeding. With respect to mandatory withdrawal, Plaintiffs' claims do not implicate copyright law at all and can be resolved by the straightforward application of bankruptcy law and applicable state law. With respect to permissive withdrawal, withdrawing the reference of this core Adversary proceeding would cause unnecessary uncertainty and delays, affect the uniformity of bankruptcy administration, encourage the Defendants' forum shopping, and lead to an inefficient use of the parties' resources. Finally, Defendants' argument that they are entitled to a trial by jury fairs no better: Plaintiffs seek solely equitable relief in this Adversary Proceeding and there is no right to a jury trial in equitable proceedings. Thus, the Motion should be denied.

## BACKGROUND

2. On March 14, 2023, Plaintiffs filed an adversary complaint [Adv. Proc. Docket No. 1] (the "Complaint") seeking: (a) a declaratory judgment that the Debtors are entitled to control over the CEO Accounts[3] because they constitute estate property under section 541(a) of the Bankruptcy Code and (b) turnover of access to the CEO Accounts to the Debtors under section 542. Subsequently, on March 31, 2023, Plaintiffs moved for summary judgment [Adv. Pro. Docket No. 20] (the "Summary Judgment Motion") on the causes of action asserted in the

---

[3] The "CEO Accounts" are, collectively, the Instagram and TikTok account each bearing the handle @bangenergy.ceo, and a Twitter account bearing the handle @BangEnergyCEO.

Complaint. Neither the Complaint nor the Summary Judgment Motion relies on or once mentions federal copyright law or the Copyright Act of 1976 (the "Copyright Act"). *See generally* Complaint, Summary Judgment Motion.

3. Defendants responded [Adv. Proc. Docket No. 40] (the "Response") to the Summary Judgment Motion on April 16, 2023. On April 21, 2023, Plaintiffs replied to the Response [Adv. Proc. Docket No. 50] (the "Reply") and Defendants answered the Complaint [Adv. Proc. Docket No. 52] (the "Answer"). Neither the Response nor the Answer nor the Reply ever raised any issues of nonbankruptcy federal law, including copyright law, or once mentions the Copyright Act. *See generally* Response, Answer, and Reply.

4. In addition, numerous other motions have been litigated in this adversary, including, the *Emergency Motion for Temporary Restraining Order and Incorporated Memorandum of Law* [Adv. Proc. Docket No. 2], *Emergency Motion for an Order (I) Holding Defendants in Contempt of Court, (II) Imposing Sanctions, and (III) Setting Hearing on Debtors' Motion for Temporary Restraining Order* [Adv. Proc. Docket No. 28], and most recently, *Motion for Preliminary Injunction and Incorporated Memorandum of Law* [Adv. Proc. Docket No. 84] (the "Preliminary Injunction Motion"). Once again, none of those motions or the related briefing references, or even mentions, the Copyright Act or federal copyright law.

5. Indeed, even after the filing of the Preliminary Injunction Motion—where Defendants ostensibly assert the Copyright Act, copyright laws, or other non-bankruptcy federal laws are implicated—Defendants made no mention of, nor relied on, the Copyright Act, federal copyright law, or federal law in their briefing. *See Response in Opposition to Motion for Preliminary Injunction and Incorporated Memorandum of Law* [Adv. Proc. Docket No. 110].

6.	The Court has held hearings in this Adversary Proceeding on March 23 [Adv. Proc. Docket No. 18], March 28 [Adv. Proc. Docket No. 13], April 12 [Adv. Proc. Docket No. 28], April 25 [Adv. Proc. Docket No. 20], May 1 [Adv. Proc. Docket No. 75], May 11 [Adv. Proc. Docket No. 77], May 17, 2023 [Adv. Pro. Docket No. 4], and May 25, 2023 [Adv. Proc. Docket No. 84].  None of Plaintiffs, Defendants, or the Bankruptcy Court discussed or considered the Copyright Act at any such hearing.[4]  Put simply, no party to the instant proceeding has ever raised—and the Bankruptcy Court has never considered—any issue of fact or law relating to the Copyright Act.

7.	Again, even at substantive hearings before the Bankruptcy Court *after* the Motion was filed, including the hours-long hearing on the Preliminary Injunction Motion on May 25, 2023, Defendants have not once brought up federal copyright law, the Copyright Act, or other nonbankruptcy federal law.

