United States Bankruptcy Court
Southern District of Florida

Vital Pharmaceuticals, Inc.,
    Plaintiff                                                        Adv. Proc. No. 23-01051-PDR
Owoc,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 113C-0                    User: admin                                    Page 1 of 3
Date Rcvd: Jun 12, 2023                 Form ID: pdf004                          Total Noticed: 25

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 14, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| ust | | Karina Montalvo, DOJ-Ust, 500 Tanca Street Ochoa Building, Suite 301, San Juan, PR 00901 |
| ust | + | Roslyn Tompkins, DOJ-Ust, 75 Ted Turner Dr, SW, Ste 362, Atlanta, GA 30303-3330 |
| pla | + | Bang Energy Canada, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | JHO Intellectual Property Holdings, LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | JHO Real Estate Investment, LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| dft | + | John H. Owoc, 16720 Stratford Court, Southwest Ranches, FL 33331-1358 |
| dft | + | Megan E. Owoc, 16720 Stratford Court, Southwest Ranches, FL 33331-1358 |
| pla | + | Quash Seltzer, LLC, 20311 Sheridan Street, Fort Lauderdale, FL 33332-2313 |
| pla | + | Rainbow Unicorn Bev LLC, 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | Vital Pharmaceuticals International Sales, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |
| pla | + | Vital Pharmaceuticals, Inc., 1600 N. Park Dr., Weston, FL 33326-3278 |

TOTAL: 11

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion21.tp.ecf@usdoj.gov | Jun 12 2023 23:21:00 | Guy Van Baalen, DOJ-Ust, 501 E. Polk Street, Tampa, FL 33602-3949 |
| ust | + | Email/Text: USTPRegion21.MM.ECF@usdoj.gov | Jun 12 2023 23:21:00 | Office of the US Trustee, 51 S.W. 1st Ave., Suite 1204, Miami, FL 33130-1614 |
| ust | + | Email/Text: USTPRegion03.WL.ECF@USDOJ.GOV | Jun 12 2023 23:21:00 | U.S. Trustee, Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801-3519 |
| ust | + | Email/Text: ustpregion03.ne.ecf@usdoj.gov | Jun 12 2023 23:21:00 | U.S. Trustee., US Dept of Justice, Office of the US Trustee, One Newark Center Ste 2100, Newark, NJ 07102-5235 |
| ust | + | Email/Text: ustpregion02.br.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee, Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014-7016 |
| ust | + | Email/Text: ustpregion21.at.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee (cabrera), Office of the United States Trustee, 75 Ted Turner Dr., Suite 362, Atlanta, GA 30303-3330 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee (davis), Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - (ennever), Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustpregion21.tp.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - FTM7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL |

| | | | | |
|---|---|---|---|---|
| | | | | 33602-3949 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - JAX 13/7, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - ORL, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustp.region21.or.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - ORL7/13, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | + | Email/Text: ustpregion21.tp.ecf@usdoj.gov | Jun 12 2023 23:21:00 | United States Trustee - TPA7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602-3949 |
| clmag | + | Email/Text: cr-info@stretto.com | Jun 12 2023 23:21:00 | Stretto, 410 Exchange, Ste. 100, Irvine, CA 92602-1331 |

TOTAL: 14

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - ORL7/13, Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801-2210 |
| ust | *+ | United States Trustee - TPA7/13, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602-3949 |

TOTAL: 0 Undeliverable, 2 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 14, 2023        Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 12, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Andrew Sorkin | on behalf of Plaintiff JHO Real Estate Investment  LLC andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | on behalf of Plaintiff Rainbow Unicorn Bev LLC andrew.sorkin@lw.com andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | on behalf of Plaintiff Vital Pharmaceuticals  Inc. andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | |

District/off: 113C-0      User: admin      Page 3 of 3

Date Rcvd: Jun 12, 2023      Form ID: pdf004      Total Noticed: 25

| | |
|---|---|
| Andrew Sorkin | on behalf of Plaintiff Bang Energy Canada Inc. andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | on behalf of Plaintiff Vital Pharmaceuticals International Sales Inc. andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | on behalf of Plaintiff JHO Intellectual Property Holdings LLC andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Andrew Sorkin | on behalf of Plaintiff Quash Seltzer LLC andrew.sorkin@lw.com, andrew-sorkin-3703@ecf.pacerpro.com;new-york-ma-2860@ecf.pacerpro.com;christopher.tarrant@lw.com |
| Bradley S Shraiberg | on behalf of Defendant John H. Owoc bss@slp.law dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law |
| Bradley S Shraiberg | on behalf of Defendant Megan E. Owoc bss@slp.law dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law |
| Eric S Pendergraft | on behalf of Defendant John H. Owoc ependergraft@slp.law dwoodall@slp.law;dlocascio@slp.law;bshraibergecfmail@gmail.com;pmouton@slp.law |
| Eric S Pendergraft | on behalf of Defendant Megan E. Owoc ependergraft@slp.law dwoodall@slp.law;dlocascio@slp.law;bshraibergecfmail@gmail.com;pmouton@slp.law |
| Irwin R Gilbert | on behalf of Defendant John H. Owoc igilbert@conradscherer.com agebert@conradscherer.com;ogonzalez@conradscherer.com |
| Irwin R Gilbert | on behalf of Defendant Megan E. Owoc igilbert@conradscherer.com agebert@conradscherer.com;ogonzalez@conradscherer.com |
| Jordi Guso, Esq. | on behalf of Plaintiff Rainbow Unicorn Bev LLC jguso@bergersingerman.com fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff Vital Pharmaceuticals International Sales Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff Vital Pharmaceuticals Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff Bang Energy Canada Inc. jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff Quash Seltzer LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff JHO Intellectual Property Holdings LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Jordi Guso, Esq. | on behalf of Plaintiff JHO Real Estate Investment LLC jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com |
| Michael Jordan Niles | on behalf of Plaintiff Vital Pharmaceuticals Inc. mniles@bergersingerman.com, efile@bergersingerman.com;efile@ecf.courtdrive.com;zmorton@bergersingerman.com |
| Patrick R Dorsey | on behalf of Defendant John H. Owoc pdorsey@slp.law dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com |
| Patrick R Dorsey | on behalf of Defendant Megan E. Owoc pdorsey@slp.law dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com |

TOTAL: 23

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

**In re:**

**Vital Pharmaceutical,**                          **Case No. 23-01051-PDR**
                                                    **Chapter 11**
        **Debtor.**

_____/

**Vital Pharmaceuticals, Inc., et al.,**
                                                    **Adv. No. 23-01051-PDR**
        **Plaintiffs,**

**v.**

**John H. Owoc, et al.,**

        **Defendants.**

_____/

<u>**NOTICE OF APPEAL**</u>

<u>**Part 1: Identify the appellant(s)**</u>

1.      Name of appellant(s):  **JOHN H. OWOC AND MEGAN OWOC**

2.      Position of appellant(s) in the adversary proceeding or bankruptcy case that is the
        subject of this appeal:

For appeals in an adversary proceeding.        For appeals in a bankruptcy case and not in
G  Plaintiff                                    an adversary proceeding.
■  Defendant                                    G  Debtor
G  Other (describe) _____            G  Creditor
                                                G  Trustee
                                                G  Other (describe)_____

<u>**Part 2: Identify the subject of this appeal**</u>

1.      Describe the judgment, order, or decree appealed from: <u>ORDER GRANTING
        PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**, DE 127**

2.      State the date on which the judgment, order, or decree was entered: **May 26, 2023**

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.     Party: **Debtors (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc.**

    Attorneys:   **Jordi Guso**
                    **Florida Bar No. 863580**
                    **Michael J. Niles**
                    **Florida Bar No. 107203**
                    **BERGER SINGERMAN LLP**
                    **1450 Brickell Avenue, Suite 1900**
                    **Miami, FL 33131**
                    **Telephone: (305) 755-9500**
                    **Email: [jguso@bergersingerman.com](mailto:jguso@bergersingerman.com)**
                    **Email: [mniles@bergersingerman.com](mailto:mniles@bergersingerman.com)**

                    **George A. Davis (admitted *pro hac vice*)**
                    **Hugh K. Murtagh (admitted *pro hac vice*)**
                    **Brian S. Rosen (admitted *pro hac vice*)**
                    **Jonathan J. Weichselbaum (admitted *pro hac vice*)**
                    **LATHAM & WATKINS LLP**
                    **1271 Avenue of the Americas**
                    **New York, NY 10020**
                    **Telephone: (212) 906-1200**
                          - and -
                    **Andrew D. Sorkin (admitted *pro hac vice*)**
                    **LATHAM & WATKINS LLP**
                    **555 Eleventh Street, NW, Suite 1000**
                    **Washington, D.C. 2004**
                    **Telephone: (202) 637-2200**
                          - and -
                    **Whit Morley (admitted *pro hac vice*)**
                    **LATHAM & WATKINS LLP**
                    **330 North Wabash Avenue, Suite 2800**
                    **Chicago, IL 60611**
                    **Telephone: (312) 876-7700**

2.      Party: **DEFENDANTS JOHN H. OWOC; MEGAN E. OWOC**

Attorneys:    **Bradley Shraiberg**
                 **Fla Bar No. 121622**
                 **SHRAIBERG PAGE P.A.**
                 **2385 NW Executive Center Drive, Suite 300**
                 **Boca Raton, Florida 33431**
                 **Telephone: 561-443-0800**
                 **Email: bss@slp.law**

**Part 4: Not Applicable**

**Part 5: Sign Below**

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by Notice of Electronic Filing via CM/ECF to those parties registered to receive such notice in this case on June 9, 2023.