8.	Nevertheless, on May 15, 2023, while the Bankruptcy Court's decision on the Motion for Summary Judgment was pending, Defendants filed the Motion, asserting for the very first time that the Copyright Act may be at issue in this proceeding.  Mot. ¶¶ 6–7.

---

[4]	The March hearings largely concerned the fact that Defendants' former attorney, Justin Luna, withdrew as counsel in the Adversary Proceeding.  *See, e.g.*, Adv. Proc. Docket No. 18 at 4; Adv. Proc. Docket No. 13 at 13.  On April 12, the Bankruptcy Court heard arguments on Plaintiffs' contempt motion concerning Defendant Owoc's continued use of the CEO Accounts and considered whether social media content included "comments" on "posts."  Adv. Proc. Docket No. 28 at 66.  On May 11, the Bankruptcy Court ruled that Plaintiffs could post a corrective statement on the CEO Accounts as required by the district court for the Central District of California without running afoul of any Bankruptcy Court orders.  Adv. Proc. Docket No. 77 at 59.

## LEGAL STANDARD

9. Pursuant to 28 U.S.C. § 157(a), district courts may refer any or all cases under title 11 to the bankruptcy judges of their district. However, title 28 also permits the district court to withdraw that reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11...and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) ("Section 157(d)").

10. Section 157(d) thus provides: (a) for mandatory withdrawal of the reference when resolution of an adversary proceeding "requires consideration of both title 11 . . . and other laws of the United States regulating organizations or activities affecting instate commerce," and (b) permissive withdrawal "for cause." *See* 28 U.S.C. § 157(d); *In Hvide Marine, Inc.*, 248 B.R. 841, 843 (M.D. Fla. 2000) (citation omitted).

11. For the reasons that follow, Defendants' arguments for withdrawal are meritless, and the Court should deny the Motion.

## ARGUMENT

**I. MANDATORY WITHDRAWAL IS NOT REQUIRED BECAUSE COPYRIGHT LAW IS IRRELEVANT TO THE ADVERSARY PROCEEDING**

**A. Defendants Do Not Establish That Resolution of This Proceeding Requires Analyzing Any Significant Open and Unresolved Issue of Copyright Law**

12. The Motion should be denied because Defendants do not establish, as they must, that resolving this proceeding "***will necessitate significant interpretation*** of [nonbankruptcy federal law], rather than a mere application." *Stower v. Cornide*, No. 23-CV-20143, 2023 WL 1100454, at *4 (S.D. Fla. Jan. 30, 2023) (rejecting withdrawal request) (emphasis added); *In re*

5

*Tousa, Inc.*, *No*. 1060206-MC, 2010 WL 1644456, at *2–3 (S.D. Fla. Apr. 19, 2010) (noting that the majority of courts require more than merely pleading nonbankruptcy related claims); Withdrawal is mandatory only "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws, or when there is a conflict between the bankruptcy and other federal law." *BankUnited Fin. Corp. v. F.D.I.C.*, 436 B.R. 216, 220 (S.D. Fla. 2010). Defendants do not carry this burden.

13. Instead, in conclusory fashion, Defendants claim that rendering a decision here "*likely*" requires consideration of non-bankruptcy federal law because certain content on the CEO Accounts "*may* . . . implicate copyright laws," including the Copyright Act. Mot. ¶ 6 (emphasis added).[5] But "Defendant[s] have cited no example where a court found that withdrawal was required because the Copyright Act might be implicated." *In re Townhomes at Hill Top, LLC*, No. 08–CV–00514, 2008 WL 2078109, at *3 (D. Colo. May 14, 2008). Nor could they. *See id.* (collecting cases where proceedings implicating the Copyright Act did not warrant withdrawal).

14. Moreover, Defendants do not allege they hold copyrights to any content on the CEO Accounts.[6] Nor do they raise any copyright-related claims. Beyond a cursory reference to

---

[5] Using a "*see, e.g.,*" signal, the Motion cites a single federal copyright statute (17 U.S.C. § 102), provides the barebone parenthetical "(subject matter of copyright protection laws)," and then elaborates no further. Mot. ¶ 6.