      **s/Bradley Shraiberg**                 Date: **June 9, 2023**
Signature of attorney for appellant
**Bradley Shraiberg**
**Fla Bar No. 121622**
**SHRAIBERG PAGE P.A.**
**2385 NW Executive Center Drive, Suite 300**
**Boca Raton, Florida 33431**
**Telephone: 561-443-0800**
**Email: bss@slp.law**
**Counsel for the Owocs**

3



**ORDERED in the Southern District of Florida on May 26, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In re:                                                Case No. 22-17842-PDR

Vital Pharmaceutical,                    Chapter 11

      Debtor.

_____/

Vital Pharmaceuticals, Inc., *et al.*,          Adv. No. 23-1051-PDR

      Plaintiffs,
v.

John H. Owoc, *et al.*,

      Defendants.

_____/

## ORDER GRANTING PLAINTIFFS'
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

THIS MATTER came before the Court on May 25, 2023, at 2:30 p.m., on the Plaintiffs' *Motion for Preliminary Injunction* (the "Motion").[1] In the Motion, the Plaintiffs ("Vital") ask this Court to convert an existing temporary restraining order, which (among other things) prohibits Defendants, John H. "Jack" Owoc and Megan Owoc, from accessing, using, deleting, or modifying three social media accounts (referred to as the "CEO Accounts"), into a preliminary injunction pending final adjudication of Vital's claims in this adversary proceeding.

## I.    Background[2]

Thirty years ago, Mr. Owoc founded Vital Pharmaceuticals.[3] Vital has become a pioneer in the performance energy drink industry.[4] The company has brought several products to market, including VPX Redline energy drink; Meltdown 1 Keto drink, Quash, and Vooz.[5] Its flagship product, however, is Bang energy drink, which

---

[1] Adv. Doc. 84. The Plaintiffs in this proceeding are Vital Pharmaceuticals, Inc.; Bang Energy Canada, Inc.; JHO Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Quash Seltzer, LLC; Rainbow Unicorn Bev LLC; and Vital Pharmaceuticals International Sales, Inc.

[2] The parties agreed that the record, for purposes of the Court ruling on the Motion, would consist of the declarations of John DiDonato (Adv. Doc. 21), Mr. Owoc (Adv. Doc. 41), and Mrs. Owoc (Adv. Doc. 42) submitted in connection with Plaintiffs' Motion for Summary Judgment and the Owocs' response. The parties further agreed that the record could be supplemented by Mrs. Owoc's testimony at the May 25 injunction hearing, as well as supplemental briefing (with supporting exhibits, such as terms of service and other policies governing the CEO Accounts). Adv. Docs. 124 & 125.

[3] *Declaration of John H. Owoc*, Adv. Doc. 41, ¶ 1.

[4] *Id.* ¶ 1.

[5] *Id.* ¶ 5.

2

is one of the top selling energy drinks in the United States.[6] Over the years, Vital has generated more than $6 billion in sales.[7]

Vital attributes much of its success to its use of nontraditional marketing channels—i.e., social media.[8] In all, Vital has more than 50 social media accounts it uses to promote its products and drive sales (the "Company Accounts").[9] All the Company Accounts have "bang" or "bangenergy" in the handle.[10]

There are also three other accounts, which are the subject of this adversary proceeding:

- an Instagram account with the handle @bangenergy.ceo ("CEO Instagram Account");

- a TikTok account with the handle @bangenergy.ceo ("CEO TikTok Account"); and

- a Twitter account with the handle @BangEnergyCEO ("CEO Twitter Account").

---

[6] *Declaration of John DiDonato*, Adv. Doc. 21, ¶ 6.

[7] *Declaration of John H. Owoc*, Adv. Doc. 41, ¶ 4.

[8] *Declaration of John DiDonato*, Adv. Doc. 21, ¶ 5.

[9] *Declaration of John C. DiDonato*, Adv. Doc. 21, ¶¶ 5 & 13; *Declaration of John H. Owoc*, Adv. Doc. 41, ¶ 20.