[6] In their Answer, Defendants never argue that the content of the CEO Account is an "original work[] of authorship" under 17 U.S.C. § 102. Instead, Defendants argue that the value of their labor in creating and maintaining the CEO Accounts and the value derived from Defendant Owoc's "celebrity persona" and "brand" should offset Plaintiffs' claims. *See* Defs' Ans. at 8; Defs' Resp. ¶¶ 1–10. The concepts of "brand" and "persona" do not constitute a copyrightable work under Section 102. *See*, *e.g.*, *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (Under Section 102, "[t]here is no 'work of authorship' at issue in [a] persona [, which] is not authored and it is not fixed.); *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) ("A persona does not fall within the subject matter of copyright—it does not consist of "a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution."); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003–04 (9th Cir. 2001) (quoting 1 Nimmer on Copyright § 1.01[B][1][c] at 1–23 (1999), which states that "the 'work' that is the subject matter of the right of publicity is the persona, *i.e.*, the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a 'writing' of an 'author' within the meaning of the copyright clause of the Constitution.").

6

17 U.S.C. § 102 ("Section 102"), Defendants do not identify a single provision of the Copyright Act that might be implicated by this proceeding. Mot. ¶ 6. Determining whether "work is within the scope of [Section 102] . . . does not require signification interpretation of the [Copyright Act]" such that it would require mandatory withdrawal. *Townhomes*, 2008 WL 2078109, at *3. Even so, Defendants do not (as they must) explain why Section 102 implicates novel legal questions here. Blanket assertions that a federal statute may interact with the Court's equitable powers cannot sustain the Motion. *See, e.g., Sheet Metal Workers v. Sierra Constr.*, No. 02 C 50098, 2002 WL 575701, at *1–2 (N.D. Ill. Apr. 12, 2002).

15. Nor do Defendants identify a question of law with respect to the Copyright Act that justifies mandatory withdrawal—as they must. *See Pension Benefit Guar. Corp. v. Smith Corona Corp. (In re Smith Corona Corp.)*, 205 B.R. 712, 715 (D. Del. 1996) ("To find that the straightforward application of such a well-developed body of federal law demands removal of the reference would, in essence, provide the very 'escape hatch . . . to the district court' that Congress expressly intended to avoid in crafting the mandatory withdrawal provision.").

16. Moreover, even if the Defendants could tie copyright law in any way to this Adversary Proceeding (and they cannot), resolution of this Adversary Proceeding would require nothing more than "the application of existing [copyright] law to new facts." *In re TOUSA, Inc.*, No. 08-10928-BKC-JKO, 2010 WL 11647659, at *3 (Bankr. S.D. Fla. Dec. 6, 2010). Bankruptcy courts regularly adjudicate copyright claims. *See*, *e.g.*, *In re Nortel Networks Inc.*, 539 B.R. 704, 710 (D. Del 2015) ("[W]hile this Court has more experience overseeing copyright litigation than does the Bankruptcy Court, this does not detract from the Bankruptcy Court's proficiency in helping this Court effectively adjudicate such cases."). Thus, no withdrawal of the reference is necessary as the Bankruptcy Court could summarily adjudicate any copyright

claim. *See Global Aviation*, 496 B.R. at 287 (bankruptcy court could decide infringement and any benefit to alleged debtor-infringer); *see also Symantec Corp. v. Mann (In re Mann)*, 410 B.R. 43 (Bankr. C.D. Cal. 2009) (awarding damages after copyright trial); *Symantec Corp. v. Waszkiewicz (In re Waszkiewicz)*, Adv. Pro. No. 6:07-ap-169, 2009 WL 856344 (Bankr. M.D. Fla. Mar. 16, 2009) (determining infringement and damages calculation).

17. Simply stated, this proceeding does not require any consideration of a federal law affecting interstate commerce, let alone any substantial and material consideration of such a law. The Motion should be denied.

**B. Copyright Law Is Irrelevant to Whether the CEO Accounts Are Estate Property**

18. Plaintiffs seek (a) a declaration that Debtors are entitled to control the login credentials associated with the CEO Account, and (b) an order requiring Defendants to turn over the login credentials to the CEO Account to Debtors. Compl. ¶¶ 30–40.

19. Neither of these claims requires consideration of copyright law, as Debtors' ownership and right to possession and control of the CEO Accounts has no bearing on whether Defendants—or any other person—have a protectible copyright interest in any of the CEO Accounts' content. *See, e.g., Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *, 2*6 (S.D. Fla. Sept. 14, 2022) ("It is undisputed that [Sony] own[s] . . . copyrights for . . . copyrighted [content]" posted on the CEO Accounts, "which are designated as [Bang] business accounts."); *United States v. Smith*, 686 F.2d 234, 241 (5th Cir. 1982) ("[A] copyright . . . is an incorporeal, intangible right or privilege existing independent of both its physical manifestation and the very thing copyrighted."); *Wildlife Internationale, Inc. v. Clements*, 591 F. Supp. 1542, 1547 (S.D. Ohio 1984) ("It is axiomatic that ownership of a

8

12177944-1

copyright or rights thereunder is distinct from ownership of the material object in which the copyrighted work is embodied.").