[10] The Company Instagram accounts include: @bangenergy; @banghardseltzer; @bang.fuelteam; @bang_merch; @bangenergysweepstakes; @bangenergy.careers; @banenergyaustralia; @bangenergy.germany; @bangenery.finland; @bang.chile; @bangenergy.abcislands; @bangenergy.denmark; @bangenergynorway; @bangenergy.costarica; @bangenergy.bolivia; @bangenergy.sweden; @bangenergy.colombia; @bangenergy.southafrica; @bangenergy.france; @bangenergy.switzerland; and @bangenergy.eu. The Company Twitter accounts include: BANGenergy. The Company TikTok accounts include: @bangenergy; @bang.fuelteam.

Mrs. Owoc claims she created the CEO Twitter and CEO Instagram accounts while she was employed by Vital.[11] And Mrs. Owoc, along with Mr. Owoc, allegedly directed Vital employees to create the CEO TikTok account.[12] Together, the Owocs devised the handles for the CEO Accounts, none of which bear Mr. or Mrs. Owoc's individual names.[13]

Over the years, the CEO Accounts have been used to promote Vital's Bang energy drink.[14] The CEO Accounts contain links to the company's website.[15] The CEO Instagram Account is identified on the label of the Bang energy drink can.[16] And the CEO Accounts contain posts that explicitly promote Vital's products.[17] Indeed, based on the Court's review of screenshots of a sample of recent posts to the CEO Accounts, it is clear that the accounts explicitly promote Bang products, include Bang hashtags, or otherwise mention Bang.[18] Promotion of Bang on the CEO Accounts is pervasive.

---

[11] *Declaration of Megan E. Owoc*, Adv. Doc. 42, ¶ 14.

[12] *Id.* ¶ 15.

[13] *Declaration of John H. Owoc*, Adv. Doc. 41, ¶ 13; *Declaration of Megan E. Owoc,* Adv. Doc. 42, ¶ 11.

[14] *Declaration of John H. Owoc*, Adv. Doc. 41, ¶¶ 27 – 33 & Ex. 1 – 3.

[15] *Declaration of John DiDonato*, Adv. Doc. 21, ¶ 7.

[16] *Id.* ¶ 6.

[17] *Declaration of John H. Owoc*, Adv. Doc. 41, Exs. 1 – 3.

[18] *Id.* The Court carefully reviewed screenshots of each of the 284 social media posts that Mr. Owoc put into the record. The Court then classified those posts into various categories: posts that were purely or explicitly promotional in nature; posts that contained any reference to Bang products, Bang apparel, or the Bang logo; posts that contained a hashtag referencing Bang (e.g., "#bangenergy").

4

Although Mr. Owoc claims to have maintained possession and control over the passwords for the CEO Accounts, he shared those passwords with Vital employees from time to time so they could help with the accounts.[19] And it appears Vital employees created content that was posted to the CEO Accounts.[20]

Six months ago, Vital (and its affiliates) filed for chapter 11 bankruptcy. During the case, on March 9, 2023, Vital's board of directors fired the Owocs and demanded they return all company property.[21] Vital was able to secure most of its social media accounts. But the Owocs refused to turn over the CEO Accounts.[22]

Currently, Vital is marketing its assets for sale in this chapter 11 case.[23] According to John DiDonato, Vital's Chief Transformation Officer, who is leading the company's restructuring efforts, prospective bidders for Vital's assets may submit substantially lower bids (or not bid at all) if Vital is unable to secure access to the CEO Accounts.[24] Mr. DiDonato also fears that if the Owocs remain in control of the CEO Accounts, they might post content that could harm Vital.[25] The sale process remains ongoing, and while the bid deadline may have passed, the sale hearing has not yet occurred and of course no sale has closed.

---

[19] *Declaration of John H. Owoc*, Adv. Doc. 41, ¶ 19.

[20] *Id.*

[21] *Declaration of John C. DiDonato*, Adv. Doc. 21, ¶¶ 8 – 9.

[22] *Id.* ¶ 10.

[23] *Id.* ¶ 14.

[24] *Id.*

[25] *Id.* ¶ 15.

Vital filed this adversary proceeding seeking (1) a declaration that the CEO Accounts are property of the estate; and (2) turnover of the CEO Accounts.[26] In the meantime, Vital sought a temporary restraining order that would prohibit the Owocs from using—and require them to turn over to Vital control of—the CEO Accounts.[27]

To resolve the request for injunctive relief, Vital and the Owocs filed an agreed stipulation with the Court.[28] Under the stipulation, which was signed by the parties' counsel, the parties agreed (among other things) that:

- The Owocs "are prohibited from posting any content or making any posts of any kind to or from the CEO Accounts" for forty-five days after an order approving the joint stipulation;[29]

- Within nine hours of a request from [Vital], the Owocs would "post" to the CEO Accounts any content about [Vital's] products that [Vital] requested (so long as the requested post does not reference the Owocs);[30] and

- In the event one party alleges the other violated the stipulation, twenty-four hours' notice would be sufficient for a hearing to address the alleged violation.[31]

On March 16, 2023, the Court approved the parties' stipulation (the "March 16 Order").[32]

---

[26] Adv. Doc. 1.