20. The word "copyright" appears in Plaintiffs' relevant pleadings precisely one time. Summary Judgment Motion ¶ 11 (explaining that "[Debtors'] employee handbook specifies that 'all ideas . . . original works of authorship . . . and designs, whether or not subject to patent or copyright protection, made [or] conceived . . . by you . . . in connection with or relating to any work performed by you for the company . . . shall . . . belong[] to Bang Energy.").

21. Plaintiffs also cite one other federal law, 17 U.S.C. § 101 ("work made for hire" is "work made by an employee within the scope of his or her employment."), which is also addressed in *In re TLFO, LLC*, 572 B.R. 391, 436-38 ("In the case of a 'work made for hire,' the owner of the work is the entity for whom the work was prepared 'unless the parties have expressly agreed otherwise in a written instrument signed by them.'"). Summary Judgment Motion ¶ 33. As set forth in *TLFO*, Plaintiffs' mention of 17 U.S.C. § 101 does not merit withdrawal of the reference because "[t]he Supreme Court has held that to determine whether an individual was an employee, and whether he created a work within the scope of his employment under [17 U.S.C. § 101], courts . . . look to the *general common law of agency*." *Id.* at 436 (citing *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 740 (1989)) (emphasis added). Thus, Plaintiffs' mention of 17 U.S.C. § 101 does not raise a substantial question of federal law or implicate copyright law in any way because whether Defendants have any interest in the content on the CEO Accounts **whatsoever** is a matter of contract and agency law alone. *See also, e.g.*, *RTG LLC v. Fodera*, No. 5:19-CV-87-DAE, 2019 WL 5791459, at *6 (W.D. Tex. May 16, 2019) ("the Court finds the facts in this case to be more akin to ownership disputes pursuant to a written agreement, cited above, which have been found not to arise under the authorship provisions of

the Copyright Act because they do not require interpretation or construction of the Copyright Act.").[7]

### C. The Adversary Proceeding Can Be Resolved By Straightforward Application of Bankruptcy Law and Applicable State Law

22. Section 542(a) of the Bankruptcy Code "authorizes a bankruptcy court to order turnover of the debtor's property held by others." *In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir. 1993). Accordingly, if Plaintiffs prove by a preponderance of evidence that the Accounts "constitute[] property of the estate and that [Defendants] are in possession of that property," then the Accounts must be turned over. *In re Rogove*, 443 B.R. 182, 186 (Bankr. S.D. Fla. 2010); *see also In re Chesley*, 550 B.R. 903, 910 (Bankr. M.D. Fla. 2016) (granting trustee's motion for summary judgment in Section 542 turnover action). Property of the Debtors' estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As in other circuits, the Eleventh Circuit holds that the "scope of [section] 541(a)(1) is broad, and includes property of all types, tangible and intangible." *In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997).

23. The CEO Accounts are property of the Debtors' estate for the simple reason that they are associated with the Debtors' business and the use of the CEO Accounts "clearly to generate[s] revenues for the [Debtors]." Summary Judgment Motion ¶¶ 30–33 (quoting *In re CTLI, LLC,* 528 B.R. 359, 368 (Bankr. S.D. Tex. 2015)). The Court need not and should not delve into issues of copyright protection here. Plaintiffs seek only an order determining they are legally entitled to control of the CEO Account, and Defendants' inchoate assertions regarding content (which are unsupported and erroneous in any event) are not germane to that question.

---

[7] Defendants admit as much in their Response, where they only challenge Plaintiffs' authorities on agency and contract law grounds. *See* Defs' Resp. § I(A)–(B).