[27] Adv. Doc. 2, ¶¶ 18 – 22, & 30 – 33.

[28] Adv. Doc. 9.

[29] *Id.* ¶ 2 (emphasis added).

[30] *Id.* ¶ 3 (emphasis added).

[31] *Id.* ¶ 6.

[32] Adv. Doc. 10.

On April 6, 2023, Vital requested that the Owocs post content to the CEO Accounts.[33] Although required to do so within nine hours, the Owocs failed to post the requested content until April 10—four days later. Roughly a half hour after posting the requested content, Mr. Owoc ranted about the post in a series of comments—from the CEO Instagram Account—in which he claimed that:

- his social media account had been hijacked;

- he had been "forced by threat" to post the requested content;

- being forced to post the content was a "major fraud on the public"; and

- various professionals involved in this chapter 11 case were committing racketeering violations.[34]

The rant ended with Mr. Owoc insisting that the "FLORIDA BANKRUPTCY COMMUNITY MUST BE BROUGHT TO JUSTICE!"[35] In response to a comment by a social media user, Mr. Owoc commented—again from the CEO Instagram Account—that "[t]he bankruptcy community corruption here in South Florida is real."[36]

So Vital moved to hold Mr. Owoc in contempt for violating the Court's March 16 Order. In its contempt motion, Vital asked the Court to declare that Vital owned the rights to the CEO Accounts; order the Owocs to turn over the passwords to the

---

[33] Adv. Doc. 32-2.

[34] Adv. Doc. 33-6.

[35] *Id.*

[36] Adv. Doc. 33-7.

CEO Accounts to Vital; and allow Vital to change the CEO Accounts' passwords. At the April 12 hearing on their contempt motion, the Plaintiffs also asked the Court to order Mr. Owoc to take down his Instagram rant. Following the April 12 contempt hearing, but before the Court ruled on Vital's contempt motion, Mr. Owoc posted another rant in which he accused Vital's counsel of conducting a fraudulent investigation into a missing "$3.2 billion offer" for Vital's assets while Mr. Owoc was Vital's CEO.[37]

On April 25, 2023, this Court held Mr. Owoc in contempt of court for commenting on Vital's requested post in violation of the Court's March 16 Order. The Court ruled that Mr. Owoc could purge his contempt by deleting his April 10 comments by 5:00 p.m. on April 25.[38] The Court ruled that Mr. Owoc was required to turn over the passwords to the CEO Accounts to Vital by 5:00 p.m., as well, and that Vital was permitted to change the passwords.[39]

Although Mr. Owoc took down his offending comments, as of May 1, 2023, the Owocs still had not given Vital complete access to the CEO Accounts so that Vital could change the CEO Account passwords. This Court once again found Mr. Owoc in contempt of its order. As a contempt sanction, the Court extended the March 16 Order for 28 days—through May 29, 2023—to give Vital the benefit of its bargain (i.e., a 45-

---

[37] Adv. Doc. 38, Ex. 5.

[38] Adv. Doc. 61 at 15.

[39] Id.

day moratorium on the Owocs using the CEO Accounts).[40] The Court also enjoined Vital from posting content to the CEO Accounts.[41] With the TRO imposed by the Court's March 16 Order days away from expiring, Vital now seeks entry of a preliminary injunction consistent with the TRO presently in effect until the issues in this adversary are fully adjudicated.[42]

## II.  Analysis

A request for preliminary injunction is governed by Federal Rule of Bankruptcy Procedure 7065. Rule 7065, in turn, incorporates Federal Rule of Civil Procedure 65. Under Rule 65, a party seeking an injunction must prove that (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable harm if the court does not issue an injunction; (3) the irreparable harm outweighs whatever damages the injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest.[43] The party seeking injunctive relief carries the burden of persuasion on all four factors.[44]

---

[40] Adv. Doc. 80.

[41] Adv. Doc. 75, p. 42, ll. 5 – 15.

[42] Adv. Doc. 84.

[43] *Norwegian Cruise Line Holdings Ltd. v. State Surgeon General, Fla. Dep't of Health*, 50 F.4th 1126, 1134 – 35 (11th Cir. 2022).