The CEO Accounts at issue here are property of Debtors' estates and not personal property of Defendants. Summary Judgment Motion ¶ 32. The Court can determine that the CEO Accounts are property of the Debtors' estate through a straightforward application of bankruptcy law and applicable state law. *See id.* Debtors' ownership of the CEO Accounts is not relevant to any copyright issues affecting the CEO Accounts, which allegedly contain various content that is subject to third-party copyright interests. *See, e.g., Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *2 (S.D. Fla. Sept. 14, 2022) (Sony suing VPX based on allegations Defendant Owoc posted content on the CEO Accounts in violation of Sony's copyrights). Indeed, as explained *supra* ¶ 19, whether or not Defendants have a copyright interest in any content on the CEO Accounts is likewise irrelevant.

24. Defendants should not be permitted to derail this Adversary Proceeding by threatening to sue later on an inchoate copyright theory lacking any cognizable basis—stated or unstated—in fact or law. If, in a future proceeding, Defendants wish to raise copyright claims regarding content on the CEO Account, they know how to do so.

## II.  PERMISSIVE WITHDRAWAL IS NOT APPROPRIATE

25. In the Eleventh Circuit, "[o]nce a bankruptcy court has assumed jurisdiction . . . a district court may withdraw reference only 'for cause shown.'" *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991) (citations omitted). It is clear from the relevant case law "that this is not an empty requirement." *Id.*; *see also In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000) (stating that "[a]lthough cause is not defined in the statute, this court has found that it is not an empty requirement"). Defendants bear the burden of showing that cause exists. *See In re Wi-Sky Inflight, Inc.*, 483 B.R. 788, 792 (N.D. Ga. 2012) (internal quotation marks and citation omitted). "The determination of whether to grant a motion for permissive withdrawal is within

11

the court's discretion." *Dunn, Tr. of Ests. of Pacifico Sur Grp., LLC v. Ricci*, No. 22-CV- 21928, 2022 WL 3154187, at *1 (S.D. Fla. Aug. 8, 2022).

26. Defendants fail to meet their burden. They state, in conclusory fashion, that there are "cutting-edge legal issues in this case, which implicate both federal bankruptcy and copyright law." Mot. ¶ 7. That does not suffice: whatever unspecified issues Defendants contend may be "cutting-edge," none could warrant permissive withdrawal here.

27. Factors courts look to in deciding whether permissive withdrawal is appropriate include: "(1) advancing uniformity in the administration of bankruptcy law; (2) prevention of forum shopping; (3) conservation of the parties' resources; and (4) facilitation of the bankruptcy process." *In re Tucker*, No. 11-33155-BKC-AJC, 2012 WL 4090677, at *4 (Bankr. S.D. Fla. Sept. 17, 2012). Additional factors include: (a) whether the claims are core or non-core; (b) efficiency of judicial resources; (c) whether a jury was demanded; and (d) preventing delay. *See id.*; *see also In re Simmons*, 200 F.3d at 741; *In re TOUSA, Inc.*, No. 08-10928-BKC-JKO, 2010 WL 11647659, at *3 (Bankr. S.D. Fla. Dec. 6, 2010). Each of these factors weighs heavily against permissive withdrawal.

28. <u>First</u>, withdrawing the reference *will* implicate the uniformity of bankruptcy administration as this Adversary Proceeding is undoubtedly a core proceeding "aris[ing] in a case under title 11." *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999). It is blackletter law that "actions seeking turnover of property of the estate" are core proceedings. *In re Berris*, No. 08-13940-AJC, 2009 WL 1107634, at *1 (Bankr. S.D. Fla. Apr. 21, 2009). Nowhere do Defendants dispute that turnover relief is available in this proceeding. *In re Ven-Mar Int'l, Inc.*, 166 B.R. 191, 192 (Bankr. S.D. Fla. 1994) ("If turnover is an available remedy for [an] action then there can be no dispute that [it] is a 'core' proceeding and [the Bankruptcy Court] has jurisdiction to

enter a final judgment."). To the contrary, Defendants presume the availability of turnover, arguing without merit that such relief is not warranted here. *See*, *e.g.*, Defs. Resp. 9–11 (arguing discovery is necessary given "the fact intensive inquiry the Court must make to determine ownership of the [CEO] Account[]"); Defs. Ans. ¶¶ 37–38 (admitting Plaintiffs made a demand for turnover, but denying the CEO Accounts are property of the Debtors' estate).

29. And Defendants do not assert that resolution of the Adversary Proceeding depends prominently—or even substantially—on issues of non-bankruptcy law, and therefore permissive withdrawal will not affect the uniformity of bankruptcy administration. Instead, Defendants apparently concede that the Adversary Proceeding raises "substantial and material bankruptcy law issues." *See* Defs. Ans. ¶¶ 4.[8] Clearly, then, withdrawing the reference *will* implicate the uniformity of bankruptcy administration.