[44] *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless 'the movant clearly establishe[s] the "burden of persuasion" as to each of the four prerequisites.'") (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

A. <u>Vital has a substantial likelihood of success on the merits</u>.

Vital must show it has a substantial likelihood of success on the merits, which "is 'generally the most important' of the four factors."[45] To do so, a party seeking an injunction need not prove that success is certain.[46] Instead, a substantial likelihood of success on the merits "requires a showing of 'only likely or probable . . . success.'"[47] And, if the equities of the case—i.e., irreparable harm, the balance of harms, and the public interest—heavily favor the moving party, then the moving party is entitled to injunctive relief on an even lesser showing: a "substantial case on the merits."[48]

Here, Vital will likely or probably succeed on the merits of its claims in this proceeding. According to Vital, the test for determining ownership is set forth in *In re CTLI*, which Vital says stands for the proposition that "[s]ocial media accounts are property of a debtor's estate when the content of the accounts is associated with the debtor's business and use of the accounts is 'clearly to generate revenues for the company.'"[49]

The Court is not persuaded that the *CTLI* framework is the proper standard for determining ownership of the rights to social media accounts. Even so, Vital will

---

[45] *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020); *Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1236 – 37 (S.D. Fla. 2021).

[46] *Messina*, 546 F. Supp. 3d at 1236 – 37.

[47] *Id.* at 1237 ("The first factor, 'a substantial likelihood of success on the merits,' requires a showing of 'only likely or probable, rather than certain, success.'") (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)).

[48] *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

[49] Adv. Doc. 84, ¶ 31.

still likely or probably succeed on its claims. The Court will likely place emphasis on the account opening documents, terms of service, and related documents that may be determinative as to which party has the "rights" to the accounts. The Court will also likely consider "control" as a significant determining factor. And the Court will likely consider additional factors that may not have been considered by the court in *CTLI*. Regardless, the Court is presently able to determine "substantial likelihood of success" because it has considered the legal standard and the record evidence in consideration of the pending Motion for Summary Judgment.

Here, the undisputed facts show that, even if Mrs. Owoc created the CEO Instagram and CEO Twitter Accounts and directed Vital employees to create the CEO TikTok Accounts, she did so in her capacity as a Vital marketing employee. The CEO Accounts have "bang" or "bangenergy" in the account name or handle; the account names or handles follow the same naming convention as the Company Accounts: "bangenergy" plus a subcategory (e.g., @bangenergy.ceo; @bangenergy.careers; @bang_merch; etc.); the account names or handles do not include Mr. Owoc's name; and the accounts were used to explicitly promote Vital products (the CEO Instagram Account name or handle was on the Bang energy drink can; the CEO Accounts linked to Vital's website; and the CEO Accounts' use included pervasive explicit promotional content of Vital's products and no other products).

Under whichever test the Court employs, those facts are enough to make the success of Vital's ownership claims likely or probable. And because the remaining factors weigh heavily in favor of an injunction, Vital need only show that it has a

"substantial case on the merits." At a minimum, the undisputed facts here are enough to satisfy this burden.

In arguing that Vital cannot prove a substantial likelihood of success on the merits, the Owocs called as a witness Mrs. Owoc. Mrs. Owoc testified that it is her understanding that there are two types of account verification for Instagram: one for verifying business; another for verifying individuals. Mrs. Owoc testified her recollection was that Mr. Owoc submitted his photo ID as part of the verification process. Therefore, the Owocs reason, the account must belong to him.

There are several problems with that argument. The Owocs offered no documentary evidence to prove that Mrs. Owoc's understanding of the Instagram process is correct or that Instagram verified Mr. Owoc, as opposed to the business (e.g., copies of Instagram's request for documents or the documents the Owocs provided to Instagram). Instead, the Owocs solely rely on Mrs. Owoc's recollection. In addition, Mrs. Owoc's recollection is from events that took place a decade ago and without corroborative documents the testimony is not sufficiently reliable. And as it turns out, it appears Mrs. Owoc's recollection is incorrect: Vital filed supplemental briefing attaching Instagram's guidance for verifying an account, and that guidance makes no distinction between verifying an individual or verifying a brand.[50]

But even if her recollection were correct, all it would establish is that Instagram verified the CEO Instagram Account, with a handle @bangenergy.ceo, by verifying that Mr. Owoc was Vital's CEO. That evidence is minimally probative of

---

[50] Adv. Doc. 124, ¶ 1 & Exs. A & B.

who owns the rights to the CEO Instagram Account. It certainly does not mean—particularly given the names of the CEO Accounts and their pervasive use for marketing Vital's products—that Vital is not likely to prevail on its claims—much less that Vital does not have a "substantial case on the merits." Thus, even if Instagram verified the account as Mrs. Owoc recalls, Vital still has a substantial likelihood of success on the merits.