30. <u>Second</u>, withdrawal of the reference here would encourage forum shopping. Defendants' conduct to date has demonstrated substantial mistrust of the bankruptcy process. *See Order Granting Plaintiffs' Emergency Motion for Contempt* [Adv. Proc. Docket No. 61] at 4-5. But Defendants offer no basis for that mistrust, nor does any exist. Granting withdrawal under such circumstances would encourage any litigant who is unhappy with bankruptcy-court outcomes to seek to remove core bankruptcy issues from the bankruptcy courts. As with any chapter 11 case, "there is the public policy of centralizing bankruptcy proceedings, and there is a strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy is pending." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 558 (Bankr. N.D. Ga.

---

[8] Plaintiffs allege this proceeding is core. Compl. ¶ 4. Defendants tacitly admit this allegation. Defs. Ans. ¶ 6. Nowhere on the record do Defendants deny this proceeding is core.

13

12177944-1

2017). Accordingly, Defendants' request to withdraw the reference of a proceeding relate to core bankruptcy issues is—and encourages—forum shopping.

31. <u>Third</u>, withdrawing the reference would lead to an inefficient use of the Debtors' resources and the Defendants' own resources. This Adversary Proceeding has gone through multiple rounds of briefing on the pertinent issues, and each party has argued its claims and defenses to this Court in person multiple times. To require Plaintiffs and Defendants to begin the litigation anew in another court would lead to the duplication of work and an inefficient use of both parties' resources.

32. <u>Fourth</u>, withdrawing the reference would hinder the bankruptcy process rather than facilitate it. The uncertainty and unavoidable delays attendant to withdrawing the reference would undoubtedly be harmful to the Chapter 11 Cases, with the Debtors' creditors and stakeholders ultimately bearing the cost. The purpose of this Adversary Proceeding is to provide certainty, as expeditiously as possible, on whether the CEO Accounts are property of the Debtors' estates. Despite the Debtors' best efforts to mitigate any uncertainty around the CEO Accounts through this Adversary Proceeding, the Defendants have tried to inject more uncertainty into the bankruptcy process by posting defamatory content about the Debtors, their advisors, and the entirety of the bankruptcy process on the CEO Accounts. Indeed, there could be concerns among potential bidders regarding whether the CEO Accounts (and the value they represent) can be conveyed by the Debtors as part of a larger sale process or if the CEO Accounts will remain in the possession of Defendants, who will then likely use the large platform provided by the CEO Accounts to disparage the Debtors, and ultimately diminish, the value of any assets purchased from the Debtors. Thus, Permissively withdrawing the reference would necessarily

14

create more uncertainty, cause delays, and ultimately frustrate the Debtors' ability to resolve the issues on a timely basis at a moment when time is of the essence.

33. <u>Finally</u>, even if Defendants were entitled to a trial by jury in this proceeding (as discussed in Section III, *infra.*, they are not), "such right does not preclude the Bankruptcy Court from hearing a proceeding up to and including the point of ruling on summary judgment." *In re Westward Ho II, LLC*, No. 8:15-CV-653-T-33, 2015 WL 1927513, at *4 (M.D. Fla. Apr. 28, 2015) (citation omitted); *see also In re Armenta*, No. 13-15047-BKC-RBR, 2013 WL 4786584, at *2 (S.D. Fla. Sept. 6, 2013) (holding that "[t]he interests of efficiency and uniformity weigh in favor of denying [the] motion to withdraw reference, notwithstanding [the] demand for a jury trial."); *In re Rothstein, Rosenfeldt, Adler, P.A.*, No. 11-62612-CIV, 2012 WL 882497, at *4 (S.D. Fla. Mar. 14, 2012) ("Withdrawal of the reference at this stage would result in this Court losing the benefit of the bankruptcy court's experience in both the law and facts, and leading to an inefficient allocation of judicial resources.") (citations omitted); *Stein v. Miller*, 158 B.R. 876, 880-881 (S.D. Fla. 1993) (holding that defendants in adversary proceeding were not entitled to withdrawal of reference to have case dispositive motion decided by district court).

34. For these reasons, Defendants have failed to demonstrate that sufficient cause exists for permissive withdrawal.

**III. PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION**

35. Defendants also "demand a trial by jury on all counts so triable with respect to" this Adversary Proceeding. Mot. at 3. Defendants' jury demand should be denied as neither count in this Adversary Proceeding is triable by jury.