B.    <u>Vital will be irreparably harmed if an injunction is not issued</u>.

"A showing of irreparable harm is 'the *sine qua non* of injunctive relief.'"[51] For an injury to satisfy the "irreparable harm" factor, the injury "must be 'likely in the absence of an injunction.'"[52] Here, Vital will suffer irreparable harm unless the Court enjoins Mr. Owoc from using the CEO Accounts and orders him to turn them over to Vital.

There is no dispute that Vital has used the CEO Accounts, which collectively have more than one million followers, to promote Vital's products. It is equally undisputed that access to a million followers is a valuable asset. Otherwise, why else are the Owocs fighting over ownership of the rights to them? If Mr. Owoc is permitted to post on the CEO Accounts, he is likely to post rants like those he posted in violation of this Court's March 16 Order. Because any rant would be coming from an account

---

[51] *GLE Scrap Metal, Inc. v. Tan*, 2023 WL 3220452, at *3 (11th Cir. May 3, 2023) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)).

[52] *Swisher Int'l, Inc. v. U.S. Food & Drug Admin.*, 2022 WL 320889, at *4 (11th Cir. Feb. 3, 2022) ("In other words, irreparable harm must be *'likely* in the absence of an injunction.'") (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 – 22 (2008)).

with "bangenergyceo" when Mr. Owoc is no longer Vital's CEO, any such rant will very likely alienate the CEO Accounts' followers, thereby destroying the CEO Accounts as a valuable marketing asset of Vital's products. Once the accounts are destroyed as a marketing tool, the damage is likely "irreparable" in that Vital will be unable regain that asset if the Court determines that it owns the rights to the CEO Accounts. Given the difficulty in valuing the CEO Accounts, Vital will have no adequate remedy at law.

The Owocs contend that Vital cannot rely on evidence of Mr. Owocs' past misconduct to prove he will engage in future misconduct. That, the Owocs say, would violate Federal Rule of Evidence 404(b), which provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[53] Not so. Putting aside that Rule 404(b), on its face, does not apply to this situation, the Eleventh Circuit has held that because injunctive relief is intended "to prevent a substantial risk of serious injury from ripening into actual harm," irreparable harm "may be satisfied by demonstrating a history of past misconduct, which gives rise to an inference that future injury is imminent."[54]

    C.    <u>The irreparable harm to Vital outweighs any harm to the Owocs if the Court grants the injunction.</u>

---

[53] Fed. R. Evid. 404(b).

[54] *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) (quoting *Kapps v. Wing*, 404 F.3d 105, 123 (2d Cir. 2005)).

14

"[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[55] Here, the balance of harms overwhelmingly weighs in favor of an injunction. On the one hand, for the reasons discussed above, Vital will suffer significant irreparable harm if the Owocs are able to post to or comment from the CEO Accounts—i.e., destruction of the CEO Accounts as a valuable marketing tool.

On the other hand, what is the harm to the Owocs? The Owocs claim that Mr. Owoc's "brand" will be damaged if the CEO Accounts remain dormant "for months longer."[56] According to the Owocs, "[s]ocial media accounts require regular activity to maintain and engage followers," and the CEO Accounts "have been largely frozen since the outset of this proceeding in mid-March 2023."[57] The Court does not find that argument credible or persuasive. The Owocs agreed to a 45-day temporary restraining order at the outset of this proceeding, belying their claim that Mr. Owocs' "brand" will be damaged if there is not "regular" activity on the CEO Accounts.[58] While the TRO was extended for 28 days, that was because Mr. Owoc violated the Court's March 16 Order, which implemented the parties' stipulation, and the 28-day

---

[55] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

[56] Adv. Doc. 110 at 8.

[57] Adv. Doc. 110 at 8.

[58] Adv. Docs. 9 & 10. The Court is, of course, aware that the Owocs claim their counsel entered that stipulation without their authority. As this Court has explained, "the United States Supreme Court has held in a variety of contexts that 'clients must be accountable for the acts and omissions of their attorneys.'" Adv. Doc. 61 at 8 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993)). And to the extent their counsel did not have authority to enter the stipulation, the Owocs waited for more than a month to move to vacate the stipulation. Adv. Doc. 55.