36. The Seventh Amendment to the United States Constitution guarantees a right of trial by jury in "[s]uits at common law." U.S. Const. amend. VII. "A 'suit at common law'

12177944-1

adjudicates legal rather than equitable rights." *Hamm v. McIntyre (In re McIntyre)*, Nos. 10-30570-WRS, 11-3097-WRS, 2013 Bankr. LEXIS 1689, at *20 (Bankr. M.D. Ala. Mar. 8, 2013) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989)).  To determine whether there is a right to a jury trial for a particular claim, courts engage in a three-step analysis.  *Id.*  First, "the [c]ourt initially must determine whether the action would have been 'at law' or 'in equity' in the 18th century courts of England."  *In re Warmus*, 252 B.R. 584, 586 (Bankr. S.D. Fla. 2000), *aff'd*, 276 B.R. 688 (S.D. Fla. 2002) (citing *Granfinanciera*, 492 U.S. at 42).  Second, "the [c]ourt must consider whether the relief sought is legal or equitable in nature."  *Id.*  Finally, "[i]f the [c]ourt determines the action is distinctly equitable, then there is no right to a jury trial."  *Id.*

37.    In this Adversary Proceeding, the Debtors assert equitable claims seeking equitable relief, and therefore, Defendants are not entitled to a jury trial in this proceeding.

38.    <u>First</u>, Count II is a turnover claim that requests that this Court find that the CEO Accounts are the property of the estate pursuant 11 U.S.C. § 541(a) and the later turnover of the Debtors' property to the Debtors under 11 U.S.C. § 542(e).  *See* Comp. ¶¶ 34-40.  A claim for the turnover of property of the Debtors' estate is an equitable claim seeking an equitable remedy, and therefore, there is no right to a jury trial in a turnover action under 11 U.S.C. § 542(a).  *See In re McIntyre*, 2013 Bankr. LEXIS 1689, at *26 (Bankr. M.D. Ala. Mar. 8, 2013) (holding turnover claims were "inherently equitable" and therefore there was no right to a jury trial on such claims); *see also In re Warmus*, 252 B.R. at 586 (holding complaint seeking "turnover and/or recovery of property of the [debtor's] estate" under 11 U.S.C. § 542 sought relief that was "equitable in nature," and therefore, defendants were "not entitled to a jury trial on the claims raised in the [c]omplaint"); *Braunstein v. McCabe*, 571 F.3d 108, 115 (1st Cir. 2009) ("The majority of the precedent, from the district and bankruptcy courts, holds there is no jury trial right

on a trustee's turnover claim. We hold that no right to trial by jury attaches to the statutory turnover action authorized by § 542."); *In re Mushroom Transp. Co.*, Inc., 382 F.3d 325, 337 (3d Cir. 2004) (holding "turnover claims are equitable in nature").

39. <u>Second</u>, Count I seeks a declaratory judgment from this Court determining that the Debtors have the right to control the CEO Accounts. See Comp. ¶¶ 29-31. Again, this claim seeks a determination about whether certain property, which is "a critical feature[] of every bankruptcy proceeding" and is an "inherently equitable process." *In re McIntyre*, 2013 Bankr. LEXIS 1689, at *26-27. Thus, Defendants do not have a right to a jury trial for this claim. *Murphy v. Felice (In re Felice)*, 480 B.R. 401, 420-22 (Bankr. D. Mass. 2012) (holding no right to jury trial in suit seeking a declaration that interest in a trust was property of the bankruptcy estate); *In re Stocks*, 137 B.R. 516, 522 (Bankr. N.D. Fla. 1991) (denying request for jury trial in action seeking determination of whether interest in corporation was property of the bankruptcy estate).

40. Because Count I and II seek equitable relief, this Court should deny Defendants' jury demand.

## **CONCLUSION**

41. For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (a) denying in its entirety the relief requested in the Motion and (b) providing such other and further relief as may be just and proper.

|  |  |
|---|---|
| Dated: May 30, 2023<br>Miami, Florida | Respectfully submitted,<br><br>/s/ Jordi Guso |

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
hugh.murtagh@lw.com
tj.li@lw.com
brian.rosen@lw.com
jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
Email: mniles@bergersingerman.com

- and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel for the Plaintiffs/Debtors*

12177944-1