15

extension was imposed as a contempt remedy to give Vital the benefit of the parties' bargain (i.e., a 45-day moratorium on the Owocs' use of the CEO Accounts). The Owocs cannot bootstrap the sanction for Mr. Owoc's contempt violation prohibiting their use of the CEO Accounts for 45 days to now claim irreparable harm if the CEO Accounts remain dormant "for months longer." And even if they could, that harm is not irreparable. If the rights to the CEO Accounts are determined to belong to Mr. Owoc, Mr. Owoc will have the opportunity to reengage with the followers, whereas the harm to the Debtors with respect to alienation of the followers can likely not be repaired.

        D.    <u>The injunction would not be adverse to the public interest.</u>

The Owocs claim an injunction is contrary to the public interest because it infringes upon Mr. Owoc's free speech.[59] If Mr. Owoc owned the rights to the CEO Accounts, and this Court was enjoining him from using his social media accounts to post content or make comments about Vital, that might implicate his First Amendment rights. For instance, in *JLM Couture, Inc. v. Gutman*, the court denied a request for preliminary injunction to the extent the injunction prohibited the defendant from disparaging the plaintiff and continuing a social media bullying campaign.[60] In doing so, the court observed that "[i]n the First Amendment context,

---

[59] Adv. Doc. 110.

[60] 2021 WL 827749, at *19 – 20 (S.D.N.Y. Mar. 4, 2021).

a preliminary injunction is a prior restraint and, as such, 'bear[s] a heavy presumption against its constitutional validity.'"[61]

That is not what is happening here. This Court has determined that Vital has a substantial likelihood of success on its claim that it owns the rights to the CEO Accounts. And there is no gag order. At most, an injunction would be akin to a restriction on the time, place, or manner of speech. Generally, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'"[62] And the Owocs have not cited a single case— nor is the Court aware of one—holding that an injunction infringes on a person's free speech rights when the injunction merely bans a person from using a social media account that may be determined in that very litigation to belong to another person. Thus, the Court disagrees that the proposed injunction infringes Mr. Owoc's First Amendment rights.

## III. Conclusion

---

[61] *JLM Couture*, 2021 WL 827749, at *19.

[62] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).

The purpose of a preliminary injunction is to "maintain the status quo" pending resolution of a parties' claims.[63] Here, the Owocs claim the "status quo" at the time this adversary proceeding was filed was that they had maintained the passwords—and were free to post content to—the CEO Accounts. That is true so far as it goes. But that argument overlooks one obvious fact: before this proceeding was filed, Mr. Owoc was free to post to the CEO Accounts *while he was CEO of the company*. The fact is Mr. Owoc is no longer Vital's CEO, nor is he a Vital employee. So the Court cannot maintain the "status quo" as of the date this proceeding was filed because that "status quo" no longer exists.

There is only one way to preserve the relative positions of the parties pending a trial on the merits of Vital's claims: enjoin both parties from using the CEO Accounts. If the Court does not enjoin the Owocs from using the CEO Accounts, Vital will be irreparably harmed. By enjoining Vital from using the CEO Accounts too, the Owocs will be protected from any irreparable harm (i.e., Vital's "speech" on the account will not be attributed to Mr. Owoc) if it turns out the Owocs own the rights to the CEO Accounts.

Accordingly, the Court **ORDERS**:

1.      The Plaintiffs' Motion is **GRANTED**.

2.      Until this Court finally adjudicates the Plaintiffs' claims in this adversary proceeding, Defendants, John H. "Jack" Owoc and Megan Owoc, are

---

[63] *U.S. v. Lambert*, 695 F.2d 536, 539 – 40 (11th Cir. 1983) ("The purpose of such a preliminary injunction is 'merely to preserve the relative positions of the parties until a trial on the merits can be held.'")

enjoined from accessing, using, deleting, or modifying the CEO Accounts. In particular, the Owocs are prohibited from posting any content to the CEO Accounts or commenting on posts from the CEO Accounts.

3.  The Owocs shall do whatever is necessary to enable the Plaintiffs to access the CEO Accounts, including turning over the passwords to the CEO Accounts to the Plaintiffs and cooperating with the Plaintiffs so that the Plaintiffs can access and maintain exclusive control of the CEO Accounts.

4.  The Plaintiffs shall maintain exclusive control of the CEO Accounts until this Court finally adjudicates their claims in this proceeding. Absent Court authorization, the Plaintiffs are enjoined from accessing, using, deleting, or modifying the CEO Accounts. In particular, the Plaintiffs are prohibited from posting any content to the CEO Accounts or commenting on posts from the CEO Accounts.

5.  Nothing in this Order shall prohibit the Plaintiffs or Defendants from posting to the CEO Accounts any "corrective statement" required by—or otherwise complying with—the permanent injunction entered by the United States District Court for the Central District of California, in *Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*, Case No. 5:18-1882-JGB.


###


Copies to:
All parties in interest.


